1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11   EDWARD JONES,                    )   Civil No. 03cv1463 J(RBB)
                                      )
12                  Petitioner,       )   **REPORT AND RECOMMENDATION RE:**
                                      )   **DENYING THIRD AMENDED PETITION**
13   v.                               )   **FOR WRIT OF HABEAS CORPUS**
                                      )   **[DOC. NO. 51] AND ORDER**
14   JEANNE WOODFORD, Director of     )   **DENYING MOTION FOR EVIDENTIARY**
     California Department of         )   **HEARING [DOC. NOS. 59, 72]**
15   Corrections,                     )
                                      )
16                  Respondent.       )
     ─────────────────────────────────)

17

18        On July 21, 2003, Petitioner Edward Jones, a state prisoner

19   proceeding pro se and in forma pauperis, filed a Petition for Writ

20   of Habeas Corpus [doc. nos. 1, 4].  In his Third Amended Petition,

21   filed on June 15, 2006, Jones raises nine claims for relief:  (1)

22   ineffective assistance of trial counsel for failure to investigate

23   his alibi defense and fingerprint evidence (Ground One); (2)

24   ineffective assistance of counsel for failure to impeach a critical

25   prosecution witness (Ground One-A); (3) ineffective assistance of

26   counsel for failure to properly advise Jones of the consequences of

27   rejecting a plea offer (Ground Two); (4) a violation of due process

28   for the trial court's error in advising Petitioner of the possible

                                       1

sentencing consequences of rejecting a plea offer (Ground Two); (5) insufficient evidence to support three of his convictions for attempted robbery (Ground Three); (6) insufficient evidence to support the sentence enhancements for use of a firearm (Ground Four); (7) ineffective assistance of counsel for failure to object to, or seek to suppress, evidence of a separate conviction (Ground Five); (8) a violation of due process by the introduction of irrelevant evidence of a separate conviction (Ground Six); (9) a violation of due process for the trial court's failure to give a limiting instruction regarding the use of the separate conviction evidence (Grounds Seven and Eight).  (Third Am. Pet. 6-13.) Petitioner also claims that cumulative error resulted in a fundamentally unfair trial.  (Id. at 13-14, 48.)  On October 25, 2006, Respondent filed an Answer [doc. no. 66].  Jones filed a Traverse [doc. no. 69] on November 6, 2006.

After reviewing the Third Amended Petition, Respondent's Answer, the Lodgments, and Petitioner's Traverse, this Court finds that Jones is not entitled to the relief requested in his Third Amended Petition and recommends that his Petition for Writ of Habeas Corpus be **DENIED** for the reasons outlined below.

## I. FACTUAL BACKGROUND

At approximately 9:30 a.m. on June 26, 1999, Roy French was browsing in the showroom of Symbolic Motors, an exotic car dealership in La Jolla, California, when he saw two men enter the showroom.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 105-07, Nov. 2, 2000.)  One of the men appeared to be talking on a cell phone. (Id. at 106.)  The men approached French and Roger Phillips, a Symbolic sales representative, pushed them and ordered them to the

back of the showroom.  (Id. at 107-08.)  When Phillips protested, the taller of the two men pulled out a gun.  (Id. at 108.)

The customoer, employee, and two men went to the back of the showroom, and the shorter of the two men demanded French's wallet and took approximately one hundred dollars out of it.  (Id. at 109.)  He moved French into an office and told him to lie on the floor.  (Id.)  Phillips was also moved into the office.  (Id.)

The taller man asked Phillips where the safe was.  (Id. at 109-10.)  Phillips replied that he did not know, and the man slapped him.  (Id. at 110.)  During this time, the taller man continued to talk on the cell phone, seemingly getting instructions.  (Id.)  He then told the shorter man to "put one in the back of his [Phillips] head" and see if Phillips could then open the safe.  (Id. at 111.)  French looked up at the shorter man, who was pointing a gun at him.  (Id.)  The two robbers then heard a noise and left the office to investigate.  (Id. at 112.)

Ramon Bazaldua arrived at Symbolic where he was employed as a car detailer.  (Id. at 155.)  When he entered the showroom, the taller robber approached him and asked, "Are you the big guy?"  (Id. at 156.)  Bazaldua said he was only the detailer and continued walking across the showroom.  (Id.)  The man put a gun to Bazaldua's head and ordered him into the office where Phillips and French had been taken.  (Id.)

The shorter robber bound the hands of all three men with duct tape and forced them to lie on the floor.  (Id. at 112, 156.)  When French looked up, the taller man put his foot in French's back, stating "I think you're trying to eyeball me, boy," and threatened to shoot him.  (Id. at 112.)  He asked who owned the Jaguar in the

parking lot, and French replied that it belonged to him.  (<u>Id.</u> at 114.)  The shorter man then took the car keys out of French's pocket.  (<u>Id.</u>)

Shortly thereafter, Sean Hughes arrived for work at Symbolic accompanied by his two daughters, ages six and eight.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 320-21, Nov. 6, 2000.)  The taller man, who Hughes later identified as Anthony Penton, approached Hughes in the showroom and asked if he was the owner of the dealership.  (<u>Id.</u> at 321-22.)  Hughes replied that he was not.  (<u>Id.</u> at 322.)  Penton ordered Hughes to the back of the showroom.  (<u>Id.</u> at 323.)  Hughes could tell from Penton's tone that something was wrong and asked if his daughters could wait outside in his car, but Penton said "No." (<u>Id.</u>)

Penton led Hughes and his daughters to the back, where they encountered the shorter man, who Hughes later identified as Jones. (<u>Id.</u>)  Penton and Jones took Hughes and his daughters to an upstairs office where the company's safes were located.  (<u>Id.</u> at 324.)  The men asked Hughes if he had a key to the office, and Hughes showed them that his keys would not open the door.  (<u>Id.</u> at 324-25.)

Penton and Petitioner made Hughes and his daughters lie face-down on the floor.  (<u>Id.</u> at 325.)  Jones took two guns and a roll of duct tape out of a plastic bag and taped Hughes's hands behind his back.  (<u>Id.</u>)  While Hughes was on the floor, Penton got a call on his cell phone.  (<u>Id.</u> at 326.)  Petitioner handed one of the guns to Penton, and Penton went downstairs.  (<u>Id.</u>)  Jones stayed with Hughes and his daughters.  (<u>Id.</u>)  While playing with the gun he was holding, Petitioner asked Hughes what he had in his pockets.

(<u>Id.</u> at 326-27.)  Hughes replied that he had ten dollars and a cell phone.  Jones said he did not want the money, but he took the cell phone and turned it off.  (<u>Id.</u> at 328.)

About one-half hour later, Hughes heard someone yell, "He's running."  (<u>Id.</u>)  Petitioner ran downstairs and did not return.  (<u>Id.</u>)  Hughes stayed upstairs until he heard police officers on a bullhorn, at which point he broke free from the duct tape, locked his daughters and himself in another upstairs office, and called 9-1-1.  (<u>Id.</u> at 329-31.)

Meanwhile, Shannon Williams arrived at work around 10:15 a.m.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 43-44.)  She entered the showroom and saw Penton talking on a cell phone.  (<u>Id.</u> at 44-45.)  When she asked him if he needed any help, Penton pulled a gun from his belt and told her to follow him.  (<u>Id.</u> at 45-47.)

Robert Kueber arrived at work shortly after Williams.  (<u>Id.</u> at 130.)  Penton showed his gun to Kueber and ordered Kueber and Williams to go into Williams's office.  (<u>Id.</u> at 47, 131.)  As they crossed the showroom, Kueber turned and ran out of the building and across the street to a gas station and called the police.  (<u>Id.</u> at 137-38.)  Penton ordered Williams into her office and told her that if she moved he would shoot her.  (<u>Id.</u> at 47.)  Penton ran after Kueber; Jones came down the stairs holding a gun and ran after Penton and Kueber.  (<u>Id.</u> at 49-50.)

Williams called the police; then she removed the duct tape from French's, Bazaldua's, and Phillips's hands.  (<u>Id.</u> at 51-52.)  The police arrived and, during their subsequent investigation, recovered a plastic bag from an upstairs area of Symbolic.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 246.)  The bag was later

1   examined, and a fingerprint belonging to Jones was found on the

2   bag.  (Lodgment No. 1, Rep.'s Tr. vol. 1, 177, 182-84.)

3       On June 29, 1999, three days after the robbery, Police Officer

4   Andrew Spear saw Petitioner speeding in a tan rental car.

5   (Lodgment No. 2, Rep.'s Tr. vol. 2, 265.)  When Officer Spear

6   approached the car, Jones sped up and turned down an alley.  (Id.)

7   Officer Spear turned on his lights and pursued Jones.  (Id.)  As he

8   chased Petitioner in his police car, Officer Spear saw him toss a

9   loaded semiautomatic handgun out of the window.  (Id. at 266.)

10      Jones eventually stopped and was arrested.  (Id. at 264.)  A

11  search of the car uncovered a holster that fit the gun he had

12  thrown out of the car.  (Id. at 267.)  The police learned that the

13  car Petitioner was driving had been rented by Penton approximately

14  three weeks earlier.  (Id. at 310.)

15      Police later determined that two cell phones linked to Penton

16  were used to send and receive thirty-two phone calls to and from

17  the La Jolla area on the morning of the robbery.  (See id. at 283-

18  92.)  Upon searching Penton's home, police found one of the phone

19  numbers Penton called on the morning of the robbery written on a

20  tablecloth.  (Id. at 304.)  Officers also found .45 caliber

21  ammunition and an Enterprise Rental Car key chain listing the make,

22  model, and license plate number of the car Petitioner was driving

23  when he was arrested.  (Id. at 305-06, 310.)

24      During the subsequent police investigation, Williams and

25  Hughes identified both Penton and Jones as their attackers; Kueber

26  identified only Penton; and French and Bazaldua were unable to

27  identify either man.  (Id. at 321, 323 (Hughes); Lodgment No. 2,

28

03cv1463 J (RBB)

Rep.'s Tr. vol. 1, 46, 50-51 (Williams), 115-18 (French), 148-50, 152 (Kueber), 167-68 (Bazaldua).)

## II. PROCEDURAL BACKGROUND

The San Diego District Attorney filed an information on September 11, 2000, charging Jones and his codefendant, Anthony Penton, with two counts of robbery, see Cal. Penal Code § 211 (West 1999), four counts of attempted robbery, see Cal. Penal Code §§ 211, 664 (West 1999 & Supp. 2007), and two counts of false imprisonment, see Cal. Penal Code §§ 236, 237(a) (West Supp. 2007). (Lodgment No. 1, Clerk's Tr. vol. 1, 1-4, Sept. 11, 2000.)  The information also alleged that Petitioner had served four prior prison terms and, in each of the counts, that codefendant Penton personally used a firearm, see Cal. Penal Code § 12022.53(b) (West Supp. 2007).  (Id. at 6-7.)

Prior to trial, the judge recommended that Jones plead guilty to all charges in the information in exchange for receiving a twelve-year sentence.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 4-5, Nov. 1, 2000.)  Petitioner rejected the offer.  (Id.)  Immediately afterwards, the District Attorney filed an amended information which added allegations that Jones personally used a firearm in the commission of the crimes listed in each count.  (Id. at 5-6; Lodgment No. 1, Clerk's Tr. vol. 1, 24-28, Nov. 1, 2000.)  The information was also amended to change one robbery charge to attempted robbery.  (Id. at 25.)

Jones and Penton were tried jointly in a jury trial.  The jury convicted Petitioner of all charges and found that each of the firearm-use allegations were true.  (Lodgment No. 1, Clerk's Tr. vol. 2, 266-72, Nov. 8, 2000.)  The prosecutor moved to dismiss two

of the prior prison term allegations, and the motion was granted. (<u>Id.</u> at 257; Lodgment No. 2, Rep.'s Tr. vol. 3, 513, Nov. 8, 2000.) Petitioner waived his right to a jury trial on the remaining prison priors and admitted they were true.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 504-05, Nov. 7, 2000.)

Jones subsequently filed a motion for a new trial, claiming that he received ineffective assistance of trial counsel. (Lodgment No. 1, Clerk's Tr. vol. 1, 140-41, May 18, 2001.)  After a hearing, the trial court denied the motion.  (Lodgment No. 1, Clerk's Tr. vol. 2, 281, June 18, 2001; Lodgment No. 2, Rep.'s Tr. vol. 3, 686, June 18, 2001.)  Petitioner was sentenced to thirty-seven years in prison, comprised of the middle term of three years for the robbery, ten years for the firearm enhancement, eight months for each of the five attempted robbery counts, three years and four months for the firearm enhancement on each of those counts, eight months for each of the two false imprisonment counts, and enhancements of one year and four months for each of the two counts.  (Lodgment No. 1, Clerk's Tr. vol. 1, 238-39, June 26, 2001; Lodgment No. 2, Rep.'s Tr. vol. 3, 701-02, June 20, 2001.) The judge also imposed one-year enhancements for each of the prison priors, which were stayed pursuant to California Penal Code section 654.  (Lodgment No. 1, Clerk's Tr. vol. 1, 238; Lodgment No. 2, Rep.'s Tr. vol. 3, 702.)

Jones appealed his conviction and sentence to the California Court of Appeal by filing a direct appeal and a petition for writ of habeas corpus.  (Lodgment No. 3, Appellant's Opening Br., <u>People v. Jones</u>, No. D038250 (Cal. Ct. App. Oct. 2, 2002; Lodgment No. 4, Pet. for Habeas Corpus, <u>In re Jones</u>, No. D039422 (Cal. Ct. App.

8

1  Oct. 2, 2002).)  Jones argued, among other things, that he received

2  ineffective assistance of counsel at trial and during plea

3  negotiations and that there was insufficient evidence to convict

4  him on certain counts of attempted robbery and certain gun

5  allegations.  (See Lodgment No. 3, Appellant's Opening Br. at 13-

6  55, People v. Jones, No. D038250; Lodgment No. 4, Pet. for Habeas

7  Corpus at 8-13, In re Jones, No. D039422.)

8      On October 2, 2002, after consolidating Petitioner's appeal

9  and habeas petition, the appellate court affirmed Jones's

10 conviction.  (Lodgment No. 5, People v. Jones, No. D038250, slip

11 op. at 31 (Cal. Ct. App. Oct. 2, 2002).)  Jones then filed a

12 petition for review in the California Supreme Court.  (Lodgment No.

13 6, Pet. for Review, People v. Jones, No. S111271 (Cal. Jan. 21,

14 2003).)  The petition was denied without citation.  (Lodgment No.

15 7, People v. Jones, No. S111271, slip op. at 1 (Cal. Jan. 21,

16 2003).)

17     On April 10, 2003, Petitioner filed his first habeas petition

18 in the California Supreme Court, which he later withdrew.

19 (Lodgment No. 8, Pet. for Habeas Corpus, Jones v. Calderon, No.

20 S114976 (Cal. July 25, 2003); Lodgment No. 9, In re Jones, No.

21 S114976, order at 1 (Cal. July 25, 2003).)  On July 21, 2003,

22 Petitioner filed a federal Petition for Writ of Habeas Corpus in

23 this Court [doc. no. 1].  Jones then filed a second habeas petition

24 with the California Supreme Court on July 31, 2003.  (Lodgment No.

25 10, Pet. for Habeas Corpus, Jones v. Calderon, No. S117839 (Cal.

26 Apr. 14, 2004).)

27     Soon thereafter, he filed a First Amended Petition in this

28 Court deleting his unexhausted claims and seeking a stay of the

amended petition [doc. nos. 5, 7].   On September 4, 2003, the Court granted Jones's request while he exhausted certain claims in state court [doc. no. 8].   The Court subsequently granted two extensions of the stay [doc. nos. 15, 20].

The California Supreme Court denied Petitioner's second habeas petition on April 14, 2004.   (Lodgment No. 11, In re Jones, No. S117839, slip op. at 1 (Cal. Apr. 14, 2004).)   Jones then filed an Amended Petition in this Court [doc. no. 21].   Respondent filed an Answer [doc. no. 29] and Memorandum of Points and Authorities [doc. no. 30] on September 29, 2004.   Petitioner then filed a Traverse [doc. no. 32].

This Court issued a Report and Recommendation Re Denial of Petition for Writ of Habeas Corpus [doc. no. 33] on March 4, 2005. On May 2, 2005, after Jones had filed Objections to the Report and Recommendation [doc. no. 34], Petitioner filed another request for stay and abeyance [doc. no. 35] so he could return to state court to exhaust four new claims.   This Court issued a second Report and Recommendation Re: Denial of Motion to Amend and Request for Stay and Abeyance [doc. no. 40].   On March 29, 2006, United States District Judge Napoleon A. Jones, Jr. issued an Order [doc. no. 50] granting Petitioner's request to hold his Second Amended Petition in abeyance while he returned to state court to exhaust his new claims.   (Order Granting Mot. to Amend 12.)   Correspondingly, the district court rejected the two Reports and Recommendations under submission.   (Id.)

During this time, Jones filed his third state habeas petition on May 9, 2005, which he withdrew.   (Pet'r's Response to Opp'n to Mot. to Amend [doc. no. 39] Ex. A 3-6; In re Jones, No. S133747,

docket (Cal.) available at http://appellatecases.courtinfo.ca.gov
(search for case number "S133747," then follow "docket"
hyperlink).)

Petitioner subsequently filed his fourth habeas state
petition, which the California Supreme Court denied on May 24,
2006. (Supp. Lodgment No. 1, Pet. for Habeas Corpus at 4-7, In re
Jones, No. S135905 (Cal. May 24, 2006); Supp. Lodgment No. 2, In re
Jones, No. S135905, slip op. at 1 (Cal. May 24, 2006).)

Petitioner filed a Third Amended Petition [doc. no. 51] in
this Court on June 15, 2006. Respondent filed an Answer [doc. no.
66] on October 25, 2006. Jones then filed a Traverse [doc. no.
69].

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"),
28 U.S.C.A. § 2244 (West 2006), applies to all federal habeas
petitions filed after April 24, 1996. Woodford v. Garceau, 538
U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S. 320, 326
(1997)). AEDPA sets forth the scope of review for federal habeas
corpus claims:

> The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an application
> for a writ of habeas corpus in behalf of a person in
> custody pursuant to the judgment of a State court only on
> the ground that he is in custody in violation of the
> Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see also Reed v. Farley, 512
U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th
Cir. 1991). Because Jones's Petition was filed on July 21, 2003,
AEDPA applies to this case. See Woodford, 538 U.S. at 204.

In 1996, Congress "worked substantial changes to the law of habeas corpus." Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).  Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2006).

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C.A § 2254(a).  Petitioner must allege that the state court violated his federal constitutional rights. See Reed, 512 U.S. at 347; Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); Jackson, 921 F.2d at 885 (concluding that federal courts have no authority to review a state's application of its law).  Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude.

1   Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989)

2   (stating that federal courts are not concerned with errors of state

3   law unless they rise to the level of a constitutional violation).

4        The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003),

5   stated that "AEDPA does not require a federal habeas court to adopt

6   any one methodology in deciding the only question that matters

7   under § 2254(d)(1) -- whether a state court decision is contrary

8   to, or involved an unreasonable application of, clearly established

9   Federal law." Id. at 71 (citation omitted).  In other words, a

10  federal court is not required to review the state court decision de

11  novo.  Id.  Rather, a federal court can proceed directly to the

12  reasonableness analysis under § 2254(d)(1).  Id.

13       The "novelty" in § 2254(d)(1) is "the reference to 'Federal

14  law, as determined by the Supreme Court of the United States.'"

15  Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd

16  on other grounds, 521 U.S. 320 (1997) (emphasis added).  Section

17  2254(d)(1) "explicitly identifies only the Supreme Court as the

18  font of 'clearly established' rules." Id.  "[A] state court

19  decision may not be overturned on habeas corpus review, for

20  example, because of a conflict with Ninth Circuit-based law."

21  Moore, 108 F.3d at 264.  "[A] writ may issue only when the state

22  court decision is 'contrary to, or involved an unreasonable

23  application of, 'an authoritative decision of the Supreme Court.'"

24  Id.; see also Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.

25  1996); Childress v. Johnson, 103 F.3d 1221, 1225 (5th Cir. 1997);

26  Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996).

27       [A] state court decision is "contrary to [the Supreme
         Court's] clearly established precedent if the state court
28       applies a rule that contradicts the governing law set
         forth in [the Court's] cases" or "if the state court

13

confronts a set of facts that are materially
indistinguishable from a decision of [the] Court and
nevertheless arrives at a result different from . . .
precedent."

Lockyer, 538 U.S. at 73 (quoting Williams v. Taylor, 529 U.S. 362,
405-06 (2000)) (citing Bell v. Cone, 535 U.S. 685, 694 (2002)).  A
state court unreasonably applies federal law if its application is
"objectively unreasonable," which is "more than [being] incorrect
or erroneous."  Id. at 75.

    Furthermore, with respect to the factual findings of the trial
court, AEDPA provides:

        In a proceeding instituted by an application for a
    writ of habeas corpus by a person in custody pursuant to
    the judgment of a State court, a determination of a
    factual issue made by a State court shall be presumed to
    be correct.  The applicant shall have the burden of
    rebutting the presumption of correctness by clear and
    convincing evidence.

28 U.S.C.A. § 2254(e)(1) (West 2006).

## IV. DISCUSSION

    In the eight grounds for relief contained in Jones's Third
Amended Petition, he makes ten claims that Petitioner argues
entitle him to habeas relief:  (1) ineffective assistance of trial
counsel for failure to investigate his alibi defense and
fingerprint evidence; (2) ineffective assistance of counsel for
failure to impeach a critical prosecution witness; (3) ineffective
assistance of counsel for failure to properly advise Jones of the
consequences of rejecting a plea offer; (4) a violation of due
process for the trial court's error in advising Petitioner of the
possible sentencing consequences of rejecting a plea offer; (5)
insufficient evidence to support his convictions for attempted
robbery; (6) insufficient evidence to support the sentence

14

enhancements for use of a firearm; (7) ineffective assistance of counsel for failure to object to, or seek to suppress, evidence of a separate conviction; (8) a violation of due process by the introduction of irrelevant evidence of a separate conviction; (9) a violation of due process for the trial court's failure to give a limiting instruction regarding the use of the separate conviction evidence; and (10) cumulative error resulting in a fundamentally unfair trial. (Third Am. Pet. 6-13.)

Respondent contends that Petitioner is not entitled to relief on claims one through six because the state court's decision denying those claims was not contrary to, or an unreasonable application of, federal law. (Resp't's Mem. of P. & A. 6-15.) She also argues that claims contained in Jones's fifth through eighth grounds for relief are procedurally barred and were filed after the expiration of the statute of limitations. (Id. at 15-21.)

**A.   Ineffective Assistance of Counsel**

Jones alleges in grounds one and two of his Third Amended Petition that he received ineffective assistance of trial counsel when his attorney (1) failed to investigate his alibi defense, consult a fingerprint expert, and interview potential witnesses; (2) failed to impeach a critical prosecution witness; and (3) failed to properly advise Petitioner of the consequences of rejecting an offered plea agreement. (Third Am. Pet. 6-8, 17-36.)

In deciding a § 2254 habeas petition, this Court reviews the "last reasoned" state court decision. Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). The California Supreme Court summarily denied Jones's petition for review and his second and fourth habeas petitions, which Jones filed after withdrawing his first and third

petitions.  (Lodgment No. 7, <u>Jones</u>, No. S111271, slip op. at 1; Lodgment No. 11, <u>Jones</u>, No. S117839, slip op. at 1; Supp. Lodgment No. 2, <u>Jones</u>, No. S135905, slip op. at 1.)  Therefore, this Court "looks through" those denials to the California Court of Appeal's reasoned opinion on Petitioner's direct appeal.  <u>Medina</u>, 386 F.3d at 877.

The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  <u>Dows v. Wood</u>, 211 F.3d 480, 484 (9th Cir. 2000); <u>see</u> <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (stating "the right to counsel is the right to the effective assistance of counsel.").  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set the federal standard for resolving ineffective assistance of counsel claims.  These claims have two prongs that must both be satisfied.  First, counsel's performance must have been deficient in that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 687-88.  Second, "the defendant must show that the deficient performance prejudiced the defense"; in other words, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> at 687, 694.

Courts need not address both prongs if the petitioner alleging ineffective assistance makes an insufficient showing on one.  <u>Id.</u> at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Id.</u>

03cv1463 J (RBB)

"A lawyer generally is presumed competent, and it is the burden of the accused to overcome this presumption." Dows, 211 F.3d at 485 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 689.  Additionally, courts will presume that a defendant has suffered prejudice "when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceedings, or if counsel entirely failed to subject the prosecution's case to meaningful adversarial testing." Hays v. Alabama, 85 F.3d 1492, 1496-97 (11th Cir. 1996) (citing Cronic, 466 U.S. at 662); see also Dows, 211 F.3d at 485.  Otherwise, "the defendant must point to specific errors made by defense counsel that undermine confidence in the outcome of the trial." United States v. LaRouche, 896 F.2d 815, 823 (6th Cir. 2003); see Cronic, 466 U.S. at 659 n.26 (citations omitted); Strickland, 466 U.S. at 693-96.

**1.   Counsel's Failure to Investigate an Alibi Defense and Obtain Favorable Evidence**

In his first claim for relief, Jones alleges his trial counsel failed to conduct a reasonable investigation, present witnesses in support of an alibi defense, and consult an expert regarding fingerprint evidence.  (Third Am. Pet. 6.)  Respondent asserts that Petitioner is not entitled to habeas relief on this claim because the state court's decision was not contrary to, or an unreasonable application of, the Supreme Court's holding in Strickland. (Resp't's Mem. of P. & A. 9.)

In rejecting Jones's claim, the California Court of Appeal applied Strickland and concluded that Jones failed to meet the

prejudice prong of the <u>Strickland</u> test.  (Lodgment No. 5, <u>People v.</u>
<u>Jones</u>, No. D038250, slip op. at 13.)  The court stated:

> The evidence of Jones's guilt was overwhelming.
> This included the undisputed fingerprint evidence on the
> bag carrying the guns and tape, the eyewitness
> identifications, and Jones's capture after fleeing police
> in Penton's rental car and throwing a gun out the window
> of the car.  Thus, it is not reasonably probable that but
> for counsel's alleged deficiencies Jones would have
> received a more favorable result, and the court did not
> abuse its discretion in denying Jones's motion for a new
> trial.

(<u>Id.</u> at 13-14.)  Because it determined Jones failed to satisfy the
prejudice prong of <u>Strickland</u>, the state appellate court did not
decide whether Petitioner's counsel's performance was deficient.
(<u>Id.</u> at 13.)

Under § 2254(d), this Court's review is limited to considering
whether the appellate court's determination was contrary to, or an
unreasonable application of, <u>Strickland</u>.  The state court set forth
the appropriate standard for evaluating prejudice under <u>Strickland</u>.
Furthermore, it correctly observed that a court need not address
the deficiency prong if the defendant fails to make a showing of
prejudice.  <u>Strickland</u>, 466 U.S. at 697.  The California Court of
Appeal found that Jones could not establish he had been prejudiced
by the alleged deficiencies of his trial counsel.  (Lodgment No. 5,
<u>Jones</u>, No. D038250, slip op. at 13.)  Consequently, he did not
prove that counsel rendered ineffective assistance entitling Jones
to a new trial.  (<u>Id.</u> at 12-14.)

The Court "must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance; that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action 'might be

03cv1463 J (RBB)

considered sound trial strategy.'" <u>Strickland</u>, 466 U.S. at 689.
Counsel's conduct is examined in light of all the circumstances
present at the time. <u>Id.</u> at 690.

> [S]trategic choices made after thorough investigation of
> law and facts relevant to plausible options are virtually
> unchallengeable; and strategic choices made after less
> than complete investigation are reasonable precisely to
> the extent that reasonable professional judgments support
> the limitations on investigation. In other words,
> counsel has a duty to make reasonable investigations or
> to make a reasonable decision that makes particular
> investigations unnecessary. In any ineffectiveness case,
> a particular decision not to investigate must be directly
> assessed for reasonableness in all the circumstances,
> applying a heavy measure of deference to counsel's
> judgments.

<u>Id.</u> at 690-91.

> ### a. <u>Failure to Investigate and Present an Alibi Defense</u>

Jones alleges that he had a "viable alibi" defense that was
not presented at his trial. (Third Am. Pet. 6.) He claims that he
told his attorney about four potential alibi witnesses, but his
attorney did not interview them. (<u>Id.</u>)

An attorney's choice not to call witnesses to testify at trial
must be informed by an adequate investigation in order to be a
reasonable, tactical decision that will be upheld under <u>Strickland</u>.
<u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456-57 (9th Cir. 1994).
"Ineffectiveness is generally clear in the context of complete
failure to investigate because counsel can hardly be said to have
made a strategic choice when [he] has not yet obtained the facts on
which such a decision could be made." <u>United States v. Gray</u>, 878
F.2d 702, 711 (3d Cir. 1989) (citations omitted); <u>see also</u>
<u>Strickland</u>, 466 U.S. at 690-91; <u>Sanders</u>, 21 F.3d at 1457.

Petitioner alleges that four alibi witnesses would have
testified "he was at his home at around the time of the alleged

crimes." (Third Am. Pet. 6.)  The witnesses were Petitioner's wife, his mother-in-law, a neighbor, and his children's babysitter. (Id. at 18.)  During the hearing on Jones's motion for a new trial, the court heard testimony from Jones and six witnesses.  (See Lodgment No. 2, Rep.'s Tr. vol. 3, 599-683.)  Three of the witnesses –- Loretta Bradley (the neighbor), Latania Jones (the wife), and Joyce Thomas (the mother-in-law) –- supported Petitioner's alibi defense by testifying about his whereabouts on the day of the robbery.  (Id. at 601-02, 612-17, 642-43.)  All three witnesses stated that Jones was at home fixing breakfast and doing laundry when the crimes were committed.  (Id.)

Latania Jones, Petitioner's wife, testified that she told Michael Taggart, Petitioner's trial counsel, that she wanted to testify about Jones's alibi, but he told her "it wouldn't be a good thing to get on the stand and say that." (Id. at 609-11, 626.) Latania also stated that she told Taggart the identities of three other potential alibi witnesses.  (Id. at 611-12.)  Joyce Thomas (Petitioner's mother-in-law) and Loretta Bradley (the neighbor) both testified that Taggart never interviewed them, even though they would have testified at trial that Jones was at home when the robbery was committed.  (Id. at 601-03, 642-44.)

The state court also heard testimony from Michael Taggart, Jones's trial counsel, about his investigation of the alibi defense and his decision not to present the defense at trial.  (Id. at 657-60, 666-76.)  Taggart testified that he was only aware of Latania and the Jones's babysitter as potential alibi witnesses.  (Id. at 669.)  He stated that neither Petitioner nor Latania ever gave him the name or contact information for the babysitter, so he could not

20

contact her.  (Id. at 670-71.)  Taggart did not interview any
witnesses regarding an alibi defense, aside from conversations he
had with Jones's wife.  (See id. at 658-60, 667.)

Taggart did not call any witnesses to testify in Petitioner's
defense.  (See Lodgment No. 2, Rep.'s Tr. vol. 2, 400, 411.)  After
the prosecution and Jones's codefendant finished presenting their
witnesses, Taggart indicated that he had planned to call
Petitioner's wife to testify, but she had left the courthouse.
(Id. at 398-99.)  Counsel told the trial judge that Latania would
testify as to Jones's alibi, and her testimony would be the only
evidence he presented in his case-in-chief.  (Id. at 400.)  The
next morning, when it was time for Taggart to begin his case,
however, he rested without calling Latania to testify.  (Id. at
411.)

Taggart had concerns about presenting the alibi defense at
trial because he doubted its credibility.  (Lodgment No. 2, Rep.'s
Tr. vol. 3, 670.)  In particular, he was troubled by the
credibility of alibi testimony because Jones and his wife told
Taggart they had a babysitter who would testify for Petitioner, but
Jones never gave him the babysitter's name, address, or phone
number so that Taggart could speak to her.  (Id. at 659-60, 670,
674.)

Counsel's concerns about the credibility of Petitioner's alibi
witnesses and the viability of the defense is a strategic reason
for not presenting the defense at trial.  Although Taggart did not
speak to the babysitter before Jones's trial, he did speak with
Latania and Jones; and from their representations, he doubted the
credibility of the defense.  "[F]ew decisions a lawyer makes draw

so heavily on professional judgment as whether or not to proffer a witness at trial . . . ." Alcala v. Woodford, 334 F.3d 862, 871 (9th Cir. 2003) (quoting Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir. 1999)). Accordingly, Petitioner has failed to overcome the presumption that Taggart's decision not to present an alibi defense was a reasonable, tactical decision. See Strickland, 466 U.S. at 689; see also Siripongs v. Calderon, 133 F.3d 732, 735 (9th Cir. 1998) (finding counsel's performance to be based on a reasonable tactical decision when, after hiring an expert and investigating a possible defense, counsel determined it was not credible enough to present to the jury).

Jones has also failed to show that he was prejudiced by Taggart's decision not to present an alibi defense. The state trial court found the testimony of Petitioner's alibi witnesses (all of whom were family members or friends of Jones) had "very little, if any, merit." (Lodgment No. 2, Rep.'s Tr. vol. 3, 699-700.) The court determined that much of the testimony was internally inconsistent. (Id. at 699.) This Court defers to these credibility determinations. Ortiz v. Stewart, 149 F.3d 923, 936 (9th Cir. 1998); Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir. 1990); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")

Jones points the Court's attention to Lord v. Wood, 184 F.3d 1083, 1093 (9th Cir. 1999), where the Ninth Circuit found the petitioner was prejudiced by his counsel's failure to present three potential alibi witnesses. (Third Am. Pet. 22; Traverse 5.) That

case is distinguishable from Petitioner's.  In <u>Lord</u>, the alibi
witnesses were unrelated to the defendant; thus, they did not have
any motive to lie.  <u>Lord</u>, 184 F.3d at 1095.  Here, the alibi
witnesses are all family members or friends of Jones, so they lack
the inherent credibility of the disinterested witnesses in <u>Lord</u>.

Because the alibi witnesses were not credible, there is no
reasonable probability that the alibi testimony would have altered
the outcome of the trial.  Petitioner has failed to show a
reasonable probability that the outcome would have been different
if his attorney had pursued an alibi defense.

### b.   <u>Failure to Investigate Fingerprint Evidence</u>

Jones also complains that Taggart failed to hire an expert to
perform a fingerprint analysis of the physical evidence.  (Third
Am. Pet. 6.)  Petitioner asserts that Taggart should have hired a
fingerprint expert to analyze the fingerprint found on the plastic
bag that the prosecution's expert found matched Jones's print and
have the defense expert examine the duct tape used to bind the
victim's hands for fingerprints.  (<u>Id.</u> at 20-22.)

Taggart testified at the hearing on the new trial motion that
he was aware of the fingerprint and duct tape evidence, but he did
not hire an investigator or expert prior to trial to test the
evidence.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 662-64.)
Additionally, Taggart was given the opportunity during trial to
hire an expert.  When he complained that the prosecutor was
introducing fingerprint evidence Taggart had not analyzed, the
judge adjourned the trial so counsel could hire an expert to
examine the evidence.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 191-95.)
Even though he was given a recess specifically for this purpose,

Taggart did not make any attempts to contact an expert.  (Lodgment
No. 2, Rep.'s Tr. vol. 3, 664-65.)  He did not hire a fingerprint
expert because he did not have sufficient funding.  (<u>Id.</u> at 663-
65.)

     After Petitioner was convicted, he retained attorney Pamela
Lacher to file a motion for a new trial.  Lacher hired Lisa Di Meo,
a forensic expert, to perform a fingerprint analysis of certain
physical evidence.  (<u>See</u> Lodgment No. 2, Rep.'s Tr. vol. 3, 650.)
Di Meo analyzed several pieces of duct tape used to bind Sean
Hughes's hands during the robbery.  (<u>Id.</u> at 652.)  The tape was
never analyzed prior to Petitioner's trial.

     The pieces of tape were adhered together in layers.  (<u>Id.</u> at
652-53.)  Di Meo found three latent fingerprints on the adhesive
side of the tape between the second and third layers.  (<u>Id.</u> at
654.)  After comparing the latent prints with Jones's prints, she
concluded that the fingerprints on the duct tape did not belong to
Petitioner.  (<u>Id.</u>)  She did, however, match Jones's fingerprint to
a print on the plastic bag found at the scene.  (<u>Id.</u> at 655.)

     The trial judge denied Jones's motion for a new trial.  He
found Petitioner's trial counsel could not have "committed some
kind of egregious error under the circumstances" because there was
"insurmountable" evidence against Jones.  (<u>Id.</u> at 686-87.)  The
court's ruling was premised on the following factual findings:  (1)
the victims identified Jones; (2) Jones's fingerprint was found on
the bag containing the guns and the duct tape; (3) Jones was
arrested three days after the robbery driving a car leased to
Penton and trying to evade the police; and (4) Jones possessed a
gun matching the description of a gun used in the robbery.  (<u>Id.</u> at

687.)  The judge referred to this evidence as "totally irrefuted."  (<u>Id.</u>)

In denying the motion for new a trial, the trial judge did not mention the newly-discovered fingerprint evidence presented at the hearing.  Lisa Di Meo's testimony that Petitioner's fingerprints did not match the fingerprints on the duct tape undermined Hughes's testimony that Jones was the person who bound the victim's hands with the tape.  (<u>See</u> Lodgment No. 2, Rep.'s Tr. vol. 2, 350.)

Just as the trial judge failed to mention this evidence in his ruling on the new trial motion, the state appellate court similarly disregarded this potentially exculpatory evidence because "[t]he evidence of Jones's guilt was overwhelming."  (Lodgment No. 5, <u>Jones</u>, No. D038250, slip op. at 13.)  In support of its conclusion, the appellate court pointed to the same four pieces of evidence that were described by the trial court as "totally irrefuted."  (<u>Id.</u>)

Jones is entitled to habeas relief if the state court ruling was either based on an unreasonable determination of the facts in light of the evidence or on an unreasonable application of <u>Strickland</u>.  28 U.S.C. §§ 2254(d)(1)-(2).  A state court decision involves an unreasonable application of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular prisoner's case."  <u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).  A state court makes an unreasonable determination of the facts when it fails to consider and weigh relevant evidence that was properly presented to it.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 1001 (9th Cir. 2004).  "[T]he

03cv1463 J (RBB)

state-court fact-finding process is undermined where the state
court has before it, yet apparently ignores, evidence that supports
petitioner's claim." Id. (citing Miller-El v. Cockrell, 537 U.S.
322, 346 (2003)).

### 1.   The Determination of the Facts

Here, Jones's challenge requires an intrinsic review of the
record, which in turn demands deference to the state courts. Id.
at 999-1000.  The state court's fact-finding does not survive
intrinsic review if the federal court is "satisfied that any
appellate court to whom the defect is pointed out would be
unreasonable in holding that the state court's fact-finding process
was adequate." Id. at 1000.

A state fact finder is not required to address every "every
jot and tittle of proof suggested," but it must not overlook
relevant probative evidence. Id. at 1001 (citing Miller-El, 537
U.S. at 347).

> To fatally undermine the state fact-finding process, and
> render the resulting finding unreasonable, the overlooked
> or ignored evidence must be highly probative and central
> to petitioner's claim.  In other words, the evidence in
> question must be sufficient to support petitioner's claim
> when considered in the context of the full record bearing
> on the issue presented in the habeas petition.

Id. (emphasis added).

Here, both the trial court and the state appellate court
overlooked the duct tape.  Neither court mentioned that the
fingerprints found on the duct tape did not belong to Jones.  In
finding that the evidence of Jones's guilt was "totally irrefuted"
and "overwhelming," both courts neglected to consider evidence that
someone other than Petitioner left fingerprints on the adhesive
side of the duct tape, between two of the layers of tape, that was

1  wrapped around Hughes's hands.  This evidence points to the

2  conclusion that someone other than Jones bound the victim's hands.

3  If presented at trial, this fingerprint evidence could have

4  discredited Hughes's identification and supported Petitioner's

5  defense that the "person that did the tying up was that second

6  person, and it wasn't Mr. Jones." (Lodgment No. 2, Rep.'s Tr. vol.

7  3, 684.)  To determine the probative value of the fingerprint

8  evidence, this Court must consider all the evidence against Jones.

9                      **(a)  <u>Fingerprint Evidence</u>**

10      In spite of the duct tape, there was fingerprint evidence

11 against Petitioner.  At trial, a latent print examiner, Mary

12 Widner-Brown, testified that she obtained a latent fingerprint from

13 a black plastic bag brought to her for examination.  (Lodgment No.

14 2, Rep.'s Tr. vol. 1, 170, 176-79.)  She compared the latent

15 fingerprint with a known print from Jones and was "absolutely

16 positive" that the print belonged to Jones.  (<u>Id.</u> at 188.)

17 Although other prints were on the bag, the examiner found only one

18 fingerprint that was usable for comparison purposes.  (<u>Id.</u> vol. 2,

19 241.)  Officer Dale Flamand collected the duct tape that had been

20 used to bind the victims and the plastic bag that was left upstairs

21 by the office.  (<u>Id.</u> at 244, 246.)  Hughes testified that the black

22 plastic bag was left upstairs in the hallway where they were all

23 sitting.  (<u>Id.</u> at 331.)  During the trial, the fingerprint expert

24 made no reference to the duct tape.  But in his closing argument,

25 counsel for Jones argued:  "[W]e've got five different victims,

26 each one being bound except for Miss Williams. . . .  Now, on all

27 of this duct tape, there are no prints found on any of this duct

28

tape.  Pretty interesting that there would be no fingerprints on any of this duct tape." (<u>Id.</u> at 477.)

### (b)   The Identification Testimony

Jones was identified on multiple occasions, by different victims, and with varying degrees of certainty.  On August 30, 1999, Shannon Williams was shown two photographic lineups.  From one, she identified the codefendant Anthony Penton as one of the robbers.  (<u>Id.</u> at 300.)  She said: "Him.  I'm sure of it.  He's the one that was talking on the cell phone." (<u>Id.</u>)  She also identified Jones in the other photographic lineup.  "That's the second guy, I'm positive." (<u>Id.</u>)  Williams attended a jail lineup on August 30, 2000.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 64.)  She was able to identify Penton.  (<u>Id.</u> at 65.)  In the second jail lineup, Williams tentatively identified an individual (not Jones), but a few hours later, she called the prosecutor and said that she had identified the wrong person.  (<u>Id.</u> at 65-67.)  The preliminary hearing occurred on September 11, 2000, and Williams identified Penton and had "no problem" identifying Jones, whose hair length and beard was different at the August 30, 2000, lineup.  (<u>Id.</u> at 70-71, 102.)  At the trial, Williams identified Penton as the robber who pointed a gun at her and Jones as the robber who was running down the stairs with a black handgun in his hand.  (<u>Id.</u> at 46, 50.)  She had no doubt Penton and Jones were the two robbers. (<u>Id.</u> at 71.)

Roy French, another robbery victim, was shown the same photographic lineups.  He pointed to Jones, stating that he was "the closest of all of the photos to the shorter, heavier-set suspect." (<u>Id.</u> at 301).  French noted that he was "only fifteen to

twenty per cent sure it was the right suspect." (Lodgment No. 2, Rep.'s Tr. vol. 1, 117.)  He was not able to identify the other robber in the other photo lineup.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 301.)  At the jail lineup and at trial, French was unable to identify either Jones or Penton as the robbers.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 117-18.)

Victim Sean Hughes identified Penton and a second individual in the first set of photographs, but number five (Penton) "appeared closer." (Id. at 302-03.)  In lineup number two, Hughes pointed to the photo of Jones and said, "That's him.  This is the one that was upstairs with me.  This is him." (Id. at 303.)  At the time of the lineup, there was "no doubt" that the person he identified (Jones) was the individual that held him at gunpoint.  (Id. at 338.)

Approximately one year later, on August 30, 2000, two live lineups were conducted at San Diego County Jail, one with Penton and one with Jones.  (Id. at 318, 338-39.)  Hughes identified Penton and tentatively identified Jones, stating that Jones "did a good job of changing his appearance.  He appeared to have lost some weight and grew his hair out and shaved really clean." (Id. at 339.)  At the preliminary hearing in September of 2000, Hughes had no problem identifying Penton or identifying Jones, who had shorter hair and a goatee.  (Id. at 342-43.)  On that date, Jones's appearance was similar to his appearance at the time of the robbery.  (Id. at 342.)  At trial, Hughes had no doubt that Jones and Penton were the two that held him at gunpoint in June of 1999. (Id. at 343.)

During the trial, Hughes testified that Jones and Penton led him and his two daughters to the offices upstairs.  (Id. at 323-

1   24.)   Jones was holding a plastic bag, removed duct tape from the

2   bag, and bound Hughes's arms behind his back in duct tape.  (_Id._ at

3   325.)   Jones then pulled two guns from the bag, one for himself and

4   one for Penton.  (_Id._)  Penton went downstairs, and Hughes asked

5   Jones to release his daughters.  (_Id._ at 326.)  Hughes was with

6   Jones for thirty to forty-five minutes before Jones ran downstairs.

7   (_Id._ at 328.)  During their time together, Hughes "got a good look"

8   at Jones.  (_Id._ at 329.)

9        Robert Kueber, another victim, provided little useful

10  identification testimony.  Three or four months after the incident,

11  he tentatively identified Penton from a photographic lineup, but at

12  a live lineup in August of 2000, he was unable to identify Penton;

13  in court, he said that Penton looked similar to one of the

14  perpetrators.  (_Id._ at 139-40, 150-51.)  Kueber was never able to

15  identify Jones because on the day of the robbery, he did not see a

16  second robber.  (_Id._ at 152-53.)

17                  **(c)  <u>Evading Arrest in Penton's Car</u>**

18       On June 29, 1999, Jones was arrested by Officer Andrew Spear

19  after being pursued on residential streets at speeds up to seventy

20  miles an hour.  (_Id._ at 264-66.)  During the chase, Jones threw a

21  black, fully loaded semiautomatic pistol out of the window of the

22  car he was driving.  (_Id._ at 266, 268.)  On June 4, 1999, the

23  codefendant Anthony Penton rented a Chevrolet Monte Carlo with

24  license number 4ELF799.  (_Id._ at 259, 262-63.)  This was the

25  vehicle driven by Jones on the day of his arrest.  (_Id._ at 265.)

26

27

28

1           **(d)**   **The Probative Value of the Overlooked**

2                 **Evidence**

3      Without the presentation of the duct tape fingerprint

4 evidence, the jurors had no reason to doubt Hughes's identification

5 of Jones as the robber who bound him.  "While [the fingerprint

6 evidence] is perhaps not conclusive, it is certainly highly

7 probative.  A rational fact-finder might discount it . . . but no

8 rational fact-finder would simply ignore it."  <u>Taylor</u>, 366 F.3d at

9 1006.

10      "In making findings, a judge must acknowledge significant

11 portions of the record, particularly where they are inconsistent

12 with the judge's findings."  <u>Id.</u> at 1007.  Because the state courts

13 failed to consider, or even mention the existence of, the

14 fingerprint evidence presented at the hearing on Jones's new trial

15 motion, the state's fact-finding process was incomplete; the

16 question is whether it was fatally defective.  <u>See</u> <u>Miller-El</u>, 537

17 U.S. at 346; <u>Taylor</u>, 366 F.3d at 1008.

18      "How serious the defect, of course, depends on what bearing

19 the omitted evidence has on the record as a whole."  <u>Taylor</u>, 366

20 F.3d at 1008.  The multiple identifications of Jones and Penton;

21 Jones's fingerprint on the plastic bag left on the premises, which

22 contained the guns and duct tape; and Jones's arrest after

23 attempting to evade police while driving a car leased to Penton all

24 diminish the significance of the duct tape evidence.  Furthermore,

25 Jones's counsel already argued that no fingerprints were found on

26 the duct tape.

27      The state court's fact-finding process was not unreasonable,

28 and the findings of the California Court of Appeal on Jones's

1  ineffective assistance of counsel claim are entitled to a

2  presumption of correctness under 28 U.S.C. § 2254(e)(1).  Taylor,

3  id. at 1001-01; see also Miller-El, 537 U.S. at 340.  Petitioner

4  should not be granted habeas relief based on a claim that the state

5  courts made an unreasonable determination of the facts underlying

6  his ineffective assistance of counsel claim.

7  **2.  The Application of Strickland**

8       Next, the Court must decide whether there has been an

9  unreasonable application of clearly established law.  Under

10  Strickland, counsel renders deficient performance when his "acts or

11  omissions [are] outside the wide range of professionally competent

12  assistance."  Strickland, 466 U.S. at 690.  A decision not to

13  investigate is only reasonable if it is based on a strategic choice

14  by counsel that makes the particular investigation unnecessary.

15  Id. at 690-91.  Here, attorney Taggart did not make a strategic

16  decision.  He testified at the new-trial motion hearing that he did

17  not hire a fingerprint expert "first and foremost" because he did

18  not have the funding to do so.  (Lodgment No. 2, Rep.'s Tr. vol. 3,

19  662-65.)  When asked if he knew that he could get funding from the

20  county to hire an expert, Taggart replied, "I don't know," but he

21  had not pursued obtaining a fingerprint expert.  (Id. at 664.)

22       Failing to hire, or even attempt to hire, an expert to analyze

23  the physical evidence is not a reasoned, tactical decision when it

24  is based on a perceived lack of funding rather than a sound trial

25  strategy.  See Jones v. Wood, 114 F.3d 1002, 1012 (9th Cir. 1997)

26  (finding deficient performance where the physical evidence, if

27  tested, would have strengthened the defense and undermined the

28  prosecution's case); Sims v. Livesay, 970 F.2d 1575, 1580 (6th Cir.

1  1992) (finding deficient performance where counsel failed to have a

2  quilt tested for gun powder residue when the evidence, if tested,

3  would have provided the defense with a theory of the case that fit

4  with the defendant's version of events).  Thus, Taggart rendered

5  deficient performance because the decision not to investigate was

6  unreasonable.

7      The California Court of Appeal, however, did not address

8  deficient performance.  Instead, it held:

9          Here, even assuming Jones could show ineffective
        assistance of counsel, he cannot meet the second prong of
10       the Strickland test:  that there is a reasonable
        probability that but for counsel's errors a determination
11       more favorable to Jones would have resulted.  Therefore,
        we need not even consider whether Jones's counsel's
12       performance was deficient.

13  (Lodgment No. 5, People v. Jones, D038250, slip op. at 13 (citing

14  Strickland, 466 U.S. at 697).)  Courts need not address both

15  deficient performance and prejudice when analyzing an ineffective

16  assistance of counsel claim.  Strickland, 466 U.S. at 697.  Indeed,

17  if prejudice has not been shown, the claim should be disposed of on

18  that ground.  Id.

19      On the other hand, "if counsel entirely fails to subject the

20  prosecution's case to meaningful adversarial testing, then there

21  has been a denial of Sixth Amendment rights that makes the

22  adversary process itself presumptively unreliable."  United States

23  v. Cronic, 466 U.S. at 659.  Taggart's performance did not fall to

24  this level.  Counsel's failure to consult a fingerprint expert does

25  not "undermine confidence in the outcome of the trial."  See United

26  States v. La Rouche, 896 F2d at 823.  Contrary to Jones's

27  contention (Pet. 24), this case is not one where prejudice should

28  be presumed.

1    Here, Taggart's performance did not prejudice Jones's trial.

2  Although evidence indicating that someone other than Petitioner

3  bound Hughes's hands with duct tape conflicts with Hughes's

4  identification of Jones, the evidence does not seriously draw into

5  question Jones's participation in the robbery.  There is no

6  reasonable probability that this evidence would have caused the

7  jury to entertain a reasonable doubt about Jones's guilt.  <u>See</u>

8  <u>Strickland</u>, 466 U.S. at 695.

9    The state appellate court's conclusion that Jones was not

10 prejudiced by his attorney's failure to investigate the duct tape

11 evidence and present it at trial was not an unreasonable

12 application of <u>Strickland</u>.  Accordingly, ground one in Jones's

13 Third Amended Petition does not entitle him to habeas relief.

14    **2.  <u>Failure to Impeach a Critical Prosecution Witness</u>**

15    Jones next argues that defense counsel was ineffective for

16 failing to impeach prosecution witness Sean Hughes with evidence of

17 his prior convictions and prior inconsistent statements.  (Third

18 Am. Pet. 7.)  According to Petitioner, "Hughes was the only witness

19 to consistently claim petitioner was one of the robbers," so

20 Jones's attorney was ineffective for failing to test Hughes's

21 credibility by impeachment.  (<u>Id.</u> at 29.)

22    Petitioner raised this claim in his second petition for habeas

23 corpus relief filed in the California Supreme Court.  (Lodgment No.

24 10, Pet. at 3, <u>Jones</u>, No. S117839.)  The petition was denied

25 without a written opinion; instead, the court cited <u>In re Swain</u>, 34

26 Cal. 2d 300, 304, 209 P.2d 793, 796 (1949); <u>People v. Duvall</u>, 9

27 Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr. 2d 259, 265

28 (1995); <u>In re Waltreus</u>, 62 Cal. 2d 218, 397 P.2d 1001, 42 Cal.

Rptr. 9 (1965); and In re Dixon, 41 Cal. 2d 756, 264 P.2d 513
(1953). (Lodgment No. 11, In re Jones, No. S117839, slip op. at
1.) Citation to these cases indicates that the state court
declined to reach the merits of Jones's claims because they were
procedurally barred. See La Crosse v. Kernan, 244 F.3d 702, 704-05
(9th Cir. 2001).

Respondent does not argue that this claim should not be
addressed on its merits. Because there is no state court decision
on the merits of this claim, this Court reviews it de novo. Pirtle
v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). The Court must
independently determine whether counsel's failure to impeach Hughes
with prior convictions and inconsistent statements amounted to
ineffective assistance under Strickland.

Jones asserts that defense counsel informed him that Hughes,
one of the victims who identified Petitioner as one of the robbers,
had a "rap sheet," yet Jones's attorney failed to impeach Hughes
during cross-examination with his prior conviction. (Third Am.
Pet. 29.) Petitioner claims that "Hughes' prior record would have
made it difficult for Hughes or the prosecutor to explain why the
jury should believe any of Hughes' statements." (Id.)

Jones provides no specific information about Hughes's
convictions, so the Court has no basis to determine whether the
evidence would have been admissible under California law. In any
event, "[c]onclusory allegations which are not supported by a
statement of specific facts do not warrant habeas relief." James
v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (citing Boehme v. Maxwell,
423 F.2d 1056, 1058 (9th Cir. 1970)).

Assuming Hughes had a criminal record that could have been introduced as impeachment evidence, this Court cannot say that failure to do so constituted ineffective assistance of counsel. Jones cannot overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689; see also Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001). Jurors were likely sympathetic to Hughes, given that he and his two young daughters were victims of this crime. For that reason, cross-examining Hughes about his prior, unrelated, criminal history could risk alienating the jurors who might view it as an unfair attack on the victim. This would be a sound strategic reason for not bringing up Hughes's alleged prior conviction.

Jones has also failed to show he was prejudiced. In Hoots v. Allsbrook, 785 F.2d 1214 (4th Cir. 1986), the Fourth Circuit was presented with the same claim Jones makes here. Id. at 1221. The court rejected the petitioner's claim of ineffective assistance for failure to impeach a prosecution witness with evidence of the witness's criminal record, finding there was no reasonable probability the outcome of the trial would have been different:

> Given the vagaries of attempts to impeach with matters collateral to testimonial trustworthiness, we simply are not able to declare that the failure to impeach by that means here gives rise to the reasonable probability that had it been done Hoots would not have been convicted. . . . It is of course possible that impeachment might sufficiently have shaken [the witness's] credibility to tip the reasonable doubt balance. It is at least equally possible, however, that the attempt to impeach by this collateral means would have been viewed by the jury as an unwarranted, desperate effort to discredit a witness whose testimony was intrinsically and by demeanor wholly credible.

Id. The court concluded that prejudice had not been established
because a mere possibility of a different outcome is not enough to
satisfy the Strickland standard. Id. Similarly, Petitioner has
shown no more than a mere possibility that impeaching Hughes's
testimony with evidence of his alleged criminal record would have
changed the outcome of the trial. Accordingly, Jones has failed to
show that prejudice resulted from his attorney's performance.

Petitioner also contends that counsel did not cross-examine
Hughes at trial about inconsistent statements he made concerning
the certainty of his identification and his opportunity to observe
the perpetrators. (Third Am. Pet. 7, 29.) Jones asserts that
"Hughes['s] prior statements were inconsistent with his trial
testimony. During trial he altered the level of certainty of his
identification and increased the amount of time he allegedly viewed
the subject." (Id. at 7.)

The record undermines Jones's contentions. His counsel did
cross-examine Hughes about his identification of Jones and the
length of time he observed the robbers. (Lodgment No. 2, Rep.'s
Tr. vol. 2, 350-53.) The attorney emphasized that Hughes only
tentatively identified Petitioner in a photo lineup. (Id. at 355.)
He also pointed out that at the preliminary hearing Hughes
testified he observed Jones for fifteen to thirty minutes, while at
trial he testified it was thirty to forty-five minutes. (Id. at
353.) Counsel also emphasized that Hughes was lying face-down on
the ground for some of the time he was with Petitioner. (Id. at
350-51.) The record shows that Jones's attorney effectively cross-
examined Hughes by drawing attention to the inconsistencies between
his trial and preliminary hearing testimony and by highlighting the

tentative nature of his original identification.  This does not constitute deficient performance.  Petitioner has failed to show prejudice and that his trial counsel rendered ineffective assistance under <u>Strickland</u>.  Therefore, this claim for relief should be denied.

### 3.   <u>Failure to Properly Advise Jones of the Consequences of Rejecting a Proposed Plea Bargain</u>

In ground two, Jones claims that he received ineffective assistance of counsel when his attorney gave him erroneous advice regarding a proffered plea bargain that Petitioner chose to reject. (Third Am. Pet. 8.)  Petitioner also asserts that the trial judge made inaccurate statements concerning his maximum sentencing exposure which contributed to the error.  (See <u>id.</u> at 8, 30.)

Jones raised this claim in his habeas petition to the California Court of Appeal, where he alleged that counsel failed to "adequately advise petitioner regarding the maximum potential sentence."  (Lodgment No. 4, Pet. at 11, <u>In re Jones</u>, No. D039422.) His claim was denied in a reasoned decision.  (Lodgment No. 5, <u>People v. Jones</u>, No. D038250, slip op. at 30.)  Jones then brought the claim in his petition for review to the California Supreme Court.  There, he modified the claim to add that counsel was aware an amended information was going to be filed but never informed Jones of the correct maximum term he was facing.  (Lodgment No. 6, Pet. for Review at 23-25, 28-29, <u>People v. Jones</u>, No. S111271.) The state court denied the petition without citation.  (Lodgment No. 7, <u>People v. Jones</u>, No. S111271, slip op. at 1.)

Because there is no reasoned decision from the state's highest court, this Court must "look through" the California Supreme

Court's denial of this claim to the decision of the California
Court of Appeal -- the last reasoned state court opinion -- to
determine whether it is contrary to, or an unreasonable application
of, clearly established federal law.  Ylst, 501 U.S. at 801-06;
Williams, 519 U.S. at 412-13.

The state appellate court denied Jones's claim because it
found that Petitioner failed to make a prima facie showing for
habeas relief.  (Lodgment No. 5, Jones, No. D039422, slip op. at
30.)  Specifically, the court noted that when Jones rejected the
plea offer he was charged with two counts of robbery, four counts
of attempted robbery, and two counts of false imprisonment, which
gave him a potential exposure of twenty-four years.  (Id.)  This is
exactly what his attorney advised him.  (Id.)  He chose to reject
the offer, and subsequently an amended information was filed which
changed his exposure to thirty-seven years.  (Id.)  Thus, the state
court found Jones's attorney did not advise him incorrectly because
he was not facing thirty-seven years until after he rejected the
plea.  (Id.)

The decision to reject an offered plea bargain and go to trial
marks a critical stage in the proceedings.  Strickland's two-prong
test therefore applies to ineffective assistance claims arising
from the plea bargain process.  See Turner v. Calderon, 281 F.3d
851, 879 (9th Cir. 2002) (citing Hill v. Lockhart, 474 U.S. 52, 57-
58 (1985)).  In plea situations, the first "inquiry is whether
counsel's advice was within the range of competence demanded of
attorneys in criminal cases."  Id. (internal quotations and
citations omitted).  Next, the Court must ask whether, "but for

counsel's errors, [the defendant] would have pleaded guilty and
would not have insisted on going to trial." Id. at 879.

Courts have found that counsel's failure to communicate the
prosecution's plea offer constitutes deficient performance and
satisfies the first prong of Strickland. See United States v.
Blaylock, 20 F.3d 1458, 1466 (9th Cir. 1994). The Ninth Circuit,
however, has observed that the question is "more difficult
where . . . the client has been informed of the plea . . . offer."
Turner, 281 F.3d at 880. In this situation, "the question [was
described] as not whether 'counsel's advice [was] right or wrong,
but . . . whether that advice was within the range of competence
demanded of attorneys in criminal cases.'" Id. (quoting McMann v.
Richardson, 397 U.S. 759, 772 (1970)). For Jones to establish
ineffective assistance of counsel, he "must demonstrate gross error
on the part of counsel . . . ." Id. (quoting McMann, 397 U.S. at
771).

    a.    **Counsel's Failure to Advise Jones an Amended
          Information Would Be Filed**

Petitioner states that when discussing the proposed plea,
counsel told him his exposure was twenty-four years. (See Third
Am. Pet. 30; Third Am. Pet. Ex. A ¶ 3.) Jones claims his attorney
failed to inform him the prosecutor was going to file an amended
information which would increase Petitioner's exposure to thirty-
seven years. (Third Am. Pet. 30.) He alleges that "[e]ither
before or after coming to court, the record reflects counsel
received a copy of a proposed amended information" which would
increase Petitioner's maximum exposure. (Id. (emphasis omitted).)
According to Jones, his attorney's failure to inform him of the

amended information was ineffective assistance, because he would
have accepted the plea bargain if he had known of the pending
amendment.  (<u>Id.</u> at 8, 31-32.)

     This failure to advise of the amended information aspect of
Jones's ineffective assistance claim was presented for the first
time in his petition to the California Supreme Court, and the claim
was rejected in a summary order.  (Lodgment No. 6, Pet. at 23-30,
<u>People v. Jones</u>, No. S111271; Lodgment No. 7, <u>Jones</u>, No. S111271,
order at 1.)  When the state court does not supply its reasoning, a
federal habeas court conducts an independent review of the record
to decide whether the state court's decision was objectively
reasonable.  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003);
<u>see also</u> <u>Luna v. Cambra</u>, 306 F.3d at 960-61.  Independent review is
not <u>de</u> <u>novo</u> review.  Deference to any relevant state court factual
findings is still required.  See <u>Delgado v. Lewis</u>, 181 F.3d 1087,
1091-92 n.3 (9th Cir. 1999).

     "[A] defendant has the right to make a reasonably informed
decision whether to accept a plea offer."  <u>Turner v. Calderon</u>, 281
F.3d at 880 (quoting <u>United States v. Day</u>, 969 F.2d 39, 43 (3d Cir.
1992)).  Counsel's performance is deficient when "the advice . . .
[the defendant] received was so incorrect and so insufficient that
it undermined his ability to make an intelligent decision about
whether to accept the [plea] offer."  <u>Id.</u> (quoting <u>Day</u>, 969 F.3d at
43).  Knowing the difference between the sentence exposure under a
proposed plea agreement and the sentence exposure if the plea is
rejected "will often be crucial to the decision whether to plead
guilty."  <u>Day</u>, 969 F.2d at 43.

Prior to November 1, 2000, the day trial was set to begin, the court suggested a twelve-year disposition. (Lodgment No. 2, Rep.'s Tr. vol. 1, 3-4.) After discussing the offer with his attorney, Jones told the trial judge that he rejected the offer and elected to go to trial. (Id. at 3-5.) Thereafter, the prosecutor filed an amended information. (Id. at 5-6; Lodgment No. 1, Clerk's Tr. vol. 1, 24-31.) The amended information changed one robbery count to attempted robbery and added allegations that Jones personally used a firearm in the commission of each of the charged offenses. (Lodgment No. 2, Rep.'s Tr. vol. 1, 5-6; see Lodgment No. 1, Clerk's Tr. vol. 1, 24-25.) With the new firearm allegations, Jones's maximum exposure increased to an excess of thirty-seven years.[1] After the amended information was filed, in limine motions were argued and the jury was selected. (Lodgment No. 1, Clerk's Tr. vol. 2, 248-49.) Testimony began the next day. (Id. at 250.)

While discussing Jones's related claim, the court of appeal found that "[i]t was only after [Jones] rejected the plea offer that the People amended the information . . . ." (Lodgment No. 5, Jones, No. D038250, slip op. at 30.) This factual finding is presumed correct under § 2254(e)(1), and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. Stevenson v. Lewis, 384 F.3d 1069, 1072 (9th Cir. 2004). He has not rebutted the presumption. The record does not show, as Jones

---

[1] Jones repeatedly states that under the amended information his maximum exposure was thirty-seven years. (See Third Am. Pet. 8, 30.) This is not accurate. Although Petitioner was actually sentenced to thirty-seven years, his sentence consisted of the middle term on count one, one-third of the middle term on counts two through eight, and one-third of the firearm allegation for counts two through eight. (Lodgment No. 2, Rep.'s Tr. vol. 3, 701-02.) Thus, Jones's total potential exposure under the amended information, if the upper-term sentences had been imposed, was much higher.

would have the Court believe, that Petitioner's attorney received a copy of the proposed amended information before Jones rejected the twelve-year offer.  (See Third Am. Pet. 8.)  Instead, the record shows that Taggart received a copy of the amended information for the first time on the morning that Jones rejected the plea offer. (Lodgment No. 2, Rep.'s Tr. vol. 1, 5.)  This occurred after the trial court recommended a twelve-year disposition; Taggart discussed the plea with Petitioner; and Jones decided to reject the offer.  (See id. at 3-5.)

Jones also claims counsel was "overly optimistic" in suggesting that his chances at trial were "50-50."  (Third Am. Pet. Ex. A at 1.)  "Counsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." Turner, 281 F.3d at 881.  In this case, defense counsel correctly informed Jones that he faced twenty-four years in prison if convicted on all charges alleged in the September 11, 2000, information.  Although Petitioner claims defense counsel suggested his sentence would likely be lighter than twenty-four years, Taggart warned Jones that victory at trial was not assured.  (Third Am. Pet. Ex. A at 1.)  Petitioner was given sufficient information to allow him to make an intelligent decision.  Because there was no "gross error on the part of counsel," Jones cannot succeed on his ineffective assistance of counsel claim.  See McMann, 397 U.S. at 772.

Petitioner's self-serving claim that if he had known his exposure would increase to thirty-seven years, he would have accepted the twelve-year plea offer, is not sufficient to establish

1  that his attorney rendered ineffective assistance.  <u>Turner v.</u>

2  <u>Calderon</u>, 281 F.3d at 881 (citing <u>United States v. Allen</u>, 153 F.3d

3  1037, 1041 (9th Cir. 1998)).

> If the rule were otherwise, every rejection of a plea
> offer, viewed perhaps with more clarity in the light of
> an unfavorable verdict, could be relitigated upon the
> defendant's later claim that had his counsel better
> advised him, he would have accepted the offer.

7  <u>Id.</u>  Additionally, Jones cannot establish prejudice.  A habeas

8  petitioner must show some objective evidence other than his

9  assertions to establish that he suffered prejudice.  <u>Pham v. United</u>

10 <u>States</u>, 317 F.3d 178, 182 (2d Cir. 2003) (citing <u>United States v.</u>

11 <u>Gordon</u>, 156 F.3d 376, 379-80 (2d Cir. 1998)).

12     Jones consistently indicated he wanted to go to trial.  In his

13 sworn Declaration in support of his Third Amended Petition, Jones

14 claims he told Taggart that he was innocent of the charges; he did

15 not know his codefendant; and he had witnesses that would testify

16 in support of his alibi.  (Third Am. Pet. Ex. A at 1.)  These

17 statements undermine Petitioner's claim that he wanted to plead

18 guilty.  During the hearing on his motion for a new trial, Jones

19 testified at length about the investigation he wanted Taggart to do

20 to prepare for trial, the evidence he wanted Taggart to present,

21 and the independent research he was doing in the jail's law library

22 regarding possible pretrial motions and the admissibility of

23 evidence.  (<u>See</u> Lodgment No. 2, Rep.'s Tr. vol. 3, 677-680.)  At no

24 time during his testimony did Jones indicate that he had wanted to

25 plead guilty rather than proceed to trial.  Petitioner cannot show,

26 by objective evidence, that he would not have rejected the plea

27 offer if he had known the amended information would subsequently be

28 filed.  This claim does not entitle Jones to habeas relief.

b.   <u>Trial Court's Incorrect Sentence Calculation</u>

Jones claims the trial judge erroneously indicated that the amended information reduced rather than increased Petitioner's maximum exposure, and this misstatement was a factor in his decision to reject the plea offer. (Third Am. Pet. 8, 30, Ex. A at 1.)  Jones made this claim in his state habeas petition, complaining that he rejected the plea offer based upon incorrect information given him by the court. (Lodgment No. 4, Pet. for Habeas Corpus at 12, <u>In re Jones</u>, No. D039422.)  In its consolidated opinion on his petition and appeal, the California Court of Appeal concluded that Petitioner rejected the plea offer <u>before</u> an amended information was filed which increased his potential sentence to over thirty-seven years. (Lodgment No. 5, <u>Jones</u>, No. D038250, slip op. at 30.)  Nevertheless, the trial court did give Jones inaccurate information.  After the amended information was filed, the trial judge incorrectly indicated the amended information changed Jones's maximum exposure "very insignificantly" by reducing the exposure by two months. (Lodgment No. 2, Rep.'s Tr. vol. 1, 6.)  The court failed to include the new firearm-use allegations in its calculation, which increased Jones's exposure to over thirty-seven years. (<u>See</u> Lodgment No. 1, Clerk's Tr. vol. 1, 24-28; <u>see also</u> Lodgment No. 5, <u>Jones</u>, No. D038250, slip op. at 30.)

The trial court misadvised Petitioner that his sentence under the amended information appeared to be the same as under the original information.  Still, the filing of the amended information and the lower court's statement <u>followed</u> Jones's rejection of the twelve-year offer. (Lodgment No. 5, <u>Jones</u>, No. D038250, slip. op.

03cv1463 J (RBB)

at 30; see also Lodgment No. 2, Rep.'s Tr. vol. 1, 6.)  Thus, neither the trial judge's statements nor counsel's failure to correct them could have had an effect on Petitioner's decision to reject the plea.  Jones's case is not one where "misadvice by [a] trial judge regarding [the] plea bargain was prejudicial enough to grant the defendant [the] opportunity to retender [a] guilty plea." United States v. Day, 969 F.2d at 44 n.7 (citing State v. Kraus, 397 N.W.2d 671, 675-76 (Iowa 1986)).

The state court's decision was not an unreasonable determination of the facts, and it was neither contrary to, nor an unreasonable application of, clearly established law.

### c.  Counsel's Failure to Give a Ten-Year Counter Offer

Finally, Jones alleges that he "instructed counsel to make a 10 year counter offer, which counsel failed to do."  (Third Am. Pet. 8; Third Am. Pet. Ex. A at 1.)  This ground for relief was not expressly addressed by the state courts.  Consequently, the Court will review the contention de novo.  Pirtle v. Morgan, 313 F.3d at 1073.  In deciding whether Jones's claim entitles him to habeas relief, the Court is confined to the record as it exists.  AEDPA limits a federal habeas court's ability to hold evidentiary hearings.  Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>
> (A)  The claim relies on --
>
> (i) a new rule of constitutional law . . . or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

   (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West 2006).  The factual predicate of this claim was known at the time of the hearing on Jones's motion for a new trial, June 18, 2001.  Thus, Petitioner's argument that a better plea bargain could have been obtained by his attorney is without any evidentiary support.

Even assuming that the failure to make Petitioner's offer constituted deficient performance under Strickland, Jones cannot demonstrate prejudice.  There is nothing in the record to establish that the trial judge, who suggested Petitioner "plea to the sheet" for a twelve-year sentence, was willing to negotiate a deal or that the prosecutor would agree to it.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 3-5.)  Jones's claim rests on speculation, and he fails to establish a "reasonable probability that the outcome would have been different."  See United States v. Boone, 62 F.3d 323, 327 (10th Cir. 1995) (finding no prejudice under Strickland for counsel's failure to negotiate a plea because there was no showing the prosecutor was willing to enter plea negotiations or that any suggested plea would have been acceptable to the court).  This claim, like the others contained in ground two of Jones's Third Amended Petition, should be denied.

**B.** **Insufficient Evidence**

Grounds three and four in Jones's Petition allege there was insufficient evidence to support his convictions for the attempted robbery of Bazaldua, Kueber, and Williams, and insufficient evidence to impose the firearm-use enhancement.  (Third Am. Pet. 9-

10, 37-47.)  Petitioner raised these claims in the California Court of Appeal, and that court rejected them in an unpublished opinion. (See Lodgment No. 5, Jones, No. D038250, slip op. at 16-20.)  Jones then raised the claims in his second habeas petition to the California Supreme Court, which denied the petition with a citation to In re Swain, 34 Cal. 2d 304, 209 P.2d 793, 796 (1949); People v. Duvall, 9 Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr. 2d 259, 265 (1995); In re Waltreus, 62 Cal. 2d 218, 397 P.2d 1001, 42 Cal. Rptr. 9 (1965); and In re Dixon, 41 Cal. 2d 756, 264 P.2d 513 (1953).  (Lodgment No. 11, Jones, No. S117839, slip op. at 1.)

Respondent argues these claims must be denied as procedurally defaulted.  (Resp't's Mem. of P. & A. 13.)  In the alternative, she asserts that Jones's claims fail on the merits.  (Id. at 14-15.)

### 1.   **Procedural Default**

Under the procedural default doctrine, a federal court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  Calderon v. U.S. Dist. Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); see also Hill v. Roe, 321 F.3d 787, 789 (9th Cir. 2003); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001); Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000).  Federal habeas review of that claim is precluded unless the petitioner "can demonstrate cause for the default and prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; see also High v. Ignacio, 408

1  F.3d 585, 590 (9th Cir. 2005) (citing <u>Coleman</u>, 501 U.S. at 750);

2  <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1230-31 (9th Cir. 1992).

3       The respondent has the burden of pleading an adequate and

4  independent procedural bar as an affirmative defense.  <u>See</u> <u>Bennett</u>

5  <u>v. Mueller</u>, 322 F.3d 573, 585 (9th Cir. 2003).  The burden of proof

6  then shifts to the petitioner to place that defense in issue, for

7  example, by asserting factual allegations demonstrating the

8  inadequacy of the state procedure, including citations to case

9  authority that demonstrate inconsistent application of the state

10 rule.  <u>Id.</u> at 586.  If the factual allegations are made, the burden

11 shifts back to the respondent to demonstrate the bar is applicable.

12 <u>Id.</u>  Here, Respondent properly asserted the procedural bar as an

13 affirmative defense to Jones's claims of insufficient evidence.

14 (Answer Third Am. Pet. 2.)  She argues that Petitioner's claims are

15 procedurally defaulted due to Jones's failure to present them to

16 the California Supreme Court in a petition for review of the court

17 of appeal's decision; instead, he raised them in a state habeas

18 petition.  (Resp't's Mem. of P. & A. 13.)

19      A state procedural rule is "adequate" when the rule is "firmly

20 established and regularly followed" at the time of the purported

21 default.  <u>Anderson v. Calderon</u>, 232 F.3d 1053, 1077 (9th Cir. 2000)

22 (citations and quotations omitted) <u>overruled on other grounds by</u>

23 <u>Bittaker v. Woodford</u>, 331 F.3d 715, 728 (9th Cir. 2003); <u>see also</u>

24 <u>Bennett</u>, 322 F.3d at 583 (citing <u>Poland v. Stewart</u>, 169 F.3d 573,

25 577 (9th Cir. 1999)).  The state procedural rule must also be clear

26 and consistently applied at the time of petitioner's default.

27 <u>Wells v. Maass</u>, 28 F.3d 1005, 1010 (9th Cir. 1994) (citations

28 omitted).

1    "For a state procedural rule to be 'independent,' the state

2    law basis for the decision must not be interwoven with federal

3    law."  LaCrosse, 244 F.3d at 704 (citing Michigan v. Long, 463 U.S.

4    1032, 1040-41 (1989)); see also Park, 202 F.3d at 1152.  "'A state

5    law ground is so interwoven if the state has made application of

6    the procedural bar depend on an antecedent ruling on federal law

7    [such as] the determination of whether federal constitutional error

8    has been committed.'"  Bennett, 322 F.3d at 581 (quoting Park, 202

9    F.3d at 1152); see also Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

10   In Waltreus, the California Supreme Court stated that "habeas

11   corpus ordinarily cannot serve as a second appeal."  Waltreus, 62

12   Cal. 2d at 225, 397 P.2d at 1005, 42 Cal. Rptr. at 13 (citing In re

13   Winchester, 53 Cal. 2d 528, 532 (1960)).  Since the decision, a

14   Waltreus citation has stood for the principle that "'any issue that

15   was actually raised and rejected on appeal cannot be renewed in a

16   petition for a writ of habeas corpus.'"  Forrest v. Vasquez, 75

17   F.3d 562, 563 (9th Cir. 1996) (citation omitted).

18   Respondent argues that a Waltreus citation is an independent

19   and adequate state procedural bar.  (Resp't's Mem. P. & A. 13.)

20   This argument ignores Ninth Circuit authority which has

21   specifically found that the Waltreus rule is not sufficient to bar

22   federal habeas relief.  Hill, 321 F.3d at 789 (stating "[t]he

23   California Supreme Court's reliance on In re Waltreus does

24   not . . . bar federal court review"); LaCrosse, 244 F.3d at 705

25   n.11 (stating that "[i]nvocation of the Waltreus rule by a state

26   court . . . does not bar federal review"); Bean, 96 F.3d at 1131;

27   Forrest, 75 F.3d at 564 (citing Ylst v. Nunnemaker, 501 U.S. 797,

28   805 (1991)) (stating "a Waltreus denial on state habeas has no

bearing on [a petitioner's] ability to raise a claim in federal court").  <u>Waltreus</u> does not constitute a bar to federal habeas review.

The California Supreme Court denied Jones's second habeas petition with citations to <u>Waltreus</u>, <u>Dixon</u>, <u>Swain</u>, and <u>Duvall</u>. (Lodgment No. 11, <u>In re Jones</u>, No. S1117839, slip op. at 1.)  It is unclear which of the five claims raised in the state petition were denied because of <u>Waltreus</u> and which were denied because of <u>Dixon</u>, <u>Swain</u>, or <u>Duvall</u>.

The Court need not consider whether <u>Dixon</u>, <u>Swain</u>, and <u>Duvall</u> are independent and adequate because the California Supreme Court's order is ambiguous.  The state court's opinion summarily denies multiple claims with a citation to more than one procedural bar, and it is impossible to know which bar was applied to each claim. When presented with this kind of ambiguous opinion from a state court, the Ninth Circuit has held that the petitioner's claims are not procedurally barred.  See <u>Valerio v. Crawford</u>, 306 F.3d 742, 774-75 (9th Cir. 2002) (quoting <u>Coleman v. Thompson</u>, 501 U.S. at 735) (finding that "[b]y failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground[]'"); <u>Lambright v. Stewart</u>, 241 F.3d 1201, 1206 (9th Cir. 2001) (stating that "[b]y invoking two contradictory arguments, the state court failed to make a clear finding of procedural default and federal review is not barred[]"); <u>Washington v. Cambra</u>, 208 F.3d 832, 834 (9th Cir. 2000) (reversing dismissal of habeas petition because California Supreme Court invoked two state procedural rules without specifying which rule applied to which

claim and one rule was not independent of federal law); Ceja v.
Stewart, 97 F.3d 1246, 1253 (9th Cir. 1996) (finding that by
adopting mixed arguments, state court "did not clearly base its
decision on independent and adequate state law grounds[]"); Bean,
96 F.3d at 1131 (stating an ambiguous order that does not specify
which claims were rejected under which rule does not preclude
federal collateral review).

Thus, because the California Supreme Court did not specify
which of Petitioner's claims were denied because of Waltreus and
which were denied because of Dixon, Swain, and Duvall, there is no
procedural bar to federal review of Jones's sufficiency of the
evidence claims.

### 2.   **Merits of Jones's Sufficiency of Evidence Claims**

Jones argues that his due process rights were violated because
there was insufficient evidence to convict him of the attempted
robbery of Shannon Williams, Robert Kueber, and Ramon Bazaldua, and
he claims there was insufficient evidence to find the firearm-use
allegations true.  (Third Am. Pet. 9-10, 37-47.)  Because there is
no reasoned decision from the California Supreme Court concerning
either of Jones's sufficiency of the evidence claims, this Court
must "look through" that court's summary opinion to the reasoned
opinion of the California Court of Appeal.  Ylst, 501 U.S. at 801-
06.

The Due Process Clause protects a criminal defendant from
conviction "except upon proof beyond a reasonable doubt of every
fact necessary to constitute the crime with which he is charged."
In re Winship, 397 U.S. 358, 364 (1970).  When challenging a
conviction for insufficiency of the evidence, the constitutional

standard established by the Supreme Court in <u>Jackson v. Virginia</u> is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Smith v. Mitchell</u>, 437 F.3d 884, 889 (9th Cir. 2006) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)).

The state court explained the standard it applied as follows:

> On an appeal contending there is insufficient evidence to support a verdict, we review the evidence in the light most favorable to the judgment and, in so doing, determine whether there is substantial evidence such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt.

(Lodgment No. 5, <u>Jones</u>, No. D038250, slip op. at 17.)  This is in line with the federal standard established in <u>Jackson</u>.  See <u>Jackson</u>, 443 U.S. at 324 (holding that evidence is insufficient to support a conviction when, based on the record viewed in a light most favorable to the prosecution, no rational trier of fact could have found guilt beyond a reasonable doubt).  Therefore, the state appellate court correctly identified the governing law as set forth by the Supreme Court.

"Our task under AEDPA, then, is to determine whether the decision of the California Court of Appeal, holding that the evidence was sufficient to convict [Jones], was an unreasonable application of <u>Jackson</u>." <u>Smith</u>, 437 F.3d at 889 (citing 28 U.S.C. § 2254(d); <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274-75 (9th Cir. 2005)).  "The <u>Jackson</u> inquiry does not focus on whether the trier of fact made the <u>correct</u> guilt or innocence determination, but rather whether it made a <u>rational</u> decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993).

### a.   <u>Attempted Robbery Convictions</u>

In his third ground for relief, Jones contends there was insufficient evidence to convict him of attempting to rob Bazaldua, Kueber, and Williams.  (Third Am. Pet. 9.)  Specifically, he asserts that these individuals, all Symbolic Motors employees, were never asked if they had access to the business's safe.  (<u>Id.</u> at 38-39.)  Petitioner concedes that the evidence shows an intent to rob Hughes, Phillips, and French, because these three individuals were asked about the location of the safe, and Hughes was forced to use his keys to try to access the safe.  (<u>Id.</u> at 37.)  Jones claims, however, that there is no evidence the robbers tried to access the safe through Bazaldua, Kueber, or Williams.  (<u>Id.</u> at 38-39.)  Petitioner argues the evidence was only sufficient to prove an intent to rob Symbolic Motors but not sufficient to prove an intent to rob the individual victims.  (<u>Id.</u> at 38.)

To determine whether the state court's application of <u>Jackson</u> was unreasonable, the Court must look to state law to determine the substantive elements of the crime necessary to support a conviction.  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Davis v. Woodford</u>, 333 F.3d 982, 992 (9th Cir. 2003).  Under California law, robbery is the "taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211 (West 1999).  An attempted robbery occurs when there is "specific intent to commit the crime, and a direct but ineffectual act done toward its commission."  Cal. Penal Code. § 21a (West 1999).

"California follows the long-standing rule that the employees of a business constructively possess the business owner's property

during a robbery." <u>People v. Jones</u>, 82 Cal. App. 4th 485, 490, 98 Cal. Rptr. 2d 329, 331 (Ct. App. 2000). "Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." <u>People v. Johnson</u>, 38 Cal. App. 3d 1, 9, 112 Cal. Rptr. 834, 839 (Ct. App. 1974) (citation omitted).

California courts have held that store employees may be victims of a robbery even if they did not have specific responsibility for handling the business's money. <u>See</u>, <u>e.g.</u>, <u>People v. Gilbeaux</u>, 111 Cal. App. 4th 515, 521-23, 3 Cal. Rptr. 3d 835, 839-41 (Ct. App. 2003) (discussing the robbery of janitors who had no responsibility for handling cash but were among the workers in charge of the premises when the robbery took place); <u>Jones</u>, 82 Cal. App. 4th at 491-92, 98 Cal. Rptr. 2d at 332 (affirming conviction for attempted robbery of employees who were "subjected to force or fear during appellant's attempt to steal their employer's property" even though none had the business's money in their immediate control or possession). Under California law, employees Bazaldua, Kueber, and Williams could be victims of attempted robbery when Jones attempted to steal money from Symbolic Motors, regardless of whether these employees had access to the business's safe.

Petitioner seems to argue that because neither he nor Penton specifically asked Bazaldua, Kueber, or Williams where the money was, if they could open the safe (as done with Phillips and Hughes), or demand they turn over any personal property (as done with French), there could be no attempted robbery of these

individuals.  (Third Am. Pet. 9.)  This construes the facts too narrowly.

First, Penton held a gun to Bazaldua and asked "Are you the big guy" -- presumably to determine if he was an owner or manager who would have access to the safe.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 156.)  Jones tied Bazaldua's hands with duct tape.  (Id. at 158.)  As the car detailer, Bazaldua did not have access to the safe, but Petitioner used force to secure Bazaldua until someone with access to the safe arrived.  This is sufficient to convict Jones of attempted robbery of Bazaldua.  See Gilbeaux, 111 Cal. App. 4th at 521-23, 3 Cal. Rptr. 3d at 839-41.

Next, although Williams (an employee) only saw Jones for a few seconds, and Kueber (another employee) never saw Jones, Petitioner is liable for Penton's acts under California's accomplice law. "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed."  Cal. Penal Code § 31 (West 1999).  A person aids and abets the commission of a crime when he (1) has knowledge of the unlawful purpose of the perpetrator, (2) has the intent or purpose of committing, facilitating, or encouraging commission of the crime, and (3) aids, promotes, encourages, or instigates commission of the crime.  People v. Cooper, 53 Cal. 3d 1158, 1164, 811 P.2d 742, 747, 282 Cal. Rptr. 450, 455 (1991) (citation omitted).

Penton pointed a gun at Williams and forced her into an office.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 43, 46-47.)  She then saw Jones come down the stairs with a gun.  (Id. at 50-51.)  Penton also displayed his gun to Kueber and demanded that he come to the

office where Penton was holding Williams.  (Id. at 130-32.)  He
told Kueber not to try to run because they had two children
upstairs.  (Id. at 132.)  The children and Hughes were being
detained by Jones.  (See Lodgment No. 2, Rep.'s Tr. vol. 2, 325-
29.)

Petitioner asserts there was insufficient evidence to find
that he aided and abetted any attempt to rob Bazaldua, Williams, or
Kueber.  (Third Am. Pet. 41.)  He argues that he could not have
shared Penton's specific intent to detain and rob Williams and
Kueber because he did not have contact with them, and he did not
even know they were present.  (Third Am. Pet. 42.)  The evidence,
however, shows that Jones acted with the purpose of committing the
robbery.  Petitioner bound Hughes and detained him and his
daughters upstairs while Penton detained the others downstairs.
This action aided and promoted the attempted robberies.  Jones knew
that Penton was holding employees in the office while they waited
for someone to arrive who had access to the safe.  (See Lodgment
No. 2, Rep.'s Tr. vol. 1, 156-59 (Bazaldua's testimony that Jones
was in the office where Bazaldua, Phillips, and French were bound
on the floor).)  This is sufficient evidence to support
Petitioner's convictions for attempted robbery of Bazaldua, Kueber,
and Williams.  Cf. People v. Phan, 14 Cal. App. 4th 1453, 1462-63,
18 Cal. Rptr. 2d 364, 369 (Ct. App. 1993) (upholding robbery
conviction where defendant was present when his associate robbed
the victim, even though defendant did not actively encourage or
assist the taking of property).

In light of the evidence presented at trial, a rational juror
could have found beyond a reasonable doubt that Jones attempted to

rob Bazaldua, Kueber, and Williams.   See Jackson, 443 U.S. at 324.
As a result, the state court's decision denying this claim did not
involve an unreasonable application of clearly established law.
Ground three in Jones's Third Amended Petition should be denied.

### b.   Firearm Enhancements

In ground four, Jones argues there was insufficient evidence
to support the firearm-use allegations as to Bazaldua, Williams,
and Kueber.  (Third Am. Pet. 10.)  Petitioner contends that because
Bazaldua and Kueber never saw him with a gun, and Williams only saw
him with a gun as he ran down the stairs to the showroom, the gun-
use allegations as to these three individuals were improper.  (Id.
at 44.)

California Penal Code section 12022.53(b) provides that "any
person who is convicted of a felony specified in subdivision (a),
and who in the commission of that felony personally used a firearm,
shall be punished by a term of imprisonment of 10 years in the
state prison."  Cal. Penal Code § 12022.53(b) (West Supp. 2007).
Robbery is one of the felonies to which the enhancement applies.
Cal. Penal Code § 12022.53(a)(4) (West Supp. 2007).

In denying Jones's claim, the state appellate court noted that
under state law, "a gun may be used 'in the commission' of a given
crime even if the use is directed toward someone other than the
victim of the crime."  (Lodgment No. 5, Jones, No. D038250, slip
op. at 20 (citing People v. Granado, 49 Cal. App. 4th 317, 329-30,
56 Cal. Rptr. 2d 636, 644 (1996)).)  When a gun is employed "to
neutralize the victim's companions, bystanders, or other persons
who might otherwise interfere with the successful completion of the
crime[,]" the elements of section 12022.53(a) are met.   Id.

For the firearm enhancement to be imposed, the defendant must be found to have actually used a firearm in committing the crime, as opposed to merely possessing a gun.  See Alvarado v. Superior Court, 146 Cal. App. 4th 993, 1000, 53 Cal. Rptr. 3d 416, 421 (Ct. App. 2007) (distinguishing the firearm-use enhancement under § 12022.5(a) from the sentence enhancement under § 12022(a)(1) for being armed during commission of a felony).  In People v. Granado, 49 Cal. App. 4th 317, 56 Cal. Rptr. 2d 636, the appellate court defined firearm use as "gun-related conduct coupled with facilitative intent . . . ."  Granado, 49 Cal. App. 4th at 329, 56 Cal. Rptr. 2d at 644.  The test for distinguishing use of a firearm from mere possession of a firearm during the commission of a crime focuses on the actor's conduct:  "[D]id the defendant take some action with the gun in furtherance of the commission of the crime?"  Id. at 324 n.7, 56 Cal. Rptr. 2d at 641 n.7 (emphasis added).

The sentence enhancement is only appropriate where the defendant actively uses a gun to assist in the commission of the crime, as opposed to conduct that is "purely incidental to the crime."  Id. at 324, 56 Cal. Rptr. 2d at 641 (discussing People v. Hays, 147 Cal. App. 3d 534, 195 Cal. Rptr. 252 (1983)).  The term "use" is broadly construed in the context of each case and in accordance with the statute's purpose of deterring gun use during the commission of crimes.  Id. at 322, 56 Cal. Rptr. 2d at 639; Alvarado, 146 Cal. App. 4th at 1002, 53 Cal. Rptr. 3d at 422.  "[A] gun 'use' finding is precluded if the defendant's conduct with respect to the weapon is merely a passive or inadvertent exposure of the gun."  Alvarado, 146 Cal. App. 4th at 1003, 53 Cal. Rptr. 3d

at 423 (citing <u>Granado</u>, 49 Cal. App. 4th at 324-35, 56 Cal. Rptr. 2d at 641).

Williams testified at trial that Penton pointed a gun at her and forced her into an office where Bazaldua, Phillips, and French were bound and on the floor. (Lodgment No. 2, Rep.'s Tr. vol. 1, 46-48.) After Penton left the room to run after Kueber, Petitioner came down the stairs holding a gun. (<u>Id.</u> at 49-50.) Jones ran past the office where Williams and the others were and out into the showroom. (<u>Id.</u> at 50.) Williams testified that Petitioner made eye contact with her, but she did not say that Jones made any threats or gestured with the gun in any way. (<u>See id.</u> at 91.) Her testimony simply stated that he went down the stairs quickly while holding a gun.

Bazaldua testified that Penton shoved a gun into his back and made him go into an office where Petitioner bound his hands, but he never saw Jones with a gun. (<u>See id.</u> at 156-59.) Kueber, who ran out of the showroom before the robbers could force him into the back office, never saw Petitioner at all. (<u>Id.</u> at 152.)

Jones argues that, at most, this evidence shows gun possession, but not gun use. (<u>See</u> Third Am. Pet. 44.) This contention is contrary to California law.

> In a simultaneous robbery of multiple victims by multiple perpetrators, use of a firearm against at least one victim satisfies the personal use requirement such that a gun use finding attaches to every crime for which the defendant is responsible during the transaction, including crimes for which the defendant is only vicariously liable.

<u>Ballard v. Estelle</u>, 937 F.2d 453, 457-58 (9th Cir. 1991) (citing <u>People v. Walker</u>, 47 Cal. 3d 605, 635, 765 P.2d 70, 87, 253 Cal. Rptr. 863, 880 (1988)). Thus, Jones's sentence can be enhanced

based on personal gun use for each victim of a multiple-victim robbery, even if Jones did not use a gun against each individual robbery victim.

In _Ballard_, the habeas petitioner challenged the imposition of California's gun-use enhancement because "even if the personal use finding [could] be sustained in one or two [of the eighteen robbery] counts, there was insufficient evidence of personal use in every other count." _Id._ at 457.  This is the same claim Jones is making here.  (_See_ Third Am. Pet. 10.)  The Ninth Circuit affirmed the district court's denial of Ballard's petition because there was evidence that he personally used a gun against some of the robbery victims:

> It would be inconsistent with [People v.]Walker and with
> the nature of robberies involving multiple perpetrators
> and victims, to say a gun use finding as to Mr. Ballard
> applies only against those victims who challenged him and
> thereby elicited his menacing behavior.  He personally
> used his gun in the course of simultaneously robbing
> multiple victims, and a threat to one victim was a threat
> to all.  His personal gun use during the course of the
> robberies was inextricably related to the robbery of each
> victim and cannot be separated from any of the robbery
> counts, including those in which his codefendants were
> the principal actors.

_Ballard_, 937 F.2d at 459.

Here, there was evidence Petitioner used his gun to control French, Phillips, and Hughes.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 111; Lodgment No. 2, Rep.'s Tr. vol. 3, 325, 327.)  This testimonial evidence is sufficient to support the imposition of the gun-use enhancement for all six victims, not just the three who testified that Jones pointed the gun at them.

Given the California courts' interpretation of section 12022.53, a rational juror could have found the gun enhancement

61

allegations for victims Bazaldua, Kueber, and Williams to be true

beyond a reasonable doubt.  See Jackson, 443 U.S. at 324.

Consequently, the appellate court's decision was neither contrary

to, nor an unreasonable application of, clearly established federal

law.  Ground four should be denied.

C.   **Claims Five Through Eight Are Procedurally Barred.**

       Petitioner's Third Amended Petition included new claims that

were not presented in his earlier federal petitions.  (See Third

Am. Pet. 11-14; see also Order Rejecting R & R 12.)  These new

claims are (1) ineffective assistance of trial counsel for failure

to seek to suppress evidence of a separate crime (ground five); (2)

a due process violation for introduction of irrelevant evidence of

a separate crime (ground six); and (3) a due process violation for

the trial court's refusal to give a jury instruction limiting the

jury's use of evidence of the separate crime (grounds seven and

eight).[2]  (Third Am. Pet. 11-14.)  Respondent alleges these newly-

added claims are procedurally barred because they were denied by

the state court on adequate and independent state law grounds.

(Resp't's Mem. of P. & A. 16.)

       These claims were presented to the California Supreme Court in

Jones's fourth petition for a writ of habeas corpus.  (Supp.

Lodgment No. 1, Pet. at 4-7, Jones, No. S135905.)  The court denied

the petition with a citation to In re Robbins, 18 Cal. 4th 770,

780, 959 P.2d 311, 317, 77 Cal. Rptr. 2d 153, 159-60 (1998); In re

_____

       [2]  Although Jones's Third Amended Petition added four new grounds for
relief (grounds five, six, seven, and eight), grounds seven and eight are
duplicative.  Both claims allege that Petitioner's due process rights were
violated when the trial court failed to give a jury instruction limiting the
purposes for which evidence of the separate conviction could be introduced.
(See Third Am. Pet. 13-14.)  The Court construes these two grounds for relief as
a single claim.

1  <u>Clark</u>, 5 Cal. 4th 750, 855 P.2d 729, 21 Cal. Rptr. 2d 509 (1993);

2  <u>In re Swain</u>, 34 Cal. 2d 300, 304, 209 P.2d 793, 796 (1949); <u>People</u>

3  <u>v. Duvall</u>, 9 Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr.

4  2d 259, 265 (1995); and <u>In re Dixon</u>, 41 Cal. 2d 756, 264 P.2d 513

5  (1953).  (Supp. Lodgment No. 2, <u>In re Jones</u>, No. S135905, slip op.

6  at 1.)

7      A federal habeas court is barred from reviewing a federal

8  claim that was decided by a state court if the state court's

9  decision rested on <u>adequate</u> and <u>independent</u> state law grounds.

10 <u>Bennett v. Mueller</u>, 322 F.3d at 580 (citing <u>Coleman</u>, 501 U.S. at

11 729; <u>LaCrosse</u>, 244 F.3d at 704).  "In order to constitute adequate

12 and independent grounds sufficient to support a finding of

13 procedural default, a state rule must be clear, consistently

14 applied, and well-established at the time of the petitioner's

15 purported default."  <u>Wells</u>, 28 F.3d at 1010.  An ambiguous opinion

16 from a state court that invokes multiple procedural bars and does

17 not specify which rule applies to which claim will not bar federal

18 habeas review unless each procedural bar is adequate and

19 independent.  <u>See</u> <u>Washington</u>, 208 F.3d at 834.  Thus, because the

20 state court did not identify which rule was used to deny each

21 claim, Jones's claims will only be procedurally defaulted if all of

22 the procedural bars cited by the California Supreme Court are

23 adequate to support the judgment and independent of federal law.[3]

24 <u>See</u> <u>id.</u>

25

26

───────────────

27    [3] The Court notes that Petitioner's fifth claim cannot be barred by <u>Dixon</u>
   because the <u>Dixon</u> rule is never applied to claims of ineffective assistance of
28 counsel.  <u>In re Robbins</u>, 18 Cal. 4th at 814 n.34, 959 P.2d at 340 n.34, 77 Cal.
   Rptr. 2d at 182 n.34.

1.    **Independence of the State Court Rules**

  a.    **The Robbins/Clark Timeliness Bar**

  The state court denied Jones's fourth habeas petition by invoking the timeliness bar of <u>Robbins</u> and <u>Clark</u>.  (Supp. Lodgment No. 2, <u>Jones</u>, No. S135905, slip op. at 1); <u>see</u> <u>Thorson v. Palmer</u>, 479 F.3d 643, 645 (9th Cir. 2007) (stating that a citation to page 780 of <u>Robbins</u> is a clear indication the state court applied the timeliness rule to bar review); <u>King v. Lamarque</u>, 464 F.3d 963, 966 (9th Cir. 2006) (discussing California's timeliness bar); <u>Bennett</u>, 322 F.3d at 579 (same).  This rule bars habeas petitions that were filed after "substantial delay" without significant justification. <u>King</u>, 464 F.3d at 966.

  The Ninth Circuit has held that the timeliness bar of <u>Clark</u> and <u>Robbins</u> is not interwoven with federal law, and thus it is an independent state procedural ground.  <u>Bennett</u>, 322 F.3d at 581.

  b.    **The Dixon Bar**

  The California Court of Appeal also denied Jones's habeas petition with a citation to <u>In re Dixon</u>.  (Supp. Lodgment No. 2, <u>Jones</u>, No. S135905, slip op. at 1).  <u>Dixon</u> stands for the proposition that "a convicted defendant desiring to bring claims in a state habeas petition must, if possible, have pursued the claims on direct appeal from his conviction."  <u>Park v. California</u>, 202 F.3d at 1151; <u>see also</u> <u>Washington</u>, 208 F.3d at 833-34.

  Prior the California Supreme Court's 1998 decision in <u>In re Robbins</u>, a state's invocation of the <u>Dixon</u> bar was necessarily interwoven with federal law because it required a state court to determine if there was fundamental constitutional error that would excuse the petitioner's default.  <u>Protsman v. Pliler</u>, 318 F. Supp.

1    2d 1004, 1007 (S.D. Cal. 2004) (citing <u>Park</u>, 202 F.3d at 1152).   In

2    <u>Robbins</u>, the supreme court made it clear that in future cases,

3    California courts would find claims to be procedurally defaulted

4    under <u>Dixon</u> based solely on state law grounds.   <u>Id.</u> at 1007-08; <u>cf.</u>

5    <u>Bennett</u>, 322 F.3d at 581-82.   Accordingly, the <u>Dixon</u> bar now rests

6    on state law grounds that are independent of federal law.

7    <u>Protsman</u>, 318 F. Supp. 2d at 1008.

8              c.   **The Swain/Duvall Bar**

9         Additionally, the court of appeal denied Jones's petition with

10   a citation to <u>Swain</u> and <u>Duvall</u>. (Supp. Lodgment No. 2, <u>Jones</u>, No.

11   S135905, slip op. at 1.)  "The <u>Swain</u> rule is commonly referred to

12   as the 'untimeliness' bar[]" and requires the petitioner to explain

13   the delay in making a collateral attack.   <u>Washington v. Cambra</u>, 208

14   F.3d at 833.   The Ninth Circuit also has interpreted a citation to

15   <u>Swain</u> and <u>Duvall</u> to mean that the petitioner failed to "allege with

16   sufficient particularity the facts warranting habeas relief . . .

17   ."  <u>King v. Roe</u>, 340 F.3d 821, 823 (9th Cir. 2003); <u>see</u> <u>Duvall</u>, 9

18   Cal. 4th at 474, 886 P.2d at 1258, 37 Cal. Rptr. 2d at 265.   A

19   state habeas petitioner whose claims are denied with a citation to

20   <u>Duvall</u> and <u>Swain</u> is given leave to amend his petition to comply

21   with the specificity requirement.   <u>King v. Roe</u>, 340 F.3d at 823.   A

22   denial under <u>Swain</u> and <u>Duvall</u> is, "in effect, a grant of a demurrer

23   with leave to refile." <u>Gaston v. Palmer (Gaston I)</u>, 417 F.3d 1030,

24   1039 (9th Cir. 2005), <u>amended on other grounds</u>, 447 F.3d 1165 (9th

25   Cir. 2006).   Thus, a citation to <u>Swain</u> and <u>Duvall</u> is a denial on

26   procedural grounds that is independent of the federal

27   constitutional issue.   <u>See</u> <u>also</u> <u>in re Robbins</u>, 18 Cal. 4th 770, 814

28

1  n.34, 959 P.2d 311, 340 n.34, 77 Cal. Rptr. 2d 153, 182 n.34 (1998)

2  (discussing "the bar of untimeliness").

3      **2.   Adequacy of the State Procedural Rules**

4      To properly invoke the adequate and independent grounds

5  doctrine, the respondent must plead procedural default as an

6  affirmative defense.  <u>Bennett</u>, 322 F.3d at 585.  The burden then

7  shifts to the petitioner to show that the rule is inadequate to

8  support the state court's opinion because the rule is ambiguous or

9  inconsistently applied.  <u>Id.</u> at 586.  This may be done by pointing

10  to factual allegations and case authority demonstrating

11  inconsistent application of the rule.  <u>Id.</u>  But where the Ninth

12  Circuit has previously found that a state procedural rule is not

13  consistently applied, and is thus inadequate, the federal habeas

14  petitioner can meet his burden simply by challenging the adequacy

15  of the procedural rule.  <u>King v. Lamarque</u>, 464 F.3d at 967-68.  The

16  burden then shifts back to the respondent, who bears the ultimate

17  burden of establishing adequacy.  <u>Id.</u>

18      Respondent pled procedural default as an affirmative defense.

19  (Resp't's Mem. of P. & A. 15-17.)  To satisfy his burden of placing

20  the state procedural rules in issue, Jones makes a blanket

21  assertion that "there is no procedural[] bar to federal review" of

22  his claims.  (Traverse 8.)  But under <u>Bennett</u>, Petitioner must show

23  that the state rules are inadequate to bar federal review because

24  they are ambiguous or not consistently applied.

25      To challenge the adequacy of the procedural bars, Jones's

26  burden is "quite modest: at most, Petitioner need only assert

27  allegations; he does not need to prove anything."  <u>Dennis v. Brown</u>,

28  361 F. Supp. 2d 1124, 1130 (N.D. Cal. 2005) (citing <u>Bennett</u>, 322

F.3d at 585-86).  In <u>King v. Marquette</u>, 464 F.3d at 967, the Ninth Circuit explored a petitioner's burden when challenging the adequacy of a state procedural bar:  "Is simply contesting the adequacy of a state rule sufficient to meet the petitioner's burden under <u>Bennett</u> if we have previously found the rule to be too ambiguous to bar federal review during the applicable time period?  We hold it is."  Yet, Jones has failed to meet even this burden.

Petitioner has not pointed to any factual allegations or cited any authority that would show that any of the procedural rules have not been consistently applied.  (<u>See</u> Traverse 8.)  Jones did not identify any specific rule as inadequate to support the state court's judgment.  (<u>See</u> <u>id.</u>)  Because Petitioner has failed to meet his burden to contest the California procedural bars, the Court finds that the state rules are independent and adequate grounds to preclude federal review.  <u>See</u> <u>Protsman v. Pliler</u>, 318 F. Supp. 2d at 1014 (making a finding of procedural default where the petitioner failed to challenge adequacy of state procedural rules).

Nevertheless, Jones argues that the California Supreme Court's decision denying his state habeas petition was ambiguous, which permits a review on the merits.  (Traverse 8 (citing <u>Valerio v. Crawford</u>, 306 F.3d at 774-75.)  This may be true when an ambiguous order cites multiple procedural rules for denying review, some which preclude federal review and some which do not.  <u>Calderon</u>, 96 F.3d at 1131.  But the procedural bar does apply if all the procedural rules are adequate and independent state law grounds for denying relief.

3.    **Cause and Prejudice**

For the Court to review the merits of Jones's defaulted claims, he must demonstrate cause and prejudice for the default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750; see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

Petitioner has not demonstrated cause for his default or prejudice resulting from it.  He points to no facts or circumstances that made him unable to comply with California's procedural rules.  (See Traverse 8.)  Jones also makes no attempt to show that a fundamental miscarriage of justice will occur if the federal court does not review his defaulted claims.  Accordingly, the Court need not consider grounds five through eight of the Third Amended Petition on the merits.  They are procedurally defaulted.

D.    **Claims Five Through Eight Are Barred by the Statute of Limitations.**

Respondent asserts that Jones's fifth, sixth, seventh, and eighth claims should be dismissed because they were filed after the expiration of the statute of limitations.  (Resp't's Mem. of P. & A. 18.)  The statute of limitations for habeas corpus petitions is set forth in AEDPA.  As amended by AEDPA, 28 U.S.C. § 2244(d) provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

1
            (A)   the date on which the judgment became
      final by the conclusion of direct review or the
2     expiration of the time for seeking such review;

3             (B)   the date on which the impediment to filing
      an application created by State action in violation
4     of the Constitution or laws of the United States is
      removed, if the applicant was prevented from filing
5     by such State action;

6             (C)   the date on which the constitutional right
      asserted was initially recognized by the Supreme
7     Court, if the right has been newly recognized by the
      Supreme Court and made retroactively applicable to
8     cases on collateral review; or

9             (D)   the date on which the factual predicate of
      the claim or claims presented could have been
10    discovered through the exercise of due diligence.

11   28 U.S.C.A. § 2244(d)(1) (West 2006).  Petitioner has not asserted

12   that subsections (B)-(D) of § 2244(d)(1) apply to his case, so §

13   2244(d)(1)(A) provides the applicable date on which the limitations

14   period began to run.

15        The California Supreme Court denied Jones's petition for

16   review on January 15, 2003.  (Lodgment No. 7, Jones, No. S111271,

17   slip op. at 1.)  The state court's judgment became final on April

18   15, 2003, when Petitioner's ninety-day period in which to file a

19   petition for certiorari to the United States Supreme Court expired.

20   See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  Under §

21   2244(d)(1), the statute of limitations on Jones's federal petition

22   began to run the next day, April 16, 2003.  See Patterson v.

23   Stewart, 251 F.3d 1243, 1245-46 (9th Cir. 2001) (explaining the

24   application of Federal Rule of Civil Procedure 6(a) to the

25   calculation of the limitations period under AEDPA).  Absent

26   statutory tolling under § 2244(d)(2) or equitable tolling, April

27   15, 2004, was the last day on which Petitioner could file a timely

28   federal habeas petition.  Id.

1    Jones filed his federal habeas petition on July 21, 2003,

2  which is within the applicable statute of limitations.  This

3  matter, however, was stayed from September 4, 2003, through August

4  2, 2004, to allow Jones to return to state court to assert

5  previously unexhausted claims [doc. nos. 8, 15, 20].  On August 20,

6  2004, this Court ordered the Respondent to address the merits of

7  Jones's Petition [doc. no. 28].  On May 2, 2005, Jones renewed his

8  request for a stay and abeyance [doc. no. 35], which was ultimately

9  granted through September 27, 2006 [doc. no. 50].

10    Petitioner filed his Third Amended Petition asserting grounds

11 five through eight on June 15, 2006, over two years after the

12 limitations period expired for federal habeas review.  In the

13 absence of tolling, these newly asserted claims may be barred by

14 the statute of limitations unless they relate back to the filing of

15 the Petition.

16    **1.    Statutory Tolling**

17    Under AEDPA, the statute of limitations is tolled during

18 periods when a petitioner has a properly filed application for

19 collateral review pending in state court.  Specifically, 28 U.S.C.

20 § 2244(d)(2) states:

21        The time during which a properly filed application
         for State post-conviction or other collateral review with
22       respect to the pertinent judgment or claim is pending
         shall not be counted toward any period of limitation
23       under this subsection.

24 28 U.S.C.A. § 2244(d)(2) (West 2006).

25    In addition, the interval between the disposition of one state

26 petition and the filing of another may be tolled under "interval

27 tolling."  Carey v. Saffold, 536 U.S. 214, 223 (2002).  "[T]he

28 AEDPA statute of limitations is tolled for 'all of the time during

70                                   03cv1463 J (RBB)

1  which a state prisoner is attempting, through proper use of state

2  court procedures, to exhaust state court remedies with regard to a

3  particular post-conviction application.'" Nino v. Galaza, 183 F.3d

4  1003, 1006 (9th Cir. 1999) (quoting Barnett v. Lemaster, 167 F.3d

5  1321, 1323 (10th Cir. 1999)); see also Carey, 536 U.S. at 219-22.

6  An application for state collateral review is pending "as long as

7  the ordinary state collateral review process is 'in continuance'--

8  i.e., 'until the completion of' that process.  In other words,

9  until the application has achieved final resolution through the

10  State's post-conviction procedures, by definition it remains

11  'pending.'" Carey, 536 U.S. at 219-20.

12      A state habeas petition must be "properly filed" to toll the

13  statute of limitations.  28 U.S.C. § 2244(d)(2).  "'Properly filed'

14  means the petition's 'delivery and acceptance are in compliance

15  with the applicable laws and rules governing filings' in that

16  state." Bonner v. Carey, 425 F.3d 1145, 1148 (9th Cir. 2005),

17  amended, 439 F.3d 993 (9th Cir.), cert. denied, 127 S.Ct. 132

18  (2006) (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)).  A

19  petition that is dismissed by the state court as untimely is not

20  "properly filed" under AEDPA, and accordingly, it will not toll the

21  statute of limitations.  Id. at 1149; see Evans v. Chavis, 546 U.S.

22  189, 198 (2006).

23      The California Supreme Court denied Jones's petition for

24  review of his direct appeal on January 15, 2003.  (Lodgment No. 7,

25  Jones, No. S111271, slip op. at 1.)  On April 10, 2003, before the

26  judgment even became final, Petitioner filed his first state habeas

27  petition with the California Supreme Court raising five claims:

28  (1) ineffective assistance for failure to investigate; (2)

1   ineffective assistance for incorrect advice during plea

2   negotiations; (3) insufficient evidence for three counts of

3   attempted robbery; (4) insufficient evidence of firearm use; and

4   (5) ineffective assistance for failure to impeach a critical

5   witness. (Lodgment No. 8, Pet. at 3-7, Jones, No. S114976.)  Jones

6   then requested that the petition be withdrawn because it contained

7   grounds "already exhausted" in state court.  (Lodgment No. 9,

8   Jones, No. S114976, slip op. attach.)

9       On July 31, 2003, six days after the petition was withdrawn,

10  Jones filed a second petition in the California Supreme Court

11  raising three claims:  (1) ineffective assistance for failure to

12  impeach a critical witness; (2) insufficient evidence of attempted

13  robbery; and (3) insufficient evidence of firearm use.  (Lodgment

14  No. 10, Pet. at 3-5, Jones, No. S117839.)  The petition was denied

15  on April 14, 2004.  (Lodgment No. 11, Jones, No. S117839, slip op.

16  at 1.)

17      Over one year later, on May 9, 2005, and after the one-year

18  statute of limitations expired, Petitioner filed a third state

19  habeas petition, alleging entirely new claims:  (1) ineffective

20  assistance for failure to move to suppress other crime evidence;

21  (2) violation of due process for the trial court's failure to give

22  a limiting instruction; (3) due process violation by introduction

23  of irrelevant evidence; and (4) ineffective assistance of appellate

24  counsel.[4]  (Pet'r's Response to Opp'n to Mot. to Amend [doc. no.

25  39] Ex. A 3-6.)  Jones requested that this Court hold his federal

26

27      [4] Respondent's Answer does not address, or even mention, Jones's habeas
    petition in case number S133747, filed in the California Supreme Court on May 9,
28  2005.  Respondent also failed to lodge with the Court a copy of this petition
    and the state court's disposition.

03cv1463 J (RBB)

petition in abeyance while he pursued his third state habeas

petition raising these claims.  (See Request for Stay [doc. no.

35]; Pet'r's Response to Opp'n to Mot. to Amend.)  Before the

district court ruled on Petitioner's Motion to Amend and Motion for

Stay, Jones withdrew the state petition.  In re Jones, No. S133747,

docket, available at http://appellatecases.courtinfo.ca.gov (search

for case number "S133747", then follow "docket" hyperlink).  Nine

days later, on July 28, 2005, Petitioner filed a fourth state

petition raising the same four claims.  (Supp. Lodgment No. 1, Pet.

at 4-7, Jones, No. S135905.)

AEDPA anticipates that a petitioner must pursue one full round

of review in state court before presenting his claims in a federal

habeas petition.  Welch v. Carey, 350 F.3d 1079, 1082 (9th Cir.

2003) (citing Carey, 536 U.S. at 222).  When a petitioner stops

pursuing state review of his original claims, he has abandoned his

first full round of review and any subsequent habeas petitions

asserting different claims form a separate "application" for

collateral review.  Id.  Here, Petitioner's third and fourth

petitions raised entirely different claims from those raised in the

first two petitions.  His abandonment of the original claims and

pursuit of separate claims constituted a second round of review.

The time between the denial of his second habeas petition on April

14, 2004, and the filing of his third petition on May 9, 2005, will

not be tolled because there was no application "pending" during

that period.

Furthermore, the statute of limitations was not tolled while

Petitioner's final state petition was pending.  Jones's fourth

state habeas petition was denied with a citation to Clark and

<u>Robbins</u>, which indicates that the state court deemed the petition to be untimely.  <u>See</u> <u>Bennett</u>, 322 F.3d at 579.  Petitioner's final state habeas petition was never "properly filed" and will not toll the statute of limitations.  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).");  <u>Thorson</u>, 479 F.3d at 645; <u>Bonner</u>, 425 F.3d at 1149; <u>Jenkins v. Johnson</u>, 330 F.3d 1146, 1151 n.3 (9th Cir. 2003) (citing <u>Carey</u>, 536 U.S. at 226).

The statute of limitations for filing a federal habeas petition expired on April 15, 2005, one year after Jones's state court judgment became final and after the denial of his second state habeas petition.  Under rule 8.532(b)(2)(C) of the California Rules of Court, and its prior version, rule 29.4(b)(2)(C), a California Supreme Court's denial of a petition for a writ is final upon filing.  <u>See</u> Cal. R. Ct. 8.532(b)(2)(C) (2007).  The Ninth Circuit has held that statutory tolling runs until the denial becomes final.  <u>See</u> <u>Allen v. Lewis</u>, 295 F.3d 1046 (9th Cir. 2002). Jones is entitled to statutory tolling under § 2244(d) during the pendency of his first and second habeas petitions to the California Supreme Court.  But he "is not entitled to interval tolling if he abandons all of his claims in his first application and his [later] application sets forth new and different claims."  <u>Gaston v. Palmer (Gaston I)</u>, 417 F.3d at 1043; <u>see</u> <u>also</u> <u>Gaston v. Palmer (Gaston II)</u>, 447 F.3d 1165, 1167 (9th Cir. 2006) (holding that petitioner was not entitled to "gap" tolling for delays of ten months and greater between state habeas petitions).

Petitioner did not file his Third Amended Petition in this Court until June 15, 2006.  Grounds five through eight of the Third Amended Petition, not contained in Jones's first two state habeas petitions, are untimely unless they relate back to the filing of the original federal Petition or unless Jones is entitled to equitable tolling.

### 2.  **Relation Back**

Federal Rule of Civil Procedure 15(c)(2) provides in part that an amended pleading may relate back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed. R. Civ. P. 15(c)(2).  The Federal Rules of Civil Procedure "are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases . . . ."  Fed. R. Civ. P. 81(a)(2); see also Henry v. Lungren, 164 F.3d 1240, 1241 (9th Cir. 1999).  Additionally, 28 U.S.C. § 2242 states that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C.A. § 2242 (West 2006).

An amended pleading that adds a new claim will relate back to the date of the original pleading if it arises out of the same conduct, transaction, or occurrence as the claims in the original pleading.  Fed. R. Civ. P. 15(c).  It is not sufficient that a new claim relates to the same trial, conviction, or sentence that was challenged in the original habeas petition.  Mayle v. Felix, 545

03cv1463 J (RBB)

1  U.S. 644, 662 (2005).  But "[s]o long as the original and amended
2  petitions state claims that are tied to a common core of operative
3  facts, relation back will be in order."  Id. at 664.

4      In Mayle, Justice Ginsburg gave two examples of where relation
5  back is appropriate.  Id. at 664 n.7.  In one, the original habeas
6  petition alleged a Brady violation, and the amended petition
7  alleged the prosecution failed to disclose a particular report.
8  Id. (citing Mandacina v. United States, 328 F.3d 995, 1000-01 (8th
9  Cir. 2003).  In the second example, "the original petition
10 challenged the trial court's admission of recanted statements,
11 while the amended petition challenged the court's refusal to allow
12 the defendant to show that the statements had been recanted."  Id.
13 at 644 n.7 (citing Woodward v. Williams, 263 F.3d 1135, 1142 (10th
14 Cir. 2001)).  Mayle also notes that "relation back [is] ordinarily
15 allowed 'when the new claim is based on the same facts as the
16 original pleading and only changes the legal theory.'"  Id. at 644
17 n.7 (citing 3 James Wm. Moore et al., Moore's Federal Practice §
18 15.19 [2], at 15-82 (3d ed. 2004).

19     Petitioner's Third Amended Petition added four entirely new
20 claims, which were not presented in his original Petition or either
21 of the previous two amendments:  (1) He received ineffective
22 assistance of counsel when his trial attorney failed to move to
23 suppress evidence of a separate conviction (ground five); (2) due
24 process was violated when the court allowed admission of evidence
25 of a separate conviction (ground six); and (3) the trial court did
26 not give a jury instruction limiting use of the prior conviction
27 evidence (grounds seven and eight).  (See Third Am. Pet. 11-14.)
28 Although these claims arise from the same trial and conviction that

Petitioner challenged in his previously asserted claims, they do not arise from the same operative facts asserted in Jones's Petition, First Amended Petition, and Second Amended Petition.  See Martin v. Hubbard, No. 05-15524, 2006 U.S. App. LEXIS 18848, at *3-4 (9th Cir. July 26, 2006) (requiring the original petition to contain the "essential factual predicates of the later claims[]").  Jones's new claims involve different errors and different times from those previously alleged.  Accordingly, these newly-asserted claims do not relate back to the filing of the earlier federal petitions.  See Preston v. Harris, No. 05-15807, 2006 U.S. App. LEXIS 463, at *3 (9th Cir. Jan. 5, 2007) (denying relation back where claims involve different errors, actors, and times).

### 3.  **Equitable Tolling**

In some cases, a Petitioner may be able to toll the limitations period by demonstrating a basis for equitable tolling.  Equitable tolling is appropriate when "'extraordinary circumstances beyond a prisoner's control make it impossible'" for the petitioner to file a timely petition.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (quoting Brambles v. Duncan, 330 F.3d 1197, 1202 (9th Cir. 2003)); Stillman v. LaMarque, 319 F.3d 1199, 1202 (9th Cir. 2003); Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations omitted).  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."  Miles, 187 F.3d at 1107 (citations omitted).  Jones has the burden to establish extraordinary circumstances that warrant equitable tolling.  Miranda v. Castro, 292 F.3d 1063, 1065

(9th Cir. 2002) (citing <u>United States v. Marolf</u>, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999)).

Petitioner claims that extraordinary circumstances exist to warrant equitable tolling while he was awaiting the resolution of his final state habeas petition.  (Traverse 9.)  Specifically, Jones asserts that the district court's Order Granting Petitioner's Motion to Amend Petition and Request for Stay and Abeyance [doc. no. 50] found extraordinary circumstances that made it impossible for Jones to assert grounds five through eight within the statute of limitations.  (<u>Id.</u>)  Petitioner misreads the district court's order.  The district court found that Jones did not act in bad faith or with undue delay in seeking to amend his federal petition to assert newly-discovered claims.  (Order Granting Mot. to Amend 6.)  This does not mean that Petitioner proved the existence of extraordinary circumstances that would warrant equitable tolling.  <u>See</u> <u>Jackson v. Roe</u>, 425 F.3d 654, 661-62 (9th Cir. 2005) (distinguishing between "extraordinary circumstances" and "good cause" standards).

"[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." <u>Miranda</u>, 292 F.3d at 1066 (quoting <u>United States v. Marcello</u>, 212 F.3d 1005, 1010 (7th Cir. 2000)).  Jones does not specify any facts that constitute extraordinary circumstances.  Petitioner only points to Judge Jones's Order, which listed Petitioner's justifications for delay in seeking to amend his petition:  (1) The prison did not provide adequate legal assistance; (2) Jones was only able to attend the law library for two hours per week; and (3) the prison was locked down for periods between December 26, 2003,

and June 29, 2005, which limited his use of the library and access to his "jailhouse legal assistance."  (Order Granting Mot. to Amend 6.)

Courts have found that ignorance of the law is no excuse for the late filing of a habeas petition.  See Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000).  Although deficient prison library resources may in certain circumstances be appropriate grounds for equitable tolling, the deficiencies Jones alleges here do not rise to that level.  In Roy v. Lampert, 465 F.3d 964 (9th Cir. 2006), cert. denied sub nom. Belleque v. Kephart, ___ U.S. ___, 127 S.Ct. 1880 (2007), the Ninth Circuit remanded the case to the district court for an evidentiary hearing on equitable tolling where the petitioner alleged facts indicating the prison law library did not have a copy of AEDPA or other related materials, and the petitioner was unaware of AEDPA's limitations period.  Id. at 974-75; see also Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (finding that unavailability of AEDPA in prison library could constitute grounds for equitable tolling).  Jones does not allege facts approaching that level of inadequate access to library materials, especially considering that Jones was able to timely file pleadings in this action in addition to his first and second state habeas petition.

Other examples of circumstances that may entitle a petitioner to equitable tolling include language barriers that prevent timely filing, denial of access to legal materials for a significant time, or mental incompetence during the limitations period.  See, e.g., Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) (citing Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002)); Laws v. Lamarque,

1  351 F.3d 919, 921 (9th Cir. 2003); <u>Lott v. Mueller</u>, 304 F.3d 918,

2  924 (9th Cir. 2002).  Here, Jones has not alleged any facts that

3  would constitute extraordinary circumstances for his failure to

4  present grounds five through eight to the Court within the statute

5  of limitations.  Accordingly, equitable tolling is not appropriate.

6  Grounds five, six, seven, and eight in the Third Amended Petition

7  were filed after the expiration of AEDPA's statute of limitations,

8  and these grounds for relief should be dismissed.

9  **E.    Jones's Cumulative Error Claim**

10       Petitioner asserts that "there were several substantial

11 errors" during his trial, and the cumulative effect of those errors

12 resulted in a fundamentally unfair trial.  (Third Am. Pet. 48;

13 Traverse 20.)

14       In cases where there are a number of trial errors, the Court

15 may look at "the overall effect of all the errors in the context of

16 the evidence introduced at trial against the defendant." <u>United</u>

17 <u>States v. Frederick</u>, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting

18 <u>United States v. Wallace</u>, 848 F.2d 1464, 1476 (9th Cir. 1988)).

19 "In other words, 'errors that might not be so prejudicial as to

20 amount to a deprivation of due process when considered alone, may

21 cumulatively produce a trial setting that is fundamentally

22 unfair.'" <u>Alcala v. Woodford</u>, 334 F.3d 862, 883 (9th Cir. 2003)

23 (quoting <u>Thomas v. Hubbard</u>, 273 F.3d 1164, 1180 (9th Cir. 2001)).

24       In conducting a cumulative error analysis, the Court must look

25 at the combined effect of each error that occurred during

26 Petitioner's trial.  The Court has found the trial error alleged in

27 ground one of his Third Amended Petition did not prejudice Jones.

28 Nevertheless, because the Court found no other trial errors, a

1   cumulative error analysis is not appropriate.  Jones's cumulative

2   error claim fails.

3   **F.    Jones's Motion for Evidentiary Hearing**

4        On September 14, 2006, Petitioner filed a Motion for an

5   Evidentiary Hearing Pursuant to 28 U.S.C. § 2254(e)(2) [doc. no.

6   59].  Jones requests that the Court conduct an evidentiary hearing

7   on each of the grounds for relief claimed in his Third Amended

8   Petition.  (See Pet'r's Mot. 2-10; see also Third Am. Pet. 6-14.)

9   Respondent's Answer does not address Jones's request.

10       Under 28 U.S.C. § 2254(e)(2), as amended by AEDPA, a district

11  court presented with a request for an evidentiary hearing must

12  first determine whether the petitioner failed to develop the

13  factual basis of his claims in state court.  Williams v. Taylor,

14  529 U.S. 420, 430 (2000).  "[A] failure to develop the factual

15  basis of a claim is not established unless there is a lack of

16  diligence, or some greater fault, attributable to the prisoner or

17  the prisoner's counsel."  Id. at 432.

18       If a petitioner failed to develop the factual basis of a claim

19  in the state courts, this Court does not have discretion to conduct

20  an evidentiary hearing unless Petitioner shows that the following

21  requirements of 28 U.S.C. § 2254(e)(2) are met:

22           (A) the claim relies on --

23               (i) a new rule of constitutional law, made
             retroactive to cases on collateral review by
24           the Supreme Court, that was previously
             unavailable; or
25
                 (ii) a factual predicate that could not
26           have been previously discovered through the
             exercise of due diligence; and
27
             (B) the facts underlying the claim would be
28           sufficient to establish by clear and convincing evidence
             that but for constitutional error, no reasonable

1    factfinder would have found the applicant guilty of the
     underlying offense.

2

3   28 U.S.C.A. § 2254(e)(2)(A)-(B) (West 2006).

4       If a petitioner developed the record in state court, the

5   federal habeas court examines whether an evidentiary hearing is

6   appropriate or required under <u>Townsend v. Sain</u>, 372 U.S. 293

7   (1963).  There are six <u>Townsend</u> factors to consider:

8        (1) the merits of the factual dispute were not resolved
         in the state hearing; (2) the state factual determination
9        is not fairly supported by the record as a whole; (3) the
         fact-finding procedure employed by the state court was
10       not adequate to afford a full and fair hearing; (4) there
         is a substantial allegation of newly discovered evidence;
11       (5) the material facts were not adequately developed at
         the state-court hearing; or (6) for any reason it appears
12       that the state trier of fact did not afford the habeas
         applicant a full and fair fact hearing.

13

14  <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 670 (9th Cir. 2004) (quoting

15  <u>Townsend</u>, 372 U.S. at 313).  When a Petitioner has developed the

16  factual basis of his claim in state court and meets one of the

17  <u>Townsend</u> factors, "'[a]n evidentiary hearing on a habeas corpus

18  petition is required whenever petitioner's allegations, if proved,

19  would entitle him to relief.'"  <u>Id.</u> (quoting <u>Turner v. Marshall</u>, 63

20  F.3d 807, 815 (9th Cir. 1995)).  To meet this standard, "[t]he

21  petitioner's allegations need only amount to a colorable claim."

22  <u>Id.</u>  (citing <u>Beaty v. Stewart</u>, 303 F.3d 975, 993 (9th Cir. 2002);

23  <u>Phillips v. Woodford</u>, 267 F.3d 966, 973 (9th Cir. 2001)).

24      The Supreme Court has interpreted § 2254(e)(2) to require a

25  petitioner who failed to develop the factual basis of a claim in

26  state court to establish <u>both</u> that any efforts to discover the

27  facts would have been in vain and that he has a "convincing claim

28

                                    82                          03cv1463 J (RBB)

1  of innocence." <u>Williams</u>, 529 U.S. at 435 (citing 28 U.S.C. §

2  2254(e)(2)(A)(ii) and § 2254(e)(2)(B)).

3      Jones does not allege that the factual bases of his claims

4  were not developed in state court.  Instead, Petitioner repeatedly

5  asserts that an evidentiary hearing should be held on each of his

6  claims because the state court's findings were erroneous,

7  unreasonable, and not supported by the record.  (<u>See</u> Pet'r's Mot.

8  3-10.)  "Bald assertions and conclusory allegations" are not

9  sufficient grounds for an evidentiary hearing.  <u>Wacht v. Cardwell</u>,

10  604 F.2d 1245, 1246 n.2 (9th Cir. 1979).

11      The factual basis of the ineffective assistance of counsel

12  claim alleged in ground one of Jones's Third Amended Petition was

13  developed at the June 18, 2001, hearing on Petitioner's motion for

14  a new trial.  (<u>See</u> Lodgment No. 2, Rep.'s Tr. vol. 3, 599-686.)

15  Jones, his trial attorney, and other witnesses testified at the

16  hearing, a transcript of which was a part of the appellate record.

17  (<u>Id.</u>)  An evidentiary hearing is not necessary on this claim

18  because the record was sufficiently developed in the state court,

19  and none of the <u>Townsend</u> factors weigh in favor of an evidentiary

20  hearing.

21      Jones did not receive a hearing in state court on any of the

22  other grounds presented in his Third Amended Petition.  In his

23  petition to the California Supreme Court, filed July 31, 2003,

24  Petitioner requested that the court hold an evidentiary hearing on

25  his claims.  (Lodgment No. 10, Pet. for Habeas Corpus at 7, <u>Jones</u>,

26  No. S117839.)  The claims presented in that petition were:  (1)

27  ineffective assistance for failure to impeach Hughes (ground one-A

28  of the present Third Amended Petition); (2) insufficient evidence

1   of attempted robbery (ground three); and (3) insufficient evidence

2   of firearm use (ground four).  (Id. at 3-5.)

3       Jones failed to develop the factual record on the "failure to

4   impeach" aspect of his ineffective assistance claim, which could

5   have been pursued during the hearing on his motion for a new trial.

6   Likewise, Petitioner could have raised his claims of insufficient

7   evidence while seeking a new trial.  Finally, Jones did not request

8   an evidentiary hearing in connection with the state habeas

9   petitions that contained his remaining claims.  Even if Jones's

10  lack of diligence is overlooked, an evidentiary hearing is not

11  required for those claims that can be resolved by reference to the

12  state court record.  Campbell v. Wood, 18 F.3d 662, 679 (9th Cir.

13  1994).  Petitioner's sufficiency of the evidence claims come within

14  this rule.

15      "Under AEDPA, 'a failure to develop the factual basis of a

16  claim is not established unless there is a lack of diligence, or

17  some greater fault, attributable to the prisoner or the prisoner's

18  counsel.'"  Insyxiengmay, 403 F.3d at 670 (quoting Williams v.

19  Taylor, 529 U.S. 420, 432 (2000)).  With the exception of ground

20  one, Jones failed to develop the record within the meaning of 28

21  U.S.C. § 2254(e) because neither he nor his attorney attempted to

22  pursue these claims during the evidentiary hearing held in

23  connection with his motion for a new trial.  (See Lodgment No. 2,

24  Rep.'s Tr. vol. 3, 599-686.)

25      Nevertheless, Jones is not entitled a federal evidentiary

26  hearing.  Assuming Petitioner could meet one of the Townsend

27  factors for each of these claims, a hearing is only required where

28  "petitioner's allegations, if proved, would entitle him to

84

relief.'"   Id. (quoting Turner v. Marshall, 63 F.3d 807, 815 (9th Cir. 1995)).  As discussed above, even if the facts are as Jones alleges, he is not entitled to habeas relief on grounds one-A (the failure to impeach Hughes), three (insufficient evidence or attempted robbery), and four (insufficient evidence of firearm use), which were raised in Jones's state habeas petition with a request for an evidentiary hearing.

Petitioner is not entitled to an evidentiary hearing on the remainder of his claims.  Jones did not request an evidentiary hearing on these claims in any of his state habeas petitions; accordingly, he is at fault for failing to develop the factual bases of those claims in the state courts.  These claims do not contain "colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief."  Insyxiengmay, 403 F.3d at 670.  Petitioner would not be entitled to habeas relief on these claims even if all the facts are as he alleges.

Jones's Motion for an Evidentiary Hearing is **DENIED**.  In light of this Order, Petitioner's "Request for the Honorable Magistrates [sic] Judge to Rule on Motion for Evidentiary Hearing" [doc. no. 72], which Jones filed on December 20, 2006, is also **DENIED AS MOOT**.

### V. CONCLUSION

For the above reasons, Jones's Third Amended Petition for Writ of Habeas Corpus should be **DENIED**.  In addition, Petitioner's Motion for an Evidentiary Hearing is **DENIED**.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

objections with the district court and serve a copy on all parties

on or before July 30, 2007.  The document should be captioned

"Objections to Report and Recommendation."  Any reply to the

objections shall be served and filed on or before August 17, 2007.

The parties are advised that failure to file objections within the

specified time may waive the right to appeal the district court's

order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

    **IT IS SO ORDERED.**


Dated:  June 28, 2007

Ruben B. Brooks
United States Magistrate Judge

cc:  Judge Jones
     All parties of record