**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

EDWARD JONES,

                  Petitioner,

    v.

JEANNE WOODFORD, Director of
California Department of Corrections,

                Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 03cv1463 J (RBB)

**ORDER:**

**(1) ADOPTING THE REPORT AND RECOMMENDATION;**

**(2) DENYING THIRD AMENDED PETITION FOR WRIT OF HABEAS CORPUS; AND**

**(3) DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING.**

      Before the Court is Petitioner Edward Jones's ("Petitioner") Third Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  [Doc. No. 73.]  Magistrate Judge Ruben B. Brooks has filed a Report and Recommendation ("R&R") recommending that the Court deny the Petition. Petitioner timely filed objections to the R&R.  [Doc. No. 74.] Respondent has not filed a Reply.  For the reasons set forth below, this Court **ADOPTS** the R&R and **DENIES** the Petition in its entirety.

*Factual Background*

      The facts are set out in the California Court of Appeal opinion affirming Jones's conviction.  (Lodgment No. 5, *People v. Jones*, No. D038250, slip op. (Cal. Ct. App. Oct. 2,

2002).)  This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  28 U.S.C.A. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness); *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990) (holding factual findings of state courts are entitled to a presumption of correctness on federal habeas corpus review).

At approximately 9:30 a.m. on June 26, 1999, Roy French was browsing in the showroom of Symbolic Motors, an exotic car dealership in La Jolla, California, when he saw two men enter the showroom.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 105-07, Nov. 2, 2000.)  One of the men appeared to be talking on a cell phone.  (*Id.* at 106.)  The men approached French and Roger Phillips, a Symbolic sales representative, pushed them and ordered them to the back of the showroom.  (*Id.* at 107-08.)  When Phillips protested, the taller of the two men pulled out a gun.  (*Id.* at 108.)

The customer, employee, and two men went to the back of the showroom, and the shorter of the two men demanded French's wallet and took approximately one hundred dollars out of it.  (*Id.* at 109.)  He moved French into an office and told him to lie on the floor.  (*Id.*)  Phillips was also moved into the office.  (*Id.*)

The taller man asked Phillips where the safe was.  (*Id.* at 109-10.)  Phillips replied that he did not know, and the man slapped him.  (*Id.* at 110.)  During this time, the taller man continued to talk on the cell phone, seemingly getting instructions.  (*Id.*)  He then told the shorter man to "put one in the back of his [Phillips] head" and see if Phillips could then open the safe.  (*Id.* at 111.)  French looked up at the shorter man, who was pointing a gun at him.  (*Id.*)  The two robbers then heard a noise and left the office to investigate.  (*Id.* at 112.)

Ramon Bazaldua arrived at Symbolic where he was employed as a car detailer.  (*Id.* at 155.)  When he entered the showroom, the taller robber approached him and asked, "Are you the big guy?"  (*Id.* at 156.)  Bazaldua said he was only the detailer and continued walking across the

showroom.  (*Id.*)  The man put a gun to Bazaldua's head and ordered him into the office where Phillips and French had been taken.  (*Id.*)

The shorter robber bound the hands of all three men with duct tape and forced them to lie on the floor.  (*Id.* at 112, 156.)  When French looked up, the taller man put his foot in French's back, stating "I think you're trying to eyeball me, boy," and threatened to shoot him.  (*Id.* at 112.)  He asked who owned the Jaguar in the parking lot, and French replied that it belonged to him.  (*Id.* at 114.)  The shorter man then took the car keys out of French's pocket. (*Id.*)

Shortly thereafter, Sean Hughes arrived for work at Symbolic accompanied by his two daughters, ages six and eight.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 320-21, Nov. 6, 2000.)  The taller man, who Hughes later identified as Anthony Penton, approached Hughes in the showroom and asked if he was the owner of the dealership.  (*Id.* at 321-22.)  Hughes replied that he was not.  (*Id.* at 322.)  Penton ordered Hughes to the back of the showroom.  (*Id.* at 323.)  Hughes could tell from Penton's tone that something was wrong and asked if his daughters could wait outside in his car, but Penton said "No."  (*Id.*)

Penton led Hughes and his daughters to the back, where they encountered the shorter man, who Hughes later identified as Jones.  (*Id.*)  Penton and Jones took Hughes and his daughters to an upstairs office where the company's safes were located.  (*Id.* at 324.)  The men asked Hughes if he had a key to the office, and Hughes showed them that his keys would not open the door.  (*Id.* at 324-25.)

Penton and Petitioner made Hughes and his daughters lie face down on the floor. (*Id.* at 325.)  Jones took two guns and a roll of duct tape out of a plastic bag and taped Hughes's hands behind his back.  (*Id.*)  While Hughes was on the floor, Penton got a call on his cell phone.  (*Id.* at 326.)  Petitioner handed one of the guns to Penton, and Penton went downstairs.  (*Id.*)  Jones stayed with Hughes and his daughters.  (*Id.*)  While playing with the gun he was holding, Petitioner asked Hughes what he had in his pockets.  (*Id.* at 326-27.)  Hughes replied that he had ten dollars and a cell phone. Jones said he did not want the money, but he took the cell phone and turned it off. (*Id.* at 328.)

1    About one-half hour later, Hughes heard someone yell, "He's running." (*Id.*) Petitioner

2  ran downstairs and did not return. (*Id.*) Hughes stayed upstairs until he heard police officers on

3  a bullhorn, at which point he broke free from the duct tape, locked his daughters and himself in

4  another upstairs office, and called 9-1-1. (*Id.* at 329-31.)

5    Meanwhile, Shannon Williams arrived at work around 10:15 a.m. (Lodgment No. 2,

6  Rep.'s Tr. vol. 1, 43-44.) She entered the showroom and saw Penton talking on a cell phone.

7  (*Id.* at 44-45.) When she asked him if he needed any help, Penton pulled a gun from his belt and

8  told her to follow him. (*Id.* at 45-47.)

9    Robert Kueber arrived at work shortly after Williams. (*Id.* at 130.) Penton showed his

10  gun to Kueber and ordered Kueber and Williams to go into Williams's office. (*Id.* at 47, 131.)

11  As they crossed the showroom, Kueber turned and ran out of the building and across the street to

12  a gas station and called the police. (*Id.* at 137-38.) Penton ordered Williams into her office and

13  told her that if she moved he would shoot her. (*Id.* at 47.) Penton ran after Kueber; Jones came

14  down the stairs holding a gun and ran after Penton and Kueber. (*Id.* at 49-50.)

15    Williams called the police and removed the duct tape from French's, Bazaldua's, and

16  Phillips's hands. (*Id.* at 51-52.) The police arrived and, during their subsequent investigation,

17  recovered a plastic bag from an upstairs area of Symbolic. (Lodgment No. 2, Rep.'s Tr. vol. 2,

18  246.) The bag was later examined, and a fingerprint belonging to Jones was found. (Lodgment

19  No. 1, Rep.'s Tr. vol. 1, 177, 182-84.)

20    On June 29, 1999, three days after the robbery, Police Officer Andrew Spear saw

21  Petitioner speeding in a tan rental car. (Lodgment No. 2, Rep.'s Tr. vol. 2, 265.) When Officer

22  Spear approached the car, Jones sped up and turned down an alley. (*Id.*) Officer Spear then

23  turned on his lights and pursued Jones. (*Id.*) As Officer Spear chased Petitioner in his police

24  car, he saw Petitioner toss a loaded semiautomatic handgun out of the window. (*Id.* at 266.)

25  Jones eventually stopped and was arrested. (*Id.* at 264.) A search of the car uncovered a holster

26  that fit the gun that Petitioner had thrown out of the car. (*Id.* at 267.) The police learned that the

27  car Petitioner was driving had been rented by Penton approximately three weeks earlier. (*Id.* at

28  310.)

1       Police later determined that two cell phones linked to Penton were used to send and

2  receive thirty-two phone calls to and from the La Jolla area on the morning of the robbery.  (*See*

3  *id.* at 283-92.)  Upon searching Penton's home, police found one of the phone numbers Penton

4  called on the morning of the robbery written on a tablecloth.  (*Id.* at 304.)  Officers also found

5  .45 caliber ammunition and an Enterprise Rental Car key chain listing the make, model, and

6  license plate number of the car Petitioner was driving when he was arrested.  (*Id.* at 305-06,

7  310.)  During the subsequent police investigation, Williams and Hughes identified both Penton

8  and Jones as their attackers; Kueber identified only Penton; and French and Bazaldua were

9  unable to identify either man.  (*Id.* at 321, 323 (Hughes); Lodgment No. 2, Rep.'s Tr. vol. 1, 46,

10  50-51 (Williams), 115-18 (French), 148-50, 152 (Kueber), 167-68 (Bazaldua).)

11                    ***Procedural Background***

12  **I.  The Conviction**

13       Petitioner and his co-defendant, Anthony Penton were charged with two counts of

14  robbery, *see* Cal. Penal Code § 211 (West 1999), four counts of attempted robbery, *see* Cal.

15  Penal Code §§ 211, 664 (West 1999 & Supp. 2007), and two counts of false imprisonment, *see*

16  Cal. Penal Code §§ 236, 237(a) (West Supp. 2007). (Lodgment No. 1, Clerk's Tr. vol. 1, 1-4,

17  Sept. 11, 2000.) The information also alleged that Petitioner had served four prior prison terms

18  and, in each of the counts, that codefendant Penton personally used a firearm, *see* Cal. Penal

19  Code § 12022.53(b) (West Supp. 2007).  (*Id.* at 6-7.)

20       Prior to trial, the judge recommended that Jones plead guilty to all charges in the

21  information in exchange for receiving a twelve-year sentence.  (Lodgment No. 2, Rep.'s Tr. vol.

22  1, 4-5, Nov. 1, 2000.)  Petitioner rejected the offer.  (*Id.*)  Immediately afterwards, the District

23  Attorney filed an amended information which added allegations that Jones personally used a

24  firearm in the commission of the crimes listed in each count.  (*Id.* at 5-6; Lodgment No. 1,

25  Clerk's Tr. vol. 1, 24-28, Nov. 1, 2000.)   The information was also amended to change one

26  robbery charge to attempted robbery.  (*Id.* at 25.)

27       Jones and Penton were tried jointly in a jury trial. The jury convicted Petitioner of all

28  charges and found that each of the firearm-use allegations were true.  (Lodgment No. 1, Clerk's

Tr. vol. 2, 266-72, Nov. 8, 2000.)   The prosecutor moved to dismiss two of the prior prison term allegations, and the motion was granted.  (*Id.* at 257; Lodgment No. 2, Rep.'s Tr. vol. 3, 513, Nov. 8, 2000.)  Petitioner waived his right to a jury trial on the remaining prison priors and admitted they were true.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 504-05, Nov. 7, 2000.)

## II.  The Motion for New Trial

With new counsel representation, Jones filed separate motions for a new trial on May 18 and June 5, based upon ineffective assistance of trial counsel.  (Lodgment No. 1, Clerk's Tr. vol. 1, 140-220, May 18, 2001.)  The motions alleged that trial counsel failed to (1) investigate testimonial evidence, including alibi witnesses, (2) consult with experts, (3) present alibi evidence to the jury, (4) investigate physical evidence (perform fingerprint analysis), and (5) make reasonable tactical decisions about, among other things, whether Jones should testify about his alibi.  (*Id.* at 193-97.)

In his new trial motion, Jones noted that his trial counsel, Michael Taggart had objected to testimony of the state's forensic expert because he had only received photographs of Jones's fingerprints on the plastic bag the morning of the first day of trial.  (Lodgment No. 5, *People v. Jones*, slip op. at 8.)  Mr. Taggart argued that he had asked for discovery of the fingerprint evidence and had not received it.  (*Id.*)  The trial court found that counsel could not claim surprise because he had known about the bag with Jones's fingerprint on it since the preliminary hearing and had the opportunity to conduct an independent analysis of the evidence.  (*Id.*)  Nonetheless, the trial court gave Mr. Taggart three days to consult an expert and go over the evidence.  Mr. Taggart did not ultimately present any forensic evidence concerning the fingerprint.  (*Id.*)

On June 18, 2001, the state court held a hearing on Jones's motion for a new trial.  (Lodgment No. 2, Rep.'s Tr. at 597-668.)  After the hearing, the trial court denied the motion.  (Lodgment No. 1, Clerk's Tr. vol. 2, 281, June 18, 2001; Lodgment No. 2, Rep.'s Tr. vol. 3, 686, June 18, 2001.)  Four alibi witnesses, a defense expert, Jones and Mr. Taggart all testified.  (Lodgment No. 2, Rep.'s Tr. at 597-668.)

At the hearing, Jones's wife, Latania, testified that Jones was home with her on the morning of the robbery. (Lodgment No. 5, *People v. Jones*, slip op. at 9.) Latania's sister, who was dating Penton at the time of the incident, also testified. She stated that she frequently traveled from Los Angeles to San Diego in cars rented by Penton. (*Id.*) She also testified that she told Penton that Jones had been arrested in Penton's rental car, and Penton replied that he was going to report the car stolen. (*Id.*)

Latania's mother testified that she saw Jones at his home at about 9:45 a.m. on the morning of the robbery. (*Id.*) A neighbor of Jones also testified that she saw him in the apartment complex laundry room at approximately 10:00 a.m. the same morning. (*Id.*)

A forensic specialist, Lisa Di Meo, testified that the fingerprinting left on the plastic bag belonged to Jones. However, she also testified that she had found fingerprints on the duct tape used to bind Hughes (which had not previously been tested by the state) that did not belong to Jones. (*Id.*) Hughes had previously identified Petitioner as the person that bound his arms with duct tape. (Lodgment No. 2, Rep.'s Tr. vol. 1, 325.)

Mr. Taggart testified that he spoke to Jones's wife about a potential alibi defense. (Lodgment No. 5, *People v. Jones*, slip op. at 9.) However, Mr. Taggart explained that she was ultimately unable to testify at trial. Mr. Taggart did not recall Jones giving him the names of other potential alibi witnesses. (*Id.* at 10. ) He also stated that he did not hire an investigator because he did not have the funds. Mr. Taggart was now aware that he could have obtained county funds for an investigator. (*Id.*)

Mr. Taggart admitted he knew about the fingerprint evidence almost immediately after being retained by Jones. (*Id.*) He made a general discovery request and subsequent oral requests to the prosecutor for fingerprint evidence. (*Id.*) However, Mr. Taggart did not make specific written requests for evidence and did not file a motion to compel. (*Id.*)

When Mr. Taggart was questioned at the hearing, he was not asked about the rejected plea bargain. (*Id.* at 655-76.) Instead, Jones's new counsel asked Mr. Taggart about alibi witnesses. (*Id.* at 655-60, 666-67, 673-76.)

03cv1463 J (RBB)

1    Jones also testified at the hearing.  He stated that he gave Mr. Taggart names of potential

2    alibi witnesses and that Mr. Taggart never told him that he needed additional funds to conduct an

3    investigation or retain expert advice.  (*Id.*)  During his testimony, Jones did not say that he

4    desired to plead guilty as the trial judge had offered.  (*Id.* at 677-83.)  Instead, he said that he told

5    Mr. Taggart about his alibi defense.  (*Id.* at 655-76.)

6    The trial court denied Jones's motion, concluding that counsel faced "insurmountable

7    problems" in defending Jones.  (*Id.*)  Specifically, the court found that counsel could not have

8    overcome the eyewitness identifications, Jones's fingerprint on the bag found at the scene, the

9    fact that he was driving Penton's car when apprehended, and his possession of a gun matching

10   the description of the gun used during the robbery.  (*Id.* at 11.)  The court also found that the

11   alibi defense was not credible.  (*Id.*)

12   On June 20, 2001, Petitioner was sentenced to thirty-seven years in prison, comprised of

13   the middle term of three years for the robbery, ten years for the firearm enhancement, eight

14   months for each of the five attempted robbery counts, three years and four months for the

15   firearm enhancement on each of those counts, eight months for each of the two false

16   imprisonment counts, and enhancements of one year and four months for each of the two false

17   imprisonment counts.  (Lodgment No. 1, Clerk's Tr. vol. 1, 238-39, June 26, 2001; Lodgment

18   No. 2, Rep.'s Tr. vol. 3, 701-02, June 20, 2001.)  The judge also imposed one-year

19   enhancements for each of the prison priors, which were stayed pursuant to California Penal Code

20   section 654. (Lodgment No. 1, Clerk's Tr. vol. 1, 238; Lodgment No. 2, Rep.'s Tr. vol. 3, 702.)

21   **III.  Jones's Habeas Petition**

22   Jones appealed his conviction and sentence to the California Court of Appeal by filing a

23   direct appeal and a petition for writ of habeas corpus.  (Lodgment No. 3, Appellant's Opening

24   Br., *People v. Jones*, No. D038250 (Cal. Ct. App. Oct. 2, 2002; Lodgment No. 4,Pet. for Habeas

25   Corpus, *In re Jones*, No. D039422 (Cal. Ct. App. Oct. 2, 2002).)  Jones argued, among other

26   things, that he received ineffective assistance of counsel at trial and during plea negotiations, and

27   that there was insufficient evidence to convict him on certain counts of attempted robbery and

28   certain gun allegations.  (*See* Lodgment No. 3, Appellant's Opening Br. at 13-55, *People v.*

*Jones*, No. D038250; Lodgment No. 4, Pet. for Habeas Corpus at 8-13, *In re Jones*, No. D039422.)

On October 2, 2002, after consolidating Petitioner's appeal and habeas petition, the appellate court affirmed Jones's conviction. (Lodgment No. 5, *People v. Jones*, No. D038250, slip op. at 31 (Cal. Ct. App. Oct. 2, 2002).) Jones then filed a petition for review in the California Supreme Court. (Lodgment No.6, Pet. for Review, *People v. Jones*, No. S111271 (Cal. Jan. 21, 2003).) The petition was denied without citation. (Lodgment No. 7, *People v. Jones*, No. S111271, slip op. at 1 (Cal. Jan. 21, 2003).)

On April 10, 2003, Petitioner filed his first habeas petition in the California Supreme Court, which he later withdrew. (Lodgment No. 8, Pet. for Habeas Corpus, *Jones v. Calderon*, No. S114976 (Cal. July 25, 2003); Lodgment No. 9, *In re Jones*, No. S114976, order at 1 (Cal. July 25, 2003).) On July 21, 2003, Petitioner filed a federal Petition for Writ of Habeas Corpus in this Court. [Doc. No. 1.] Jones then filed a second habeas petition with the California Supreme Court on July 31, 2003. (Lodgment No. 10, Pet. for Habeas Corpus, *Jones v. Calderon*, No. S117839 (Cal. Apr. 14, 2004).)

Soon thereafter, Petitioner filed a First Amended Petition in this Court deleting his unexhausted claims and seeking a stay of the petition. [Doc. Nos. 5, 7.] On September 4, the Court granted Jones's request while he exhausted certain claims in state court. [Doc. No. 8.] The Court subsequently granted two extensions of the stay. [Doc. Nos. 15, 20.]

The California Supreme Court denied Petitioner's second habeas petition on April 14, 2004. (Lodgment No. 11, *In re Jones*, No. S117839, slip op. at 1 (Cal. Apr. 14, 2004).) Jones then filed an Amended Petition in this Court. [Doc. No. 21.] Respondent filed an Answer [doc. no. 29] and Memorandum of Points and Authorities [doc. no. 30] on September 29, 2004. Petitioner then filed a Traverse. [Doc. No. 32.]

Judge Brooks issued a Report and Recommendation Re Denial of Petition for Writ of Habeas Corpus on March 4, 2005. [Doc. No. 33.] On May 2, 2005, after Jones had filed Objections to the Report and Recommendation [doc. no. 34], Petitioner filed another request for stay and abeyance [doc. no. 35] so he could return to state court to exhaust four new claims.

1    Then Judge Brooks issued a second Report and Recommendation Re Denial of Motion to

2    Amend and Request for Stay and Abeyance.  [Doc. No. 40.]  On March 29, 2006, the Court

3    issued an Order [doc. no. 50] granting Petitioner's request to hold his Second Amended Petition

4    in abeyance while he returned to state court to exhaust his new claims.  (Order Granting Mot. to

5    Amend at 12.)  Correspondingly, the Court rejected the two Reports and Recommendations

6    under submission.  (*Id.*)

7          During this time, Jones filed his third state habeas petition on May 9, 2005, which he

8    withdrew.  (Pet'r's Response to Opp'n to Mot. to Amend, Ex. A 3-6; *In re Jones*, No. S133747,

9    docket (Cal.) available at http://appellatecases.courtinfo.ca.gov (search for case number

10   "S133747," then follow "docket" hyperlink).)

11         Petitioner subsequently filed his fourth habeas state petition, which the California

12   Supreme Court denied on May 24, 2006. (Supp. Lodgment No. 1, Pet. for Habeas Corpus at 4-7,

13   *In re Jones*, No. S135905 (Cal. May 24, 2006); Supp. Lodgment No. 2, *In re Jones*, No.

14   S135905, slip op. at 1 (Cal. May 24, 2006).)

15         Petitioner filed a Third Amended Petition in this Court on June 15, 2006.  [Doc. No. 51.]

16   Respondent filed an Answer on October 25, 2006.  [Doc. No. 66.]  Jones then filed a Traverse.

17   [Doc. No. 69.]

18                                     ***Legal Standard***

19   **I. State Prisoner Habeas Standard**

20         A federal court's duty in examining a state prisoner's habeas petition is governed by the

21   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  To

22   present a cognizable federal habeas corpus claim under AEDPA, a state prisoner must allege that

23   his conviction was obtained "in violation of the Constitution or other laws or treaties of the

24   United States."  *See* 28 U.S.C. § 2254(a).  Petitioner must allege that the state court violated his

25   federal constitutional rights.  *See Reed v. Farley*, 512 U.S. 339, 347 (1994).

26         AEDPA requires that federal courts deny state prisoners' habeas petition for claims the

27   state courts have already adjudicated on the merits unless the adjudication of the claim (1) was

28   contrary to, or involved an unreasonable application of, clearly established federal law as

1   provided by the United States Supreme Court or (2) was based on an unreasonable determination

2   of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d);

3   *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

4          A state court decision is "contrary to clearly established federal law" if the court (1)

5   applies a rule that contradicts the governing law set forth in the Supreme Court cases, or (2)

6   confronts a set of facts that are materially indistinguishable from a decision of the Supreme

7   Court and nevertheless arrives at the opposite result.  *Williams v. Taylor*, 529 U.S. 362, 405

8   (2000).  A state court decision is an unreasonable application of the facts "if the state court

9   identifies the correct governing legal principle from [the Supreme Court's] decision but

10  unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

11         The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, *as determined by the*

12  *Supreme Court of the United States.*'"*Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996) (en

13  banc), *rev'd on other grounds*, 521 U.S. 320 (1997) (emphasis added).  Section 2254(d)(1)

14  "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." *Id.* "[A]

15  state court decision may not be overturned on habeas corpus review, for example, because of a

16  conflict with Ninth Circuit-based law."  *Moore*, 108 F.3d at 264.  "[A] writ may issue only when

17  the state court decision is 'contrary to, or involved an unreasonable application of, 'an

18  authoritative decision of the Supreme Court.'" *Id.*, see also *Baylor v. Estelle*, 94 F.3d 1321, 1325

19  (9th Cir. 1996).

20         Notably, AEDPA prescribes significant deference to the state courts. AEDPA provides

21  that factual findings of the state court are presumed to be correct.  28 U.S.C.A. § 2254(e)(1)

22  (West 2006).  The Petitioner carries the burden of rebutting the presumption of correctness by

23  clear and convincing evidence.

24  **II.  Reviewing a Magistrate Judge's R&R**

25         The district court's duties in connection with a magistrate judge's R&R are set forth in

26  Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  *See* Fed. R. Civ.

27  P. 72(b); 28 U.S.C. § 636(b)(1).  The district court must "make a *de novo* determination of those

28  portions of the report . . . to which objection is made," and "may accept, reject, or modify, in

1   whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §

2   636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980).  "When no objections

3   are filed, the district court may assume the correctness of the magistrate judge's findings of fact

4   and decide the motion on the applicable law."  *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217

5   (S.D. Cal. 2001).  "Under such circumstances, the Ninth Circuit has held that 'a failure to file

6   objections only relieves the trial court of its burden to give *de novo* review to factual findings;

7   conclusions of law must still be reviewed *de novo*.' "  *Id.* (quoting *Barilla v. Ervin*, 886 F.2d

8   1514, 1518 (9th Cir. 1989)).  In this case, Petitioner filed objections to the R&R**.** [Doc. No. 74.]

9   Accordingly, this Court will make a de novo determination of factual findings as to those

10  portions of the R&R to which objections have been made.

11                                  *Petitioner's Objections*

12          Because Petitioner has filed objections to the R&R, the Court must conduct a de novo

13  review of the portions of the R&R to which objections were made.  Petitioner objects to all of

14  the findings in the R&R.  Some of Petitioner's objections provide new explanations for his

15  objection, while other objections restate the original claims in the habeas petition.  Primarily,

16  Petitioner objects to the R&R on the basis that his claims for relief meet both prongs required for

17  the ineffective assistance of counsel claims, and that denial of habeas relief is an unreasonable

18  application of clearly established federal law.  Petitioner further asserts that, because he is able

19  to establish ineffective assistance of counsel, the cumulative errors of his trial counsel resulted in

20  a fundamentally unfair trial.

21                                       *Discussion*

22          In the eight grounds for relief in Jones's Third Amended Petition, he makes ten claims

23  that Petitioner argues entitle him to habeas relief: (1) ineffective assistance of trial counsel for

24  failure to investigate his alibi defense and fingerprint evidence; (2) ineffective assistance of

25  counsel for failure to impeach a critical prosecution witness; (3) ineffective assistance of counsel

26  for failure to properly advise Jones of the consequences of rejecting a plea offer; (4) a violation

27  of due process for the trial court's error in advising Petitioner of the possible sentencing

28  consequences of rejecting a plea offer; (5) insufficient evidence to support his convictions for

                                          12

attempted robbery; (6) insufficient evidence to support the sentence enhancements for use of a firearm; (7) ineffective assistance of counsel for failure to object to, or seek to suppress, evidence of a separate conviction; (8) a violation of due process by the introduction of irrelevant evidence of a separate conviction; (9) a violation of due process for the trial court's failure to give a limiting instruction regarding the use of the separate conviction evidence; and (10) cumulative error resulting in a fundamentally unfair trial. (Third Am. Pet. 6-13.)

Judge Brooks found that Petitioner was unable to satisfy both of the requisite prongs to establish ineffective assistance of counsel for Claims[1] 1-3 (R&R at 22, 31-33, 35-47), and thus, cumulative error could not result in a fundamentally unfair trial (Claim 10) (R&R at 80-81). In addition, Judge Brooks found Claims 4-6 without merit. (*See* R&R at 42-47.) Finally, Judge Brooks found that Petitioner is not entitled to relief on Claims 7-9 because they were barred procedurally and by the AEDPA's statutes of limitations. (R&R at 75-80.)

**I. Ineffective Assistance of Counsel**

Jones alleges in grounds one and two of his Third Amended Petition that he received ineffective assistance of trial counsel when his attorney (1) failed to investigate his alibi defense and fingerprint evidence; (2) failed to impeach a critical prosecution witness; and (3) failed to properly advise Petitioner of the consequences of rejecting an offered plea agreement. (Third Am. Pet. 6-8, 17-36.)

In deciding a § 2254 habeas petition, this Court reviews the "last reasoned" state court decision. *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). The California Supreme Court summarily denied Jones's petition for review and his second and fourth habeas petitions, which Jones filed after withdrawing his first and third petitions. (Lodgment No. 7, Jones, No. S111271, slip op. at 1; Lodgment No. 11, Jones, No. S117839, slip op. at 1; Supp. Lodgment No. 2, Jones, No. S135905, slip op. at 1.) Therefore, this Court "looks through" those denials to the California Court of Appeal's reasoned opinion on Petitioner's direct appeal. *Medina*, 386 F.3d at 877.

---

[1]Claims are not an exact match as the grounds listed in the petition, but are grouped accordingly for clarity purposes.

1    The Sixth Amendment guarantees criminal defendants effective assistance of counsel.

2    *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000); see *McMann v. Richardson*, 397 U.S. 759,

3    771 n.14 (1970) (stating, "It has long been recognized the right to counsel is the right to the

4    effective assistance of counsel.") (citations omitted). In *Strickland v. Washington*, 466 U.S. 668

5    (1984), the Supreme Court set the federal standard for resolving ineffective assistance of counsel

6    claims. "The benchmark for judging any claim of ineffectiveness must be whether counsel's

7    conduct so undermined the proper functioning of the adversarial process that the trial cannot be

8    relied on as having produced a just result." *Id.* at 686.

9    Under *Strickland*, a habeas petitioner alleging constitutionally ineffective assistance of

10   counsel claims must meet each prong of a two-part test:  First, Petitioner must show that

11   counsel's performance fell below an objective standard of reasonableness under prevailing

12   norms of practice.  *Id.* at 687-88.  Second, Petitioner must also show that the defendant was

13   prejudiced , in the sense that he would have received a more favorable result but for counsel's

14   unprofessional errors.  *Id.*  Courts need not address both prongs if the petitioner alleging

15   ineffective assistance makes an insufficient showing on one.  *Id.* at 697 (stating, "If it is easier to

16   dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

17   expect will often be so, that course should be followed.").

18   A court's review of counsel's performance should be "highly deferential" because there is

19   a strong presumption" that counsel rendered adequate assistance and exercised reasonable

20   professional judgment.  *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987);

21   *see also Strickland*, 466 U.S. at 690.  "A lawyer generally is presumed competent, and it is the

22   burden of the accused to overcome this presumption." *Dows*, 211F.3d at 485 (citing *United*

23   *States v. Cronic*, 466 U.S. 648, 658 (1984)); *see also Strickland*, 466 U.S. at 689-690.  The

24   Supreme Court explained in *Strickland*:

25   "The availability of intrusive post-trial inquiry into attorney
     performance or of detailed guidelines for its evaluation would encourage the
26   proliferation of ineffectiveness challenges. Criminal trials resolved
     unfavorably to the defendant would increasingly come to be followed by a
27   second trial, this one of counsel's unsuccessful defense. Counsel's performance
     and even willingness to serve could be adversely affected. Intensive scrutiny
28   of counsel and rigid requirements for acceptable assistance could dampen the
     ardor and impair the independence of defense counsel, discourage the

acceptance of assigned cases, and undermine the trust between attorney and client."

*Strickland*, 466 at 690.

A petitioner must also demonstrate prejudice in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Courts will presume that a defendant has suffered prejudice "when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceedings, or if counsel entirely failed to subject the prosecution's case to meaningful adversarial testing." *Hays v. Alabama*, 85 F.3d 1492, 1496-97 (11th Cir. 1996) (citing *Cronic*, 466 U.S. at 662); *see also Dows*, 211 F.3d at 485. Otherwise, "the defendant must point to specific errors made by defense counsel that undermine confidence in the outcome of the trial." *United States v. LaRouche*, 896 F.2d 815, 823 (4th Cir. 1990); *see Cronic*, 466 U.S. at 659 n.26 (citations omitted); *Strickland*, 466 U.S. at 693-96.

### A.  Failure to Investigate Alibi Defense and Obtain Favorable Evidence

In his first claim for relief, Jones alleges his trial counsel failed to conduct a reasonable investigation of alibi witnesses and exculpatory fingerprint evidence, present witnesses in support of an alibi defense, and consult an expert regarding exculpatory fingerprint evidence. (Third Am. Pet. at 6.)  Judge Brooks rejects Petitioners ineffective assistance of counsel claims because Petitioner fails to show that he was prejudiced under *Stickland*.  (*See* R&R at 22, 25-34.) Thus, the magistrate court found, the state court ruling was not based on an unreasonable determination of the facts in light of the evidence or an unreasonable application of *Strickland*. *See id.*  Petitioner objects to this finding, contending that his trial counsel's ineffective assistance ultimately failed to present any meaningful defense to the jury.  (*See* Pet'r's Objs. at 3-14.) Petitioner points to several Ninth Circuit cases in which the court found, despite overwhelming evidence against a defendant, the failure to investigate and present alibi witnesses caused prejudice under *Strickland*. Thus, Petitioner argues, the state court's decision was contrary to or an unreasonable application of *Strickland.*  (*See id.*)

In rejecting Jones's claim, the California Court of Appeal applied *Strickland* and concluded that Jones failed to demonstrate that he was prejudiced.  (Lodgment No. 5, *People v. Jones*, No. D038250, slip op. at 13.)  The court stated:

> The evidence of Jones's guilt was overwhelming. This included the undisputed fingerprint evidence on the bag carrying the guns and tape, the eyewitness identifications, and Jones's capture after fleeing police in Penton's rental car and throwing a gun out the window of the car. Thus, it is not reasonably probable that but for counsel's alleged deficiencies Jones would have received a more favorable result, and the court did not abuse its discretion in denying Jones's motion for a new trial.

(*Id*. at 13-14.)  Because the state appellate court determined Jones failed to satisfy the prejudice prong of Strickland, the court did not decide whether Petitioner's counsel's performance was deficient.  (*Id*. at 13.)

Under § 2254(d), this Court's review is limited to considering whether the state appellate court's determination was contrary to, or an unreasonable application of, *Strickland*.  The state court set forth the appropriate standard for evaluating prejudice under *Strickland*.  Furthermore, it correctly observed that a court need not address the deficiency prong if the defendant fails to make a showing of prejudice. *Strickland*, 466 U.S. at 697. The California Court of Appeal found that Jones could not establish he had been prejudiced by the alleged deficiencies of his trial counsel. (Lodgment No. 5, *Jones*, No. D038250, slip op. at 13.)  Consequently, Jones did not prove that counsel rendered ineffective assistance entitling him to a new trial. (*Id*. at 12-14.)

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. Counsel's conduct is examined in light of all the circumstances present at the time. *Id*. at 690.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the

03cv1463 J (RBB)

circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

### i. Failure to Investigate and Present an Alibi Defense

Jones alleges that he had a viable alibi defense that was not presented at his trial. (Third Am. Pet. at 6.) He claims that he told his attorney about four potential alibi witnesses, but his attorney did not interview them. (*Id.*)

An attorney's choice not to call witnesses to testify at trial must be informed by an adequate investigation in order to be a reasonable, tactical decision that will be upheld under *Strickland. Sanders v. Ratelle*, 21 F.3d 1446, 1456-57 (9th Cir. 1994). "Ineffectiveness is generally clear in the context of complete failure to investigate because counsel can hardly be said to have made a strategic choice when [he] has not yet obtained the facts on which such a decision could be made." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (citations omitted); *see also Strickland*, 466 U.S. at 690-91; *Sanders*, 21 F.3d at 1457.

Petitioner alleges that four alibi witnesses would have testified "he was at his home at around the time of the alleged crimes." (Third Am. Pet. at 6.) The witnesses were Petitioner's wife, his mother-in-law, a neighbor, and his children's babysitter. (*Id.* at 18.) During the hearing on Jones's motion for a new trial, the court heard testimony from Jones and six witnesses. (*See* Lodgment No. 2, Rep.'s Tr. vol. 3, 599-683.) Three of the witnesses – Loretta Bradley (the neighbor), Latania Jones (the wife), and Joyce Thomas (the mother-in-law) – supported Petitioner's alibi defense by testifying about his whereabouts on the day of the robbery. (*Id.* at 601-02, 612-17, 642-43.) All three witnesses stated that Jones was at home fixing breakfast and doing laundry when the crimes were committed. (*Id.*)

Latania Jones, Petitioner's wife, testified that she told Michael Taggart, Petitioner's trial counsel, that she wanted to testify about Jones's alibi, but he told her "it wouldn't be a good thing to get on the stand and say that." (*Id.* at 609-11, 626.) Latania also stated that she told Mr. Taggart the identities of three other potential alibi witnesses. (*Id.* at 611-12.) Joyce Thomas (Petitioner's mother-in-law) and Loretta Bradley (the neighbor) both testified that Mr. Taggart

17

1   never interviewed them, even though they would have testified at trial that Jones was at home

2   when the robbery was committed.  (*Id*. at 601-03, 642-44.)

3       The state court also heard testimony from Mr. Taggart about his investigation of the alibi

4   defense and his decision not to present the defense at trial.  (*Id*. at 657- 60, 666-76.)  Mr. Taggart

5   testified that he was only aware of Latania and the Jones's babysitter as potential alibi witnesses.

6   (*Id*. at 669.)  He stated that neither Petitioner nor Latania ever gave him the name or contact

7   information for the babysitter, so he could not contact her. (*Id*. at 670-71.)  Mr. Taggart did not

8   interview any witnesses regarding an alibi defense, aside from conversations he had with Jones's

9   wife.  (*See id.* at 658-60, 667.)

10      Mr. Taggart did not call any witnesses to testify in Petitioner's defense.  (*See* Lodgment

11   No. 2, Rep.'s Tr. vol. 2, 400, 411.)  After the prosecution and Jones's codefendant finished

12   presenting their witnesses, Mr. Taggart indicated that he had planned to call Petitioner's wife to

13   testify, but she had left the courthouse.  (*Id*. at 398-99.)  Counsel told the trial judge that Latania

14   would testify as to Jones's alibi, and her testimony would be the only evidence he presented in

15   his case-in-chief.  (*Id*. at 400.)  The next morning, when it was time for Mr. Taggart to begin his

16   case, however, he rested without calling Latania to testify.  (*Id*. at 411.)

17      Mr. Taggart explained that he had concerns about presenting the alibi defense at trial

18   because he doubted its credibility.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 670.)  In particular, he

19   was troubled by the credibility of alibi testimony because Jones and his wife told Mr. Taggart

20   they had a babysitter who would testify for Petitioner, but Jones never gave him the babysitter's

21   name, address, or phone number so that Mr. Taggart could speak to her. (*Id*. at 659-60, 670,

22   674.)

23      Petitioner contends that Taggart met the babysitter before trial. (Pet'r's Obj. to R&R at 7-

24   8.)  The babysitter submitted an affidavit asserting that she met Taggert prior to the trial and

25   provided him her contact information.  (*Id.*, Exhibit C Dec. of LaTosha Jones.)  However, this

26   affidavit is dated March 7, 2003, long after the trial. (*See id.*)

27      At the hearing, Jones's wife Latania testified that the babysitter went with her to meet

28   with the attorney.  (Lodgment No. 5, *People v. Jones*, slip op. at 9.)  Meanwhile, Mr. Taggart

1  testified that he was told there was a babysitter who was potentially an alibi witness, but he was

2  never given her name or contact information so he could contact her.  (*Id.*)  The trial judge did

3  not resolve the factual dispute of whether or not Taggart actually met the babysitter prior to trial.

4  (*See id.*)  The court found that even if Taggart's performance was deficient, Jones did not suffer

5  prejudice by counsel's performance because there was indisputable evidence that tied Jones to

6  the crime.  (*Id.*)  Thus, whether Taggart met the babysitter is not the issue for this Court, but

7  whether the state court's finding that Petitioner was not prejudiced by the failure of counsel to

8  present alibi witnesses because of the indisputable evidence was contrary to or an unreasonable

9  application of *Strickland.  See* 28 U.S.C 2254(d)(1).  Further, the state court found the alibi

10  witnesses were internally inconsistent and not credible.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 699-

11  700.)  This Court defers to that factual determination.  *See* 28 U.S.C. 2254(e)(1).  Petitioner has

12  the burden of rebutting this determination with clear and convincing evidence.  *Id.*  Due to the

13  timing of the submission of the affidavit, Petitioner has not met this burden.

14        Counsel's concerns about the credibility of Petitioner's alibi witnesses and the viability of

15  the defense is a strategic reason for not presenting the defense at trial.  Although Mr. Taggart did

16  not speak to the babysitter before Jones's trial, he did speak with Latania and Jones; and from

17  their representations, he doubted the credibility of the defense.  "[F]ew decisions a lawyer makes

18  draw so heavily on professional judgment as whether or not to proffer a witness at trial[.]"

19  *Alcala v. Woodford*, 334 F.3d 862, 871 (9th Cir. 2003) (quoting *Lord v. Wood*, 184 F.3d 1083,

20  1095 (9th Cir. 1999)).  Accordingly, Petitioner has failed to overcome the presumption that Mr.

21  Taggart's decision not to present an alibi defense as a reasonable, tactical decision. *See*

22  *Strickland*, 466 U.S. at 689; see *also Siripongs v. Calderon*, 133 F.3d 732, 735 (9th Cir. 1998)

23  (finding counsel's performance to be based on a reasonable tactical decision when, after hiring

24  an expert and investigating a possible defense, counsel determined it was not credible enough to

25  present to the jury).  Mr. Taggart's decision is validated by the state court's findings in its

26  hearing on a motion for new trial.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 699-700.)

27        Jones has also failed to show that he was prejudiced by Mr. Taggart's decision not to

28  present an alibi defense. The state trial court found the testimony of Petitioner's alibi witnesses

1   (all of whom were family members or friends of Jones) had "very little, if any, merit."  *Id.*  The

2   court determined that much of the testimony was internally inconsistent.  (*Id.* at 699.)  This

3   Court defers to these  credibility determinations.  *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir.

4   1998); *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990); *see also Marshall v. Lonberger*, 459

5   U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to

6   redetermine credibility of witnesses whose demeanor has been observed by the state trial court,

7   but not by them.")

8          Jones points the Court's attention to *Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir. 1999),

9   where the Ninth Circuit found the petitioner was prejudiced by his counsel's failure to present

10  three potential alibi witnesses.  (Third Am. Pet. at 22; Traverse at 5.)  That case is

11  distinguishable from Petitioner's: In Lord, the alibi witnesses were unrelated to the defendant;

12  thus, they did not have any motive to lie. *Lord*, 184 F.3d at 1095.  Here, the alibi witnesses are

13  all family members or friends of Jones, so they lack the inherent credibility of the disinterested

14  witnesses in *Lord*.

15         Furthermore, the court in *Lord* explained that the defense counsel's failure to present alibi

16  testimony was more questionable in light of specific weaknesses in the prosecution's case

17  (including a lack of DNA evidence or witnesses to the murder).  Here, the witness identification

18  and fingerprint evidence on the plastic bag directly linked Petitioner to the scene of the crime.[2]

19         Petitioner also points the Court to *Brown v. Meyer*s, 137 F.3d 1154 (9ᵗʰ Cir. 1999),  where

20  the Ninth Circuit found the petitioner was prejudiced by his counsel's failure to present alibi

21  witnesses.  (Third Am. Pet. at 22; Traverse at 5; Pet'r's Objt. at 17.)  In *Brown*, the court

22  explained that the missing testimony of the alibi witnesses would have "altered significantly the

23  evidentiary posture of the case." *Brown*, 137 F.3d at 1157.  Here, alibi witnesses would not have

24  _____

25  [2]The Court notes that in Petitioner's Objections, he argues that his co-defendant's girlfriend's statement
    explained the fingerprints on the bag and removed him from the crime scene.  (Pet'r's Obj. to R&R at 20.)

26  Petitioner contends that but for trial counsel failure to present the girlfriend's statement at trial, the alibi witnesses,
    and the duct tape fingerprint evidence (which would contradict witness testimony about Petitioner binding the

27  witness' hands), the jury would have had reasonable doubt to find him not guilty.  (*See id.* at 21.)  The prejudice,
    Petitioner argues, results from counsel's failure to present any meaningful defense to the jury, which undermines

28  the confidence in the outcome of the trial. (*See id.*) However, the state court found the defense's testimonies not
    credible.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 699-700.) This Court defers to those determinations.  *See* 28 U.S.C.
    2254(e)(1).

1   significantly altered the evidence against Petitioner.  (*See* Lodgment No. 2, Rep.'s Tr. vol. 1,

2   325.)  The state court found the evidence against Petitioner "insurmountable." (*Id.*)

3          As this Court defers to the state court's credibility determination, there is no reasonable

4   probability that the alibi testimony would have altered the outcome of the trial. Petitioner has

5   failed to show a reasonable probability that the outcome would have been different if his

6   attorney had pursued an alibi defense.  Thus, Petitioner's ineffective assistance of counsel claim

7   for failure to present an alibi witness fails.

8                              **ii. Fingerprint Evidence**

9          Jones also claims ineffective assistance of counsel because Mr. Taggart failed to hire an

10  expert to perform a fingerprint analysis of the physical evidence.  (Third Am. Pet. 6.)  Petitioner

11  asserts that Mr. Taggart should have hired a fingerprint expert to analyze the fingerprint found

12  on the plastic bag that the prosecution's expert found matched Jones's print and have the

13  defense expert examine the duct tape used to bind the victim's hands for fingerprints.  (*Id.* at

14  20-22.)

15         Mr. Taggart testified at the hearing on the new trial motion that he was aware of the

16  plastic bag and duct tape fingerprint evidence, but did not hire an investigator or expert prior to

17  trial to test the evidence.  (Lodgment No. 2, Rep.'s Tr. vol. 3, 662-64.)  Additionally, Mr.

18  Taggart was given the opportunity during trial to hire an expert.  When he complained that the

19  prosecutor was introducing fingerprint evidence Mr. Taggart had not analyzed, the judge

20  adjourned the trial so counsel could hire an expert to examine the evidence.  (Lodgment No. 2,

21  Rep.'s Tr. vol. 1, 191-95.)  Even though he was given a recess specifically for this purpose, Mr.

22  Taggart did not make any attempts to contact an expert.  (Lodgment No. 2, Rep.'s Tr. Vol., 664-

23  65.)  Mr. Taggart explained that did not hire a fingerprint expert because he did not have

24  sufficient funding.  (*Id.* at 663-65.)

25         After Petitioneer was convicted, he retained attorney Pamela Lacher to file a motion for

26  a new trial.  Lacher hired Lisa Di Meo , a forensic expert, to perform a fingerprint analysis of

27  certain physical evidence.  (*See* Lodgment No. 2, Rep.'s Tr. Vol. 3, 650.)  Di Meo analyzed

28  several pieces of duct tape used to bind Sean Hughes' hands during the robbery.  (*Id.* at 652.)

03cv1463 J (RBB)

1    During the trial, the fingerprint expert spoke about the fingerprints on the plastic bag, but made
2    no reference to the duct tape.  (R&R at 27.)

3         The pieces of tape of adhered together in layers.  (*Id.* at 652-53.)  Di Meo found three
4    latent fingerprints on the adhesive side of the tape between the second and third layers.  (*Id.* at
5    654.)  After comparing the latent prints with Jones's print, she concluded that the fingerprints on
6    the duct tape did not belong to Petitioner.  (*Id.*)  She did, however, match Jones's fingerprint to
7    the print on the plastic bag found at the scene.  (*Id.* at 655.)

8         The trial court denied Jones's motion for a new trial.  The judge found Petitioner's trial
9    counsel could not have "committed some kind of egregious error under the circumstances"
10   because there was "insurmountable" evidence against Jones.  (*Id.* at 686-687.)  The court's
11   ruling was premised on the following factual findings: (1) the victims identified Jones; (2)
12   Jones's fingerprint was found on the bag containing the guns and the duct tape; (3) Jones was
13   arrested three days after the robbery driving a car leased to Penton and trying to evade the
14   police; and (4) Jones possessed a gun matching the description of a gun used in the robbery.  (*Id.*
15   at 687.)  The judge referred to this evidence as "totally irrefuted."  (*Id.*)

16        Jones is entitled to habeas relief if the state court ruling was either based on an
17   unreasonable determination of the facts in light of the evidence or an unreasonable application of
18   *Strickland*.  28 U.S.C. §§ 2254(d)(1)-(2).  A state court decision involves an unreasonable
19   applicable of clearly established federal law, "if the state court identifies the correct governing
20   legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the
21   particular prisoner's case."  *Williams v. Taylor*, 529 U.S. 362, 407 (2000).  A state court makes
22   an unreasonable determination of the facts when it fails to consider and weigh relevant evidence
23   that was properly presented to it.  *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).  "[T]he
24   state-court fact-finding process is undermined where the state has before it, yet apparently
25   ignores, evidence that supports Petitioner's claim."  *Id.* (citing *Miller-El v. Cockrell*, 537 U.S.
26   322 346 (2003)).

27
28

03cv1463 J (RBB)

### 1. The State Court's Determination of the Facts

Here, Jones's challenge requires an intrinsic review of the record, which in turn demands deference to the state courts. *Id.* at 999-1000. The state court's fact-finding does not survive intrinsic review if the federal court is "satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Id.* at 1000. A state fact finder is not required to address every "every jot and tittle of proof suggested," but it must not overlook

relevant probative evidence. *Id.* at 1001 (citing Miller-El, 537 U.S. at 347).

> To fatally undermine the state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored evidence must be highly probative and central to petitioner's claim. In other words, the evidence in question must be sufficient to support petitioner's claim when considered in the context of the full record bearing on the issue presented in the habeas petition.

*Id.* (emphasis added). Here, both the trial court and the state appellate court overlooked the duct tape. Neither court mentioned that the fingerprints found on the duct tape did not belong to Jones. In finding that the evidence of Jones's guilt was "totally irrefuted" and "overwhelming," both courts neglected to consider evidence that someone other than Petitioner left fingerprints on the adhesive side of the duct tape, between two of the layers of tape, that was wrapped around Hughes's hands. This evidence points to the conclusion that someone other than Jones bound the victim's hands. If presented at trial, this fingerprint evidence could have discredited Hughes's identification and supported Petitioner's defense that the "person that did the tying up was that second person, and it wasn't Mr. Jones." (Lodgment No. 2, Rep.'s Tr. vol. 3, 684.) To determine the probative value of the fingerprint evidence, this Court must consider all the evidence against Jones.

### (a) Fingerprint Evidence

In spite of the duct tape, there was fingerprint evidence against Petitioner that placed him at the scene of the crime. At trial, a latent print examiner, Mary Widner-Brown, testified that she obtained a latent fingerprint from a black plastic bag brought to her for examination. (Lodgment No. 2, Rep.'s Tr. vol. 1, 170, 176-79.) She compared the latent fingerprint with a known print from Jones and was "absolutely positive" that the print belonged to Jones. (*Id.* at 188.)

1   Although other prints were on the bag, the examiner found only one fingerprint that was usable

2   for comparison purposes.  (*Id.* vol. 2, 241.)  Officer Dale Flamand collected the duct tape that

3   had been used to bind the victims and the plastic bag that was left  upstairs by the office.  (*Id.* at

4   244, 246.)  Hughes testified that the black plastic bag was left upstairs in the hallway where they

5   were all sitting.  (*Id.* at 331.)  During the trial, the fingerprint expert made no reference to the

6   duct tape. But in his closing argument, counsel for Jones argued: "[W]e've got five different

7   victims, each one being bound except for Miss Williams ... Now, on all of this duct tape, there

8   are no prints found on any of this duct tape.  Pretty interesting that there would be no

9   fingerprints on any of this duct tape." (*Id.* at 477.)

10                          **(b) The Identification Testimony**

11          Jones was identified on multiple occasions, by different victims, and with varying degrees

12   of certainty.[3]  On August 30, 1999, Shannon Williams was shown two photographic lineups.

13   From one, she identified the codefendant Anthony Penton as one of the robbers.  (*Id.* at 300.)

14   She said: "Him. I'm sure of it. He's the one that was talking on the cell phone." (*Id.*)  She also

15   identified Jones in the other photographic lineup. "That's the second guy, I'm positive." (*Id.*)

16   Williams attended a jail lineup on August 30, 2000. (Lodgment No. 2, Rep.'s Tr. vol. 1, 64.)

17   She was able to identify Penton.  (*Id.* at 65.)  In the second jail lineup, Williams tentatively

18   identified an individual (not Jones), but a few hours later, she called the prosecutor and said that

19   she had identified the wrong person. (*Id.* at 65-67.)  The preliminary hearing occurred on

20   September 11, 2000, and Williams identified Penton and had "no problem" identifying Jones,

21   whose hair length and beard was different at the August 30, 2000, lineup. (*Id.* at 70-71, 102.)  At

22   the trial, Williams identified Penton as the robber who pointed a gun at her and Jones as the

23   robber who was running down the stairs with a black handgun in his hand. (*Id.* at 46, 50.)  She

24   had no doubt Penton and Jones were the two robbers. (*Id.* at 71.)

25          Roy French, another robbery victim, was shown the same photographic lineups. He

26   pointed to Jones, stating that he was "the closest of all of the photos to the shorter, heavier-set

27   ────────────────────

28          [3]In Petitioner's Objections to the R&R, he raises concerns about the victim's corroborating their
     identifications prior to trial.  This is the first time Petitioner has raised this concern, and thus it is not appropriate
     for review by this Court.

1   suspect." (*Id.* at 301).  French noted that he was "only fifteen to twenty per cent sure it was the

2   right suspect." (Lodgment No. 2, Rep.'s Tr. vol. 1, 117.)  He was not able to identify the other

3   robber in the other photo lineup. (Lodgment No. 2, Rep.'s Tr. vol. 2, 301.)  At the jail lineup and

4   at trial, French was unable to identify either Jones or Penton as the robbers. (Lodgment No. 2,

5   Rep.'s Tr. vol. 1, 117-18.)

6        Victim Sean Hughes identified Penton and a second individual in the first set of

7   photographs, but number five (Penton) "appeared closer." (*Id*. at 302-03.)  In lineup number two,

8   Hughes pointed to the photo of Jones and said, "That's him. This is the one that was upstairs

9   with me. This is him." (*Id*. at 303.)  At the time of the lineup, there was "no doubt" that the

10  person he identified (Jones) was the individual that held him at gunpoint.  (*Id.* at 338.)

11  Approximately one year later, on August 30, 2000, two live

12  lineups were conducted at San Diego County Jail, one with Penton and one with Jones.  (*Id*. at

13  318, 338-39.)  Hughes identified Penton and tentatively identified Jones, stating that Jones "did a

14  good job of changing his appearance. He appeared to have lost some weight and grew his hair

15  out and shaved really clean." (*Id*. at 339.)  At the preliminary hearing in September of 2000,

16  Hughes had no problem identifying Penton or identifying Jones, who now had shorter hair and a

17  goatee. (*Id.* at 342-43.)  On that date, Jones's appearance was similar to his appearance at the

18  time of the robbery.  (*Id.* at 342.)  At trial, Hughes had no doubt that Jones and Penton were the

19  two that held him at gunpoint in June of 1999. (*Id*. at 343.)

20       Hughes testified at trial that Jones and Penton led him and his two daughters to the offices

21  upstairs.  (*Id*. at 323-24.)  Jones was holding a plastic bag, removed duct tape from the bag, and

22  bound Hughes's arms behind his back in duct tape. (*Id*. at 325.)   Jones then pulled two guns

23  from the bag, one for himself and one for Penton.  (*Id*.)  Penton went downstairs, and Hughes

24  asked Jones to release his daughters. (*Id*. at 326.)  Hughes was with Jones for thirty to forty-five

25  minutes before Jones ran downstairs.  (*Id*. at 328.)  During their time together, Hughes "got a

26  good look" at Jones.  (*Id.* at 329.)

27       Robert Kueber, another victim, provided little useful identification testimony. Three or

28  four months after the incident, he tentatively identified Penton from a photographic lineup, but at

a live lineup in August of 2000, he was unable to identify Penton; in court, he said that Penton looked similar to one of the perpetrators. (*Id*. at 139-40, 150-51.)  Kueber was never able to identify Jones because on the day of the robbery, he did not see a second robber. (*Id*. at 152-53.)

### (c) Evading Arrest in Penton's Car

On June 29, 1999, Jones was arrested by Officer Andrew Spear after being pursued on residential streets at speeds up to seventy miles an hour.  (*Id*. at 264-66.) During the chase, Jones threw a black, fully loaded semiautomatic pistol out of the window of the car he was driving. (*Id*. at 266, 268.)  On June 4, 1999, the codefendant Anthony Penton rented a Chevrolet Monte Carlo with license number 4ELF799. (*Id*. at 259, 262-63.)  This was the vehicle driven by Jones on the day of his arrest.  (*Id*. at 265.)

### (d) The Probative Value of the Overlooked Evidence

Without the presentation of the duct tape fingerprint evidence, the jurors had no reason to doubt Hughes's identification of Jones as the robber who bound him. "While [the fingerprint evidence] is perhaps not conclusive, it is certainly highly probative. A rational fact-finder might discount it ... but no rational fact-finder would simply ignore it." *Taylor*, 366 F.3d at 1006.

"In making findings, a judge must acknowledge significant portions of the record, particularly where they are inconsistent with the judge's findings." *Id*. at 1007. Because the state courts failed to consider, or mention the existence of, the fingerprint evidence presented at the hearing on Jones's new trial motion, the state's fact-finding process was incomplete; the question is whether it was fatally defective. *See Miller-El*, 537 U.S. at 346; Taylor, 366 F.3d at 1008.

"How serious the defect, of course, depends on what bearing the omitted evidence has on the record as a whole." *Taylor*, 366 F.3d at 1008. The multiple identifications of Jones and Penton; Jones's fingerprint on the plastic bag found on the premises that contained the guns and duct tape; and Jones's arrest after attempting to evade police while driving a car leased to Penton all diminish the significance of the duct tape evidence. Furthermore, Jones's trial counsel already argued that Jones's fingerprints were found on the duct tape and this evidence did not affect the outcome of the trial.

1    The state court's fact-finding process was not unreasonable, and the findings of the

2  California Court of Appeal on Jones's ineffective assistance of counsel claim are entitled to a

3  presumption of correctness under 28 U.S.C. § 2254(e)(1). *Taylor*, 366 F.3d at 1001-01; *see also*

4  *Miller-El,* 537 U.S. at 340. Thus, Petitioner should not be granted habeas relief based on a claim

5  that the state courts made an unreasonable determination of the facts underlying his ineffective

6  assistance of counsel claim.

7                    **2. The State Court's Application of Strickland**

8         Next, the Court must decide whether there has been an unreasonable application of

9  clearly established federal law. Under Strickland, counsel renders deficient performance when

10  his "acts or omissions [are] outside the wide range of professionally competent assistance."

11  *Strickland*, 466 U.S. at 690.  A decision not to investigate is only reasonable if it is based on a

12  strategic choice by counsel that makes the particular investigation unnecessary.  *Id.* at 690-91.

13  Here, attorney Mr. Taggart did not make a strategic decision. He testified at the new-trial motion

14  hearing that he did not hire a fingerprint expert "first and foremost" because he did not have the

15  funding. (Lodgment No. 2, Rep.'s Tr. vol. 3, 662-65.) When asked if he knew that he could get

16  funding from the county to hire an expert, Taggart replied, "I don't know," but he had not

17  pursued obtaining a fingerprint expert. (*Id.* at 664.)

18         Failing to hire, or even attempt to hire, an expert to analyze the physical evidence is not a

19  reasoned, tactical decision when it is based on a perceived lack of funding rather than a sound

20  trial strategy.  *See Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) (finding deficient

21  performance where the physical evidence, if tested, would have strengthened the defense and

22  undermined the prosecution's case); *Sims v. Livesay*, 970 F.2d 1575, 1580 (6th Cir. 1992)

23  (finding deficient performance where counsel failed to have a quilt tested for gun powder residue

24  when the evidence, if tested, would have provided the defense with a theory of the case that fit

25  with the defendant's version of events). Thus, Taggart rendered deficient performance because

26  the decision not to investigate was unreasonable.

27         The California Court of Appeal, however, did not address deficient performance. Instead,

28  it held that, even assuming Jones could show ineffective assistance of counsel, he

1    could not meet the second prong of the *Strickland* test, and therefore, they did not have to

2    address whether counsel's performance was deficient.  (Lodgment No. 5, *People v. Jones*,

3    D038250, slip op. at 13 (citing *Strickland*, 466 U.S. at 697).)  Courts need not address both

4    deficient performance and prejudice when analyzing an ineffective assistance of counsel claim.

5    *Strickland*, 466 U.S. at 697. Indeed, if prejudice has not been shown, the claim should be

6    disposed of on that ground. *Id.*

7          On the other hand, "if counsel entirely fails to subject the prosecution's case to meaningful

8    adversarial testing, then there has been a denial of Sixth Amendment rights that makes the

9    adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. at 659.

10   Taggart's performance did not fall to this level. Counsel's failure to consult a fingerprint expert

11   does not "undermine confidence in the outcome of the trial." *See United States v. La Rouche*,

12   896 F2d at 823. Contrary to Jones's contention (Pet. at 24), this case is not one where prejudice

13   should be presumed.  Here, Taggart's performance did not prejudice Jones's trial. Although

14   evidence indicating that someone other than Petitioner bound Hughes's hands with duct tape

15   conflicts with Hughes's identification of Jones, the evidence does not seriously draw into

16   question Jones's participation in the robbery. There is no reasonable probability that this

17   evidence would have caused the jury to entertain a reasonable doubt about Jones's guilt. *See*

18   *Strickland*, 466 U.S. at 695.

19         The state appellate court's conclusion that Jones was not prejudiced by his attorney's

20   failure to investigate the duct tape evidence and present it at trial was not an unreasonable

21   application of *Strickland*. Accordingly, Jones's ineffective assistance claim for failure to present

22   an alibi defense and fingerprint evidence is **DENIED**.

23   **B.  Failure to Impeach a Critical Prosecution Witness**

24         Jones also argues that defense counsel was ineffective for failing to impeach prosecution

25   witness Sean Hughes with evidence of his prior convictions and prior inconsistent statements.

26   (Thir Am. Pet. 7.)  According to Petitioner, "Hughes was the only witness to consistently claim

27   petitioner was one of the robbers, " so Jones's attorney was ineffective for failing to challenge

28   Hughs' credibility by impeachment.  (*Id.* at 29.)

### 1. There is No Procedural Bar to Petitioner's Claim

Petitioner raised this claim in his second petition filed in the California Supreme Court. (Lodgment No. 10, Pet. at 3, *Jones*, No. S117839.)  The petition was denied without a written opinion; instead, the court cited (1) *In re Swain*, 34 Cal. 2d 300, 304, 209 P.2d 793, 796 (1946); (2) *People v. Duvall*, 9 Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr. 2d 259, 265 (1995); (3) *In re Waltreus*, 62 Cal. 2d 218, 397 P.2d 1001, 42 Cal. 9 (1965); and (4) *In re Dixon*, 41 Cal. 2d 756, 264 P.2d 513 (1953).  (Lodgment No. 11, *In re Jones*, No. S117839, slip. op. at 1.)  Citation to these cases indicates that the state court declined to reach the merits of Jones's claims because they were procedurally barred.  *See La Crosse v. Kernan*, 244 F.3d 702, 704-05 (9th Cir. 2001).

If the state court found Petitioner's federal claim barred pursuant to an independent and adequate state rule, federal review of that claim is barred unless Petitioner can demonstrate his case meets an exception.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002).  However, to invoke the adequate and independent grounds doctrine, the respondent must plead procedural default as an affirmative defense.  *Bennet v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).  Here, Respondent does not argue a procedural bar to this particular claim or invoke the adequate and independent grounds doctrine.  Thus, this Court will not discuss the procedural bar or whether the state rule was adequate and independent.  (*See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003) (stating, "[g]enerally, the state must assert the procedural default as a defense to the petition before the district court; otherwise the defense is waived.") (citation omitted).

Respondent argues that this claim is without merit and the state court's rejection of the claim is not unreasonable under § 2254 (d).  (Resp't Answer to Third Am. Pet. at 10).  As there is no state decision on the merits of this claim, this Court reviews it *de novo*.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  Thus, the Court must independently determine whether counsel's failure to impeach Hughes with prior convictions and inconsistent statements amounted to ineffective assistance under *Strickland*.

### 2.  Denial of the Claim is Not an Unreasonable Application of *Strickland* because Petitioner Cannot Overcome the Presumption of Sound Trial Strategy and Fails to Demonstrate Prejudice

Jones asserts that his counsel informed him that Hughes, one of the victims who identified Petitioner as one of the robbers, had a "rap sheet," yet counsel failed to impeach Hughes during cross-examination with his prior conviction.  (Third Am. Pet. 29.)  Petitioner claims that "Hughes' prior record would have called into question Hughes' credibility with the jury.  (*Id.*)

### a.  Deficient Performance

Assuming Hughes had a criminal record that could have been introduced as impeachment evidence, this Court cannot say that failure to do so constituted ineffective assistance of counsel. Jones cannot overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689; *see also Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).  Jurors were likely sympathetic to Hughes, given that he and his two young daughters were victims of this crime. For that reason, cross-examining Hughes about his prior, unrelated, criminal history could risk  alienating the jurors who might view it as an unfair attack on the victim. This would be a sound strategic reason for not bringing up Hughes's alleged prior conviction.

In his Objections to the R&R, Petitioner contends that he overcomes the presumption of sound trial strategy because his counsel failed to conduct the minimum reasonable investigation as to how to best represent him.  (*Id.* at 25.)  Petitioner cites to *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) where the court explains, "we have found counsel to be ineffective where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so." *Id.*  However, *Sanders* is distinguishable from Petitioners: *Sanders* represents the complete failure to investigate a possible defense.  Here, defense counsel challenged the witness' identification of Petitioner, just not in the specific way Petitioner would have liked in hindsight:  Counsel cross-examined the witnesses in a way that would not potentially offend jurors by pointing out the identification weaknesses, and presented expert testimony about witness misidentification.  (Lodgment No. 2, Rep.'s Tr. vol. 2, 350-55.); *Infra* p. 44.   Thus,

1  Petitioner is still unable to overcome the presumption that the failure to impeach Hughs was a

2  sound trial strategy and, thus, constitutes deficient performance.

3  **b. Prejudice**

4  Jones has also failed to show he was prejudiced.  In *Hoots v. Allsbrook*, 785 F.2d 1214

5  (4th Cir. 1986), the Fourth Circuit was presented with the same claim Jones makes here.  *See id.*

6  at 1221. In *Hoot*, the court rejected the petitioner's claim of ineffective assistance for failure to

7  impeach a prosecution witness with evidence of the witness's criminal record, finding there was

8  no reasonable probability the outcome of the trial would have been different:

9  
10  
11  
12  
13  
14  
> Given the vagaries of attempts to impeach with matters collateral to testimonial trustworthiness, we simply are not able to declare that the failure to impeach by that means here gives rise to the reasonable probability that had it been done Hoots would not have been convicted. ... It is of course possible that impeachment might sufficiently have shaken [the witness's] credibility to tip the reasonable doubt balance. It is at least equally possible, however, that the attempt to impeach by this collateral means would have been viewed by the jury as an unwarranted, desperate effort to discredit a witness whose testimony was intrinsically and by demeanor wholly credible.

15  *Id.*  The court concluded that prejudice had not been established because a mere possibility of a

16  different outcome is not enough to satisfy the *Strickland* standard.  *Id.* Similarly, Petitioner has

17  shown no more than a mere possibility that impeaching Hughes's

18  testimony with evidence of his alleged criminal record would have changed the outcome of the

19  trial. Accordingly, Jones has failed to show that prejudice resulted from his attorney's

20  performance.

21  In *Sanders*, the court found the failure to investigate constituted deficient performance,

22  but correctly pointed out that deficient performance alone could not satisfy *Strickland*.  *Sanders*,

23  21 F.3d *at* 1461.  That court concluded petitioner was prejudiced because counsel's

24  incompetence deprived the defendant of the most critical evidence in support of his best defense

25  (defendant's brother repeatedly admitted that he was the perpetrator).  *Id.*  Here, while counsel

26  did not impeach the Hughs for an alleged criminal record, counsel did challenge the credibility

27  of his identifications, one of the most critical pieces of evidence against Petitioner.  No. 2, Rep.'s

28  Tr. vol. 2, 350-55.).

Nevertheless, Petitioner still contends that counsel did not cross-examine Hughes at trial about inconsistent statements he made concerning the certainty of his identification and his opportunity to observe the perpetrators.  (Third Am. Pet. 7, 29.)  Jones asserts that "Hughes['s] prior statements were inconsistent with his trial testimony. During trial he altered the level of certainty of his identification and increased the amount of time he allegedly viewed the subject." (*Id*. at 7.)  The record undermines Jones's contentions. His counsel did cross-examine Hughes about his identification of Jones and the length of time he observed the robbers.  (Lodgment No. 2, Rep's Tr. vol. 2, 350-53.)  The attorney emphasized that Hughes only tentatively identified Petitioner in a photo lineup. (*Id*. at 355.)  Counsel also pointed out that at the preliminary hearing Hughes testified he observed Jones for fifteen to thirty minutes, while at trial he testified it was thirty to forty-five minutes. (*Id*. at 353.)  Counsel also emphasized that Hughes was lying face-down on the ground for some of the time he was with Petitioner. (*Id*. at 350-51.)

In addition, counsel had Scott Fraser, Ph.D., a neurophysiologist, testify on Petitioner's behalf concerning the reliability of eyewitness identification.  (Lodgment 2, Rep's Tr. vol. 2, 363-74.)  Doctor Fraser testified that research indicated that the type of identifications made in Petitioner's case could be inaccurate.  *Id.*  While Dr. Fraser could not determine whether the eyewitnesses in this case accurately identified Petitioner in this case, he did present the plausible possibility before the jurors to consider.  (*See* Lodgment 2, Rep's Tr. vol., 384-385.)

The record shows that Jones's attorney effectively cross-examined Hughes by drawing attention to the inconsistencies between his trial and preliminary hearing testimony and by highlighting the tentative nature of his original identification. This does not constitute deficient performance.  Petitioner has failed to show prejudice and that his trial counsel rendered ineffective assistance under *Strickland*.  Therefore, this claim for relief is **DENIED**.

### C.  Failure to Properly Advise Jones of the Consequences of Rejecting a Proposed Plea Bargain

In ground two, Jones claims that he received ineffective assistance of counsel when his attorney gave him erroneous advice regarding a proffered plea bargain that Petitioner chose to reject. (Third Am. Pet. 8.)  Petitioner also asserts that the trial judge made inaccurate statements concerning his maximum sentencing exposure which contributed to the error. (*See id.* at 8, 30.)

Jones raised this claim in his habeas petition to the California Court of Appeal, where he alleged that counsel failed to "adequately advise petitioner regarding the maximum potential sentence." (Lodgment No. 4, Pet. at 11, *In re Jones*, No. D039422.)  His claim was denied in a reasoned decision. (Lodgment No. 5, *People v. Jones*, No. D038250, slip op. at 30.)  Jones then brought the claim in his petition for review to the California Supreme Court. There, he modified the claim to add that counsel was aware an amended information was going to be filed but never informed Jones of the correct maximum term he was facing. (Lodgment No. 6, Pet. for Review at 23-25, 28-29, *People v. Jones*, No. S111271.)  The state court denied the petition without citation. (Lodgment No. 7, *People v. Jones*, No. S111271, slip op. at 1.)

Because there is no reasoned decision from the state's highest court, this Court must "look through" the California Supreme Court's denial of this claim to the decision of the California Court of Appeal -- the last reasoned state court opinion – to determine whether it is contrary to, or an unreasonable application of, clearly established federal law.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06.

The state appellate court denied Jones's claim because it found that Petitioner failed to make a prima facie showing for habeas relief.  (Lodgment No. 5, *Jones*, No. D039422, slip op. at 30.) Specifically, the court noted that when Jones rejected the plea offer, he was charged with two counts of robbery, four counts of attempted robbery, and two counts of false imprisonment, which gave him a potential exposure of twenty-four years.  (*Id.*)  This is exactly what his attorney advised him.  (*Id.*)  Petitioner chose to reject the offer, and subsequently an amended information was filed which changed his exposure to thirty-seven years. (*Id.*)  Thus, the state court found Jones's attorney did not advise him incorrectly because he was not facing thirty-seven years until *after* he rejected the plea. (*Id.*)

The decision to reject an offered plea bargain and go to trial marks a critical stage in the proceedings.  *Strickland's* two-prong test therefore applies to ineffective assistance claims arising from the plea bargain process.  *See Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002) (citing *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985)).  In plea situations, the first "inquiry is whether counsel's advice was within the range of competence demanded of attorneys in criminal

1   cases." *Id.* (internal quotations and citations omitted). Next, the Court must ask whether, "but

2   for counsel's errors, [the defendant] would have pleaded guilty and would not have insisted on

3   going to trial." *Id.* at 879.

4        Courts have found that counsel's failure to communicate the prosecution's plea offer

5   constitutes deficient performance and satisfies the first prong of *Strickland*. *See United States v.*

6   *Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994).  The Ninth Circuit, however, has observed that the

7   question is "more difficult where ... the client has been informed of the plea ... offer." *Turner*,

8   281 F.3d at 880.  In this situation, "the question [was described] as not whether 'counsel's

9   advice [was] right or wrong, but ... whether that advice was within the range of competence

10  demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759,

11  772 (1970)).  For Jones to establish ineffective assistance of counsel, he "must demonstrate gross

12  error on the part of counsel[.]" *Id.* (quoting *McMann*, 397 U.S. at 771).

13                **1. Failure to Advise Jones an Amended Information Would Be Filed**

14        Petitioner states that when discussing the proposed plea, counsel told him his exposure

15  was twenty-four years.  (*See* Third Am. Pet. 30; Third Am. Pet. Ex. A ¶ 3.)  Jones claims his

16  attorney failed to inform him the prosecutor was going to file an amended information which

17  would increase Petitioner's exposure to thirty-seven years.  (Third Am. Pet. 30.)  He alleges that

18  "[e]ither before or after coming to court, the record reflects counsel received a copy of a

19  proposed amended information" which would increase Petitioner's maximum exposure. (*Id.*

20  (emphasis omitted).)  According to Jones, his attorney's failure to inform him of the amended

21  information was ineffective assistance, because he would have accepted the plea bargain if he

22  had known of the pending amendment. (*Id.* at 8, 31-32.)  In his objections, Petitioner argues that

23  counsel had possession of the amended information in his hands at the time of advising

24  Petitioner about the plea offer.[4]  (Pet'r Obj. to R&R at 28.)

25  _____

26        [4]Petitioner also contends that the state fact finding was unreasonable because the state failed to conduct an
    evidentiary hearing, and thus, the state's factual findings are an unreasonable application of federal law.  (Pet'r
27  Obj. to R&R at 29.)  Petitioner cites to *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) where the court
    explained if a state court made evidentiary findings without holding a hearing or an opportunity for Petitioner to
28  present evidence, the findings would result in an "unreasonable determination" of the facts.  *Id.*  Thus, deference
    should not be given to the state's finding that counsel did not have the amended information until after the plea

1    This failure to advise of the amended information aspect of Jones's ineffective assistance

2    claim was presented for the first time in his petition to the California Supreme Court, and the

3    claim was rejected in a summary order.  (Lodgment No. 6, Pet. at 23-30, *People v. Jones*, No.

4    S111271; Lodgment No. 7, *Jones*, No. S111271, order at 1.)  When the state court does not

5    supply its reasoning, a federal habeas court conducts an independent review of the record to

6    decide whether the state court's decision was objectively reasonable.  *Himes v. Thompson*, 336

7    F.3d 848, 853 (9th Cir. 2003); *see also Luna v. Cambra*, 306 F.3d 954, 960-61 (9th 2002).

8    Independent review is not *de novo* review.  Deference to any relevant state court factual findings

9    is still required.  *See Delgado v. Lewis*, 181 F.3d 1087, 1091-92 n.3 (9th Cir. 1999).

### a.  Performance was not Deficient

11    "[A] defendant has the right to make a reasonably informed decision whether to accept a

12    plea offer."  *Turner v. Calderon*, 281 F.3d at 880 (quoting *United States v. Day*, 969 F.2d 39, 43

13    (3d Cir. 1992)).  Counsel's performance is deficient when "the advice ... [the defendant]

14    received was so incorrect and so insufficient that it undermined his ability to make an intelligent

15    decision about whether to accept the [plea] offer."  *Id.* (quoting *Day*, 969 F.3d at 43).  Knowing

16    the difference between the sentence exposure under a

17    proposed plea agreement and the sentence exposure if the plea is rejected "will often be crucial

18    to the decision whether to plead guilty."  *Day*, 969 F.2d at 43.

19    Prior to November 1, 2000, the day trial was set to begin, the court suggested a twelve-

20    year disposition.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 3-4.)  After discussing the offer with his

21    attorney, Jones told the trial judge that he rejected the offer and elected to go to trial.  (*Id.* at 3-5.)

22    Thereafter, the prosecutor filed an amended information.  (*Id.* at 5-6; Lodgment No. 1, Clerk's

23    Tr. vol. 1, 24-31.)  The amended information changed one robbery count to attempted robbery

24    and added allegations that Jones personally used a firearm in the commission of each of the

25    charged offenses.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 5-6; see Lodgment No. 1, Clerk's Tr. vol.

26    1, 24-25.)  With the new firearm allegations, Jones's maximum exposure increased to an excess

27

28    offer was rejected.  (*See* Pet'r Obj. to R&R at 29.)  Here, Petitioner presented his claim to the state court and they
rejected this argument.  Thus, the state fact finding is not unreasonable as Petitioner asserts, and therefore this
Court should still give deference to that finding.

1   of thirty-seven years.[5]  After the amended information was filed, in limine motions were argued

2   and the jury was selected.  (Lodgment No. 1, Clerk's Tr. vol. 2, 248-49.)  Testimony began the

3   next day. (*Id.* at 250.)

4       While discussing Jones's related claim, the court of appeal found that "[i]t was only after

5   [Jones] rejected the plea offer that the People amended the information [.]." (Lodgment No. 5,

6   *Jones*, No. D038250, slip op. at 30.)  This factual finding is presumed correct under §

7   2254(e)(1), and Petitioner has the burden of rebutting the presumption by clear and convincing

8   evidence.  *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).  Petitioner has failed to

9   rebut the presumption.  The record does not show, as Jones would have the Court believe, that

10  Petitioner's attorney received a copy of the proposed amended information before Jones rejected

11  the twelve-year offer.  (*See* Third Am. Pet. 8.)  Instead, the record shows that Taggart received a

12  copy of the amended information for the first time on the morning that Jones rejected the plea

13  offer. (Lodgment No. 2, Rep.'s Tr. vol. 1, 5.)  This occurred after the trial court recommended a

14  twelve-year disposition; Taggart discussed the plea with Petitioner; and Jones decided to reject

15  the offer. (*See id.* at 3-5.)

16      Jones also claims counsel was "overly optimistic" in suggesting that his chances at trial

17  were "50-50."  (Third Am. Pet. Ex. A at 1.)  "Counsel cannot be required to accurately predict

18  what the jury or court might find, but he can be required to give the defendant the tools he needs

19  to make an intelligent decision."  *Turner*, 281 F.3d at 881.  Here, defense counsel correctly

20  informed Jones that he faced twenty-four years in prison if convicted on all charges alleged in

21  the September 11, 2000, information.  Although Petitioner claims defense counsel suggested his

22  sentence would likely be lighter than twenty-four years, Taggart warned Jones that victory at

23  trial was not assured.  (Third Am. Pet. Ex. A at 1.)  Petitioner was given sufficient information to

24  allow him to make an intelligent decision. Because there was no "gross error on the part of

25

26      [5]Jones repeatedly states that under the amended information his maximum exposure was thirty-seven
    years.  (*See* Third Am. Pet. 8, 30.)  This is not accurate. Although Petitioner was actually sentenced to thirty-
27  seven years, his sentence consisted of the middle term on count one, one-third of the middle term on counts two
    through eight, and one-third of the firearm allegation for counts two through eight. (Lodgment No. 2, Rep.'s Tr.
28  vol. 3, 701-02.) Thus, Jones's total potential exposure under the amended information, if the upper-term sentences
    had been imposed, was much higher.

counsel," Jones cannot succeed on his ineffective assistance of counsel claim. *See McMann*, 397 U.S. at 772.

Petitioner's self-serving claim that if he had known his exposure would increase to thirty-seven years, he would have accepted the twelve-year plea offer, is not sufficient to establish that his attorney rendered ineffective assistance. *Turner*, 281 F.3d at 881 (citing *United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998)).

> If the rule were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the offer.

*Id.*

### b. Petitioner Cannot Establish Prejudice

Additionally, Jones cannot establish prejudice. A habeas petitioner must show some objective evidence other than his assertions to establish that he suffered prejudice. *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 379-80 (2d Cir. 1998)).

Jones consistently indicated he wanted to go to trial. In his sworn Declaration in support of his Third Amended Petition, Jones claims he told Taggart that he was innocent of the charges; he did not know his codefendant; and he had witnesses that would testify in support of his alibi. (Third Am. Pet. Ex. A at 1.) These statements undermine Petitioner's claim that he wanted to plead guilty. During the hearing on his motion for a new trial, Jones testified at length about the investigation he wanted Taggart to do and the independent research he was doing in the jail's law library regarding possible pretrial motions and the admissibility of evidence. (*See* Lodgment No. 2, Rep.'s Tr. vol. 3, 677-680.) At no time during his testimony did Jones indicate that he had wanted to plead guilty rather than proceed to trial. Petitioner cannot show, by objective evidence, that he would not have rejected the plea offer if he had known the amended information would subsequently be filed. This claim is **DENIED**.

### 2. Counsel's Failure to Give a Ten Year Counter Offer

Jones claims the trial judge erroneously indicated that the amended information reduced rather than increased Petitioner's maximum exposure, and this misstatement was a factor in his

03cv1463 J (RBB)

decision to reject the plea offer.  (Third Am. Pet. 8, 30, Ex. A at 1.)  Jones made this claim in his state habeas petition, complaining that he rejected the plea offer based upon incorrect information given to him by the court.  (Lodgment No. 4, Pet. for Habeas Corpus at 12, *In re Jones*, No. D039422.)  In its consolidated opinion on his petition and appeal, the California Court of Appeal concluded that Petitioner rejected the plea offer before an amended information was filed which increased his potential sentence to over thirty-seven years.  (Lodgment No. 5, *Jones*, No. D038250, slip op. at 30.)  Nevertheless, the trial court did give Jones inaccurate information. After the amended information was filed, the trial judge incorrectly indicated the amended information changed Jones's maximum exposure "very insignificantly" by reducing the exposure by two months.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 6.)  The court failed to include the new firearm-use allegations in its calculation, which increased Jones's exposure to over thirty-seven years. (*See* Lodgment No. 1, Clerk's Tr. vol. 1, 24-28; *see also* Lodgment No. 5, *Jones,* No. D038250, slip op. at 30.)

The trial court misadvised Petitioner that his sentence under the amended information appeared to be the same as under the original information.  Still, the filing of the amended information and the lower court's statement *followed* Jones's rejection of the twelve-year offer. (Lodgment No. 5, *Jones*, No. D038250, slip. op. at 30; *see also* Lodgment No. 2, Rep.'s Tr. vol. 1, 6.)  Thus, neither the trial judge's statements nor counsel's failure to correct them could have had an effect on Petitioner's decision to reject the plea.  Petitioner's case does not constitute "misadvice by [a] trial judge regarding [the] plea bargain [that] was prejudicial enough to grant the defendant [the] opportunity to retender [a] guilty plea." *United States v. Day*, 969 F.2d at 44 n.7 (citing *State v. Kraus*, 397 N.W.2d 671, 675-76 (Iowa 1986)).

The state court's decision was not an unreasonable determination of the facts, and it was neither contrary to, nor an unreasonable application of, clearly established law.

### 3.  Trial Court's Incorrect Sentence Calculation

Finally, Jones alleges that he "instructed counsel to make a ten year counter offer, which counsel failed to do." (Third Am. Pet. 8; Third Am. Pet. Ex. A at 1.)  This ground for relief was not expressly addressed by the state courts.  Consequently, the Court will review the contention

*de novo. Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002.)  In deciding whether Jones's claim entitles him to habeas relief, the Court is confined to the record as it exists.  *See id.*

If Petitioner were entitled to relief, this Court would hold an evidentiary hearing to determine its merits.  AEDPA limits a federal habeas court's ability to hold evidentiary hearings.  *See* 18 U.S.C. 2254(e)(2).  If Petitioner has failed to develop the factual basis of his claim in state court, this Court shall not hold an evidentiary hearing on the claim unless the applicant demonstrates that his claim relies on (1) a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  *Id.*

The factual predicate of this claim was known at the time of the hearing on Jones's motion for a new trial in June 2001.  Petitioner's argument that a better plea bargain could have been obtained by his attorney is without any evidentiary support.  Petitioner has simply failed to raise this claim.  Further, the facts underlying the claim of failure to counter the plea agreement is not sufficient to establish (by any level of evidence) that but for the error, no reasonable factfinder would have found Petitioner guilty.   Therefore, an evidentiary hearing for this claim is not warranted.

Even assuming that the failure to make Petitioner's offer constituted deficient performance under *Strickland*, Jones cannot demonstrate prejudice.  There is nothing in the record to establish that the trial judge, who suggested Petitioner "plea to the sheet" for a twelve-year sentence, was willing to negotiate a deal or that the prosecutor would agree to it. (Lodgment No. 2, Rep.'s Tr. vol. 1, 3-5.)  Jones's claim rests on speculation, and he fails to establish a "reasonable probability that the outcome would have been different." *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) (finding no prejudice under Strickland for counsel's failure to negotiate a plea because there was no showing that the prosecutor was willing to enter plea negotiations or that any suggested plea would have been acceptable to the

1   court).  This claim, like the others contained in ground two of Jones's Third Amended Petition,

2   is **DENIED**.

3   **II.  Insufficient Evidence**

4          Grounds three and four in Jones's Petition allege there was insufficient evidence to

5   support his convictions for the attempted robbery of Bazaldua, Kueber and Williams, and

6   insufficient evidence to impose the firearm-use enhancement. (Third Am. Pet. 9- 10, 37-47.)

7   Petitioner raised these claims in the California Court of Appeal, and that court rejected them in

8   an unpublished opinion.  (*See* Lodgment No. 5, Jones, No. D038250, slip op. at 16-20.)  Jones

9   then raised the claims in his second habeas petition to the California Supreme Court, which

10  denied the petition with a citation to *In re Swain*, 34 Cal. 2d 304, 209 P.2d 793, 796 (1949);

11  *People v. Duvall*, 9 Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr. 2d 259, 265 (1995); *In*

12  *re Waltreus*, 62 Cal. 2d 218, 397 P.2d 1001, 42 Cal. Rptr. 9 (1965); and *In re Dixon*, 41 Cal. 2d

13  756, 264 P.2d 513 (1953).  (Lodgment No. 11, Jones, No. S117839, slip op. at 1.)

14         Respondent argues these claims must be denied as procedurally defaulted. (Resp't's

15  Mem. of P. & A. 13.)  In the alternative, she asserts that Jones's claims fail on the merits. (*Id*. at

16  14-15.)

17         **A.  Procedural Bar**

18         Under the procedural bar doctrine, a federal court "'will not review a question of federal

19  law decided by a state court if the decision of that court rests on a state law ground that is

20  independent of the federal question and adequate to support the judgment.'" *Calderon v. U.S.*

21  *Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (*quoting Coleman v. Thompson*, 501 U.S.

22  722, 729 (1991)); *see also Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2003); *LaCrosse v. Kernan*,

23  244 F.3d 702, 704 (9th Cir. 2001); *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000).

24  Federal habeas review of that claim is precluded unless the petitioner "can demonstrate cause for

25  the default and prejudice as a result of the alleged violation of federal law, or demonstrate that

26  failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501

27  U.S. at 750; *see also High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005) (citing *Coleman*, 501

28  U.S. at 750); *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 1992).

1   A state procedural rule is "adequate" when the rule is "firmly established and regularly

2   followed" at the time of the purported default. *Anderson v. Calderon*, 232 F.3d 1053, 1077 (9th

3   Cir. 2000) (citations and quotations omitted) *overruled on other grounds* by *Bittaker v.*

4   *Woodford*, 331 F.3d 715, 728 (9th Cir. 2003); *see also Bennett*, 322 F.3d at 583 (citing *Poland v.*

5   *Stewart*, 169 F.3d 573, 577 (9th Cir. 1999)). The state procedural rule must also be clear,

6   consistently applied and well-established at the time of petitioner's default. *Wells v. Maass*, 28

7   F.3d 1005, 1010 (9th Cir. 1994) (citations omitted).

8       "For a state procedural rule to be 'independent,' the state law basis for the decision must

9   not be interwoven with federal law." *LaCrosse v. Kernan*, 244 F.3d 702, 704 (citing *Michigan v.*

10  *Long*, 463 U.S. 1032, 1040-41 (1989)); *see also* Park, 202 F.3d at 1152. "A state law ground is

11  so interwoven if the state has made application of the procedural bar depend on an antecedent

12  ruling on federal law [such as] the determination of whether federal constitutional error has been

13  committed." *Bennett*, 322 F.3d at 581 (quoting *Park* v. *California*, 202 F.3d 1146, 1152 (9th Cir.

14  2000); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

15      The respondent has the burden of pleading an adequate and independent procedural bar as

16  an affirmative defense. *See Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).  The burden

17  of proof then shifts to the petitioner to place that defense in issue, for example, by asserting

18  factual allegations demonstrating the inadequacy of the state procedure, including citations to

19  case authority that demonstrate inconsistent application of the state rule. *Id.* at 586.  If the

20  factual allegations are made, the burden shifts back to the respondent to demonstrate the bar is

21  applicable. *Id.*

22      Here, Respondent asserted the procedural bar as an affirmative defense to Jones's claims

23  of insufficient evidence.  (Answer to Third Am. Pet. at 2; Resp't's Mem. of P&A at 13.)

24  Respondent argues that Petitioner's claims are procedurally defaulted because he failed to

25  present them to the California Supreme Court in a petition for review of the court of appeal's

26  decision.  (Resp't's Mem. of P. & A. 13.)  Instead, Petitioner raised them in a state habeas

27  petition.  (*Id.*)  The California Supreme Court's citation to *Waltreus,* argues Respondent,

28

1    indicates Petitioner defaulted these claims in state court, and is an independent and adequate

2    state law ground barring relief.  (*Id.*)

3          *In Waltreus*, the California Supreme Court stated that "habeas corpus ordinarily cannot

4    serve as a second appeal."  *Waltreus*, 62 Cal. 2d at 225, 397 P.2d at 1005, 42 Cal. Rptr. at 13

5    (citing *In re Winchester*, 53 Cal. 2d 528, 532 (1960)).  Since the decision, a *Waltreus* citation has

6    stood for the principle that "'any issue that was actually raised and rejected on appeal cannot be

7    renewed in a petition for a writ of habeas corpus.'" *Forrest v. Vasquez,* 75 F.3d 562, 563 (9th

8    Cir. 1996) (citation omitted).

9          In *Ylst v. Nunnemaker*, 501 U.S. 797, (U.S. 1991), the United States Supreme Court held

10   that an *In re Waltreus* citation is neither a ruling on the merits nor a denial on procedural

11   grounds and, therefore, has no bearing on a California prisoner's ability to raise a federal

12   constitutional claim in federal court.  *Id.* at 805, *cited in Hill v. Roe*, 321 F.3d 787, 789 (9th Cir.

13   2003).  Thus, Respondent's argument ignores Supreme Court and Ninth Circuit authority which

14   has specifically found that the *Waltreus* rule is not sufficient to bar federal habeas relief.  *Y1st v.

15   Nunnemaker*, 501 U.S. at 115; *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2003) (stating "[t]he

16   California Supreme Court's reliance on *In re Waltreus* does not ... bar federal court review");

17   *LaCrosse*, 244 F.3d at 705 n.11 (stating that "[i]nvocation of the *Waltreus* rule by a state court ...

18   does not bar federal review"); *Bean*, 96 F.3d at 1131; *Forres*t, 75 F.3d at 564 (citing *Ylst v.

19   Nunnemaker*, 501 U.S. 797, 805 (1991)) (stating "a *Waltreus* denial on state habeas has no

20   bearing on [a petitioner's] ability to raise a claim in federal court").  Thus, *Waltreus* does not

21   constitute a bar to federal habeas review.

22         Thus, because *Waltreus* does not preclude federal review of a claim and Respondent did

23   not argue that the other cited cases indicated a procedural default, there is no procedural bar to

24   federal review of Jones's sufficiency of the evidence claims.  (*See Vang v. Nevada*, 329 F.3d

25   1069, 1073 (9th Cir. 2003) (stating, "[g]enerally, the state must assert the procedural default as a

26   defense to the petition before the district court; otherwise the defense is waived.").

27

28

03cv1463 J (RBB)

### B. The Merits of Jones's Insufficient Evidence Claims

Jones argues that his due process rights were violated because there was insufficient evidence to convict him of the attempted robbery of Shannon Williams, Robert Kueber, and Ramon Bazaldua, and that there was insufficient evidence to find the firearm-use allegations true. (Third Am. Pet. 9-10, 37-47.)  Because there is no reasoned decision from the California Supreme Court concerning either of Jones's sufficiency of the evidence claims, this Court must "look through" that court's summary opinion to the reasoned opinion of the California Court of Appeal. *Ylst*, 501 U.S. at 801- 06.

First, this Court must determine whether the state court identified the correct constitutional standard established by the Supreme Court.  *See* 18 U.S.C. 2254(d)(1).  The Due Process Clause protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  When challenging a conviction for insufficiency of the evidence, the constitutional standard established by the Supreme Court in *Jackson v. Virginia* is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), *quoted in Smith v. Mitchell*, 437 F.3d 884, 889 (9th Cir. 2006).

The state court explained the standard it applied to Petitioner's case as follows:

> On an appeal contending there is insufficient evidence to support a verdict, we review the evidence in the light most favorable to the judgment and, in so doing, determine whether there is substantial evidence such that a rational trier of fact could find the elements of the crime beyond a reasonable doubt.

(Lodgment No. 5, Jones, No. D038250, slip op. at 17.)  This standard is consistent with the standard established in *Jackson*.  *See Jackson*, 443 U.S. at 324. Therefore, the state appellate court correctly identified the governing law set forth by the Supreme Court.

Next, this Court must determine whether the California Court of Appeal's holding that the evidence was sufficient to convict Jones was an unreasonable application of *Jackson*..  *See* 28 U.S.C. § 2254(d); *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005)).  "[T]he *Jackson*

03cv1463 J (RBB)

1    inquiry does not focus on whether the trier of fact made the correct guilt or innocence

2    determination, but rather whether it made a rational decision to convict or acquit." *Herrera v.*

3    *Collins*, 506 U.S. 390, 402 (1993).

4                            **1. Attempted Robbery Convictions**

5            In his third ground for relief, Jones contends that there was insufficient evidence to

6    convict him of attempting to rob Bazaldua, Kueber, and Williams.  (Third Am. Pet. 9.)  He

7    contends that these individuals, all Symbolic Motors employees, were never asked if they had

8    access to the business's safe.  (*Id.* at 38- 39.) Petitioner concedes that the evidence shows an

9    intent to rob Hughes, Phillips, and French, because these three individuals were asked about the

10   location of the safe, and Hughes was forced to use his keys to try to access the safe.  (*Id.* at 37.)

11   Jones claims, however, that there is no evidence the robbers tried to access the safe through

12   Bazaldua, Kueber, or Williams. (*Id.* at 38-39.)  Petitioner argues the evidence was only sufficient

13   to prove an intent to rob Symbolic Motors but not sufficient to prove an intent to rob the

14   individual victims. (*Id.* at 38.)

15           In his Objections, Petitioner argues he had no knowledge of Williams' or Keuber's

16   presence in the dealership or of his co-defendant's dealings with them.  (Pet'r Obj. to R&R at

17   34.)  Petitioner contends he had no knowledge or intent to rob Williams or Keuber.  (*Id.*)  Thus,

18   Petitioner argues, he cannot be liable for a specific intent crime under California's accomplice

19   law.  (*See id.*)

20           To determine whether the state court's application of *Jackson* was unreasonable, the

21   Court must look to the state's substantive elements of the crime necessary to support a

22   conviction.  *Jackson*, 443 U.S. at 324 n.16; *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir.

23   2003).  Under California law, robbery is the "taking of personal property in the possession of

24   another, from his person or immediate presence, and against his will, accomplished by means of

25   force or fear."  Cal. Penal Code § 211 (West 1999). An attempted robbery occurs when there is

26   "specific intent to commit the crime, and a direct but ineffectual act done toward its

27   commission." Cal. Penal Code. § 21a (West 1999).

28

"California follows the long-standing rule that the employees of a business constructively possess the business owner's property during a robbery." *People v. Jones*, 82 Cal. App. 4th 485, 490 (Ct. App. 2000). "Robbery is an offense against the person; thus a store employee may be the victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property." *People v. Johnson*, 38 Cal. App. 3d 1, 9 (Ct. App. 1974) (citation omitted).

California courts have held that store employees may be victims of a robbery even if they did not have specific responsibility for handling the business's money. *See*, e.g., *People v. Gilbeaux*, 111 Cal. App. 4th 515, 521-23 (Ct. App. 2003) (discussing the robbery of janitors who had no responsibility for handling cash but were among the workers in charge of the premises when the robbery took place); *Jones*, 82 Cal. App. 4th at 491-92 (affirming conviction for attempted robbery of employees who were "subjected to force or fear during appellant's attempt to steal their employer's property" even though none had the business's money in their immediate control or possession). Under California law, employees Bazaldua, Kueber, and Williams could be victims of attempted robbery when Jones attempted to steal money from Symbolic Motors, regardless of whether these employees had access to the business's safe.

Petitioner seems to argue that because neither he nor Penton specifically asked Bazaldua, Kueber, or Williams where the money was, if they could open the safe (as done with Phillips and Hughes), or demand they turn over any personal property (as done with French), there could be no attempted robbery of these individuals. (Third Am. Pet. at 9.) Petitioner also contends that he cannot share the specific intent of his co-defendant if he was unaware of the presence of Williams and Keuber in the store, or his co-defendant interactions with them. (Pet'r Obj. to R&R at 34.) This construes the facts too narrowly.

First, Penton held a gun to Bazaldua and asked "Are you the big guy" – presumably to determine if he was an owner or manager who would have access to the safe. (Lodgment No. 2, Rep.'s Tr. vol. 1, 156.) Jones tied Bazaldua's hands with duct tape. (*Id.* at 158.) As the car detailer, Bazaldua did not have access to the safe, but Petitioner used force to secure Bazaldua

1  until someone with access to the safe arrived. This evidence is sufficient to convict Jones of

2  attempted robbery of Bazaldua.  *See Gilbeaux*, 111 Cal. App. 4th at 521-23.

3        Next, although Williams (an employee) only saw Jones for a few seconds, and Kueber

4  (another employee) never saw Jones, Petitioner is liable for Penton's acts under California's

5  accomplice law.  "All persons concerned in the commission of a crime ... whether they directly

6  commit the act constituting the offense, or aid and abet in its commission ... are principals in any

7  crime so committed." Cal. Penal Code § 31 (West 1999).  A person aids and abets the

8  commission of a crime when he (1) has knowledge of the unlawful purpose of the perpetrator,

9  (2) has the intent or purpose of committing, facilitating, or encouraging commission of the

10  crime, and (3) aids, promotes, encourages, or instigates commission of the crime. *People v.*

11  *Cooper*, 53 Cal. 3d 1158, 1164 (Cal. 1991) (citation omitted).

12        Penton pointed a gun at Williams and forced her into an office. (Lodgment No. 2, Rep.'s

13  Tr. vol. 1, 43, 46-47.)  She then saw Jones come down the stairs with a gun.  (*Id.* at 50-51.)

14  Penton also displayed his gun to Kueber and demanded that he come to the office where Penton

15  was holding Williams.  (*Id.* at 130-32.)  He told Kueber not to try to run because they had two

16  children upstairs.  (*Id.* at 132.)  The children and Hughes were being detained by Jones. (*See*

17  Lodgment No. 2, Rep.'s Tr. vol. 2, 325- 29.)

18        Petitioner argues there was insufficient evidence to find that he aided and abetted an

19  attempt to rob Bazaldua, Williams, or Kueber. (Third Am. Pet. 41.)  He could not have shared

20  Penton's specific intent to detain and rob Williams and Kueber because he had no contact with

21  them, and did not know they were present. (Third Am. Pet. 42; Pet'r Obj. to R&R at 34.)  The

22  evidence, however, shows that Jones acted with the purpose of committing the robbery:

23  Petitioner bound Hughes and detained him and his daughters upstairs while Penton detained the

24  others downstairs, which aided and promoted the attempted robberies.  Jones knew that Penton

25  was holding employees in the office while they waited for someone to arrive who had access to

26  the safe. (*See* Lodgment No. 2, Rep.'s Tr. vol. 1, 156-59 (Bazaldua's testimony that Jones was in

27  the office where Bazaldua, Phillips, and French were bound on the floor).) This evidence is

28  sufficient to support Petitioner's convictions for attempted robbery of Bazaldua, Kueber, and

Williams.  *Cf. People v. Phan*, 14 Cal. App. 4th 1453, 1462-63 (Ct. App. 1993) (upholding

robbery conviction where defendant was present when his associate robbed the victim, even

though defendant did not actively encourage or assist the taking of property).

In light of the evidence presented at trial, a rational juror could have found beyond a

reasonable doubt that Jones attempted to rob Bazaldua, Kueber, and Williams. *See Jackson*, 443

U.S. at 324.  As a result, the state court's decision denying this claim did not

involve an unreasonable application of clearly established law.  Ground three in Jones's Third

Amended Petition is **DENIED**.

### 2.  Firearm Enhancements

In ground four, Jones argues there was insufficient evidence to support the firearm-use

allegations as to Bazaldua, Williams, and Kueber.  (Third Am. Pet. 10.) Petitioner contends that

because Bazaldua and Kueber never saw him with a gun, and Williams only saw him with a gun

as he ran down the stairs to the showroom, the gun-use allegations to these three individuals

were improper. (*Id.* at 44' Pet'r Obj. to R&R at 37.)

California Penal Code section 12022.53(b) provides that "any person who is convicted of

a felony specified in subdivision (a), and who in the commission of that felony personally used a

firearm, shall be punished by a term of imprisonment of 10 years in the state prison." Cal. Penal

Code § 12022.53(b) (West Supp. 2007).  Robbery is one of the felonies to which the

enhancement applies.  Cal. Penal Code § 12022.53(a)(4) (West Supp. 2007).

In denying Jones's claim, the state appellate court noted that under state law, "a gun may

be used 'in the commission' of a given crime even if the use is directed toward someone other

than the victim of the crime."  (Lodgment No. 5, *Jones*, No. D038250, slip

op. at 20 (citing *People v. Granado*, 49 Cal. App. 4th 317, 329-30 (1996)).)  When a gun is

employed "to neutralize the victim's companions, bystanders, or other persons who might

otherwise interfere with the successful completion of the crime[,]" the elements of section

12022.53(a) are met.  *Id.*

For the firearm enhancement to be imposed, the defendant must be found to have actually

used a firearm in committing the crime, as opposed to merely possessing a gun. *See Alvarado v.*

*Superior Court*, 146 Cal. App. 4th 993, 1000 (Ct. App. 2007) (distinguishing the firearm-use enhancement under § 12022.5(a) from the sentence enhancement under § 12022(a)(1) for being armed during commission of a felony).  In *People v. Granado*, the appellate court defined firearm use as "gun-related conduct coupled with facilitative intent[.]" *Granado*, 49 Cal. App. 4th at 329.  The test for distinguishing use of a firearm from mere possession of a firearm during the commission of a crime focuses on the actor's conduct: "[D]id the defendant take some action with the gun in furtherance of the commission of the crime?" *Id*. at 324 n.7 (emphasis added).

Further, the sentence enhancement is only appropriate where the defendant actively uses a gun to assist in the commission of the crime, as opposed to conduct that is "purely incidental to the crime."  *Id.* at 324 (discussing *People v. Hays*, 147 Cal. App. 3d 534 (Cal. Ct. App. 1983)).  The term "use" is broadly construed in the context of each case and in accordance with the statute's purpose of deterring gun use during the commission of crimes.  *Id.* at 322; *Alvarado*, 146 Cal. App. 4th at 1002. "[A] gun 'use' finding is precluded if the defendant's conduct with respect to the weapon is merely a passive or inadvertent exposure of the gun." *Alvarado*, 146 Cal. App. 4th at 1003 (citing *Granado*, 49 Cal. App. 4th at 324-35).

Williams testified at trial that Penton pointed a gun at her and forced her into an office where Bazaldua, Phillips, and French were bound and on the floor. (Lodgment No. 2, Rep.'s Tr. vol. 1, 46-48.)  After Penton left the room to run after Kueber, Petitioner came down the stairs holding a gun.  (*Id.* at 49-50.)  Jones ran past the office where Williams and the others were and out into the showroom.  (*Id.* at 50.)  Williams testified that Petitioner made eye contact with her, but she did not say that Jones made any threats or gestured with the gun in any way.  (*See id.* at 91.)  Her testimony simply stated that he went down the stairs quickly while holding a gun.

Bazaldua testified that Penton shoved a gun into his back and made him go into an office where Petitioner bound his hands, but he never saw Jones with a gun. (*See id.* at 156-59.) Kueber, who ran out of the showroom before the robbers could force him into the back office, never saw Petitioner at all. (*Id.* at 152.)

1    Jones argues that, at most, this evidence shows gun possession, but not gun use. (*See*

2   Third Am. Pet. 44; Pet'r Obj. to R&R at 37.)  However, his contention is contrary to Ninth

3   Circuit law:

> In a simultaneous robbery of multiple victims by multiple perpetrators, use of a firearm against at least one victim satisfies the personal use requirement such that a gun use finding attaches to every crime for which the defendant is responsible during the transaction, including crimes for which the defendant is only vicariously liable.

7   *Ballard v. Estelle*, 937 F.2d 453, 457-58 (9th Cir. 1991) (citing *People v. Walker*, 47 Cal. 3d

8   605, 635 (Cal. 1988)).  Thus, Jones's sentence can be enhanced based on personal gun use for

9   each victim of a multiple-victim robbery, even if Jones did not use a gun against each individual

10   robbery victim.

11    In *Ballard*, the habeas petitioner challenged the imposition of California's gun-use

12   enhancement because "even if the personal use finding [could] be sustained in one or two [of the

13   eighteen robbery] counts, there was insufficient evidence of personal use in

14   every other count." *Id.* at 457.  This is the same claim Jones is making here.  (*See* Third Am. Pet.

15   10; Pet'r Obj. to R&R at 37-42.)  The Ninth Circuit affirmed the district court's denial of

16   Ballard's petition because there was evidence that he personally used a gun against some of the

17   robbery victims:

> It would be inconsistent with [*People v.*]*Walker* and with the nature of robberies involving multiple perpetrators and victims, to say a gun use finding as to Mr. Ballard applies only against those victims who challenged him and thereby elicited his menacing behavior.  He personally used his gun in the course of simultaneously robbing multiple victims, and a threat to one victim was a threat to all.  His personal gun use during the course of the robberies was inextricably related to the robbery of each victim and cannot be separated from any of the robbery counts, including those in which his codefendants were the principal actors.

*Ballard*, 937 F.2d at 459.

24    Here, evidence indicates that Petitioner used his gun to control French, Phillips, and

25   Hughes.  (Lodgment No. 2, Rep.'s Tr. vol. 1, 111; Lodgment No. 2, Rep.'s Tr. vol. 3, 325, 327.)

26   This testimonial evidence is sufficient to support the imposition of the gun-use enhancement for

27   all six victims, not just the three who testified that Jones pointed the gun at them.

1    Given the California courts' interpretation of section 12022.53, a rational juror could have

2    found the gun enhancement allegations for victims Bazaldua, Kueber, and Williams to be true

3    beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 324.  Thus, the appellate court's decision

4    was neither contrary to, nor an unreasonable application of, clearly established federal law.

5    Accordingly, ground four is **DENIED**.

6    **III.  Claims Five - Eight are Procedurally Barred**

7    Petitioner's Third Amended Petition included new claims that were not presented in his

8    earlier federal petitions.  (*See* Third Am. Pet. 11-14; *see also* Order Rejecting R & R 12.)  These

9    new claims are (1) ineffective assistance of trial counsel for failure to seek to suppress evidence

10   of a separate crime (ground five); (2) a due process violation for introduction of irrelevant

11   evidence of a separate crime (ground six); and (3) a due process violation for the trial court's

12   refusal to give a jury instruction limiting the jury's use of evidence of the separate crime

13   (grounds seven and eight).[6] (Third Am. Pet. 11-14.) Respondent alleges these newly added

14   claims are procedurally barred because they were denied by the state court on adequate and

15   independent state law grounds.  (Resp't's Mem. of P. & A. at 16.)

16   These claims were presented to the California Supreme Court in Jones's fourth petition

17   for a writ of habeas corpus. (Supp. Lodgment No. 1, Pet. at 4-7, *Jones*, No. S135905.)  The court

18   denied the petition with a citation to *In re Robbins*, 18 Cal. 4th 770,

19   780 (Cal. 1998); *In re Clark*, 5 Cal. 4th 750 (Cal. 1993); *In re Swain*, 34 Cal. 2d 300, (Cal.

20   1949); *People v. Duvall*, 9 Cal. 4th 464 (Cal. 1995); and *In re Dixon*, 41 Cal. 2d 756, (Cal.

21   1953). (Supp. Lodgment No. 2, *In re Jones*, No. S135905, slip op. at 1.)

22   A federal habeas court is barred from reviewing a federal claim that was decided by a

23   state court if the state court's decision rested on adequate and independent state law grounds.

24   *Bennett v. Mueller*, 322 F.3d at 580 (citing *Coleman*, 501 U.S. at 729; *LaCrosse*, 244 F.3d at

25   704).  "In order to constitute adequate and independent grounds sufficient to support a finding of

26   

27   [6]Although Jones's Third Amended Petition added four new grounds for relief (grounds five, six, seven, and eight), grounds seven and eight are duplicative. Both claims allege that Petitioner's due process rights were violated when the trial court failed to give a jury instruction limiting the purposes for which evidence of the

28   separate conviction could be introduced.  (*See* Third Am. Pet. 13-14.)  The Court construes these two grounds for relief as a single claim.

03cv1463 J (RBB)

procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells*, 28 F.3d at 1010.

An ambiguous opinion from a state court that invokes multiple procedural bars and does not specify which rule applies to which claim will not bar federal habeas review unless each procedural bar is adequate and independent. *See Washington*, 208 F.3d at 834. Thus, because the state court did not identify which rule was used to deny each

claim, Petitioner's claims will only be procedurally barred if all of the procedural bars cited by the California Supreme Court are adequate to support the judgment and independent of federal law.[7] *See id.*

### A. Independence of the State Procedural Bar Rules

#### 1. The Robbins/Clark Timeliness Bar

The state court denied Jones's fourth habeas petition by invoking the timeliness bar of *Robbins* and *Clark*. (Supp. Lodgment No. 2, *Jones*, No. S135905, slip op. at 1); *see Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (stating that a citation to page 780 of *Robbins* is a clear indication the state court applied the timeliness rule to bar review); *King v. Lamarque*, 464 F.3d 963, 966 (9th Cir. 2006) (discussing California's timeliness bar); *Bennett*, 322 F.3d at 579 (same). This rule bars habeas petitions that were filed after "substantial delay" without significant justification. *King*, 464 F.3d at 966.

The Ninth Circuit has held that the timeliness bar of *Clark* and *Robbins* is not interwoven with federal law, and thus it is an independent state procedural ground. *Bennett*, 322 F.3d at 581.

#### 2. The Dixon Bar

The California Court of Appeal also denied Jones's habeas petition with a citation to *In re Dixon*. (Supp. Lodgment No. 2, *Jones*, No. S135905, slip op. at 1). *Dixon* stands for the proposition that "a convicted defendant desiring to bring claims in a state habeas petition must, if possible, have pursued the claims on direct appeal from his conviction." *Park v. California*, 202

---

[7]The Court notes that Petitioner's fifth claim cannot be barred by *Dixon* because the Dixon rule is never applied to claims of ineffective assistance of counsel. *In re Robbins*, 18 Cal. 4th at 814 n.34 .

1  F.3d 1146, 1151 (9th Cir. 2000), *see also Washington v. Cambra*, 208 F.3d 832, 833-34 (9th Cir.

2  2000.)

3         Prior to the California Supreme Court's 1998 decision in *In re Robbins*, a state's

4  invocation of the Dixon bar was necessarily interwoven with federal law because it required a

5  state court to determine if there was fundamental constitutional error that would excuse the

6  petitioner's default. *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1007 (S.D. Cal. 2004) (citing

7  *Park*, 202 F.3d at 1152). *In Robbins*, the California Supreme Court made it clear that in future

8  cases, California courts would find claims to be procedurally defaulted under *Dixon* based solely

9  on state law grounds. *Id.* at 1007-08; *cf. Bennett*, 322 F.3d at 581-82. Accordingly, the Dixon

10  bar now rests on state law grounds that are independent of federal law. *Protsman,* 318 F. Supp.

11  2d at 1008.

12                    **3. The Swain/Duvall Bar**

13         Additionally, the court of appeal denied Jones's petition with a citation to *Swain* and

14  *Duvall*. (Supp. Lodgment No. 2, *Jones*, No. S135905, slip op. at 1.) "The *Swain* rule is

15  commonly referred to as the 'untimeliness' bar[]" and requires the petitioner to explain

16  the delay in making a collateral attack. *Washington v. Cambra*, 208 F.3d at 833. The Ninth

17  Circuit also has interpreted a citation to *Swain* and *Duvall* to mean that the petitioner failed to

18  "allege with sufficient particularity the facts warranting habeas relief[.]" *King v. Roe*, 340 F.3d

19  821, 823 (9th Cir. 2003); *see Duvall*, 9 Cal. 4th at 474. A state habeas petitioner whose claims

20  are denied with a citation to *Duvall* and *Swain* is given leave to amend his petition to comply

21  with the specificity requirement. *King v. Roe*, 340 F.3d at 823. A denial under *Swain* and *Duvall*

22  is, "in effect, a grant of a demurrer with leave to refile." *Gaston v. Palmer (Gaston I)*, 417 F.3d

23  1030, 1039 (9th Cir. 2005), *amended on other grounds*, 447 F.3d 1165 (9th Cir. 2006). Thus, a

24  citation to *Swain* and *Duvall* is a denial on procedural grounds that is independent of the federal

25  constitutional issue. *See also in re Robbins*, 18 Cal. 4th 770, 814 n.34 ( Cal. 1998) (discussing

26  "the bar of untimeliness").

27

28

**B. Adequacy of the State Procedural Rules**

To properly invoke the adequate and independent grounds doctrine, the respondent must plead procedural default as an affirmative defense. *Bennett*, 322 F.3d at 585. The burden then shifts to the petitioner to show that the rule is inadequate to support the state court's opinion because the rule is ambiguous or inconsistently applied. *Id.* at 586. This may be done by pointing to factual allegations and case authority demonstrating inconsistent application of the rule. *Id.* But where the Ninth Circuit has previously found that a state procedural rule is not consistently applied, and is thus inadequate, the federal habeas petitioner can meet his burden simply by challenging the adequacy of the procedural rule. *King v. Lamarque*, 464 F.3d at 967-68. The burden then shifts back to the respondent, who bears the ultimate burden of establishing adequacy. *Id.*

Respondent appropriately pled procedural default as an affirmative defense. (Resp't's Mem. of P. & A. 15-17.) To satisfy his burden of placing the state procedural rules in issue, Jones makes a blanket assertion that "there is no procedural[] bar to federal review" of his claims. (Traverse 8.) But under *Bennett*, Petitioner must show that the state rules are inadequate to bar federal review because they are ambiguous or not consistently applied.

To challenge the adequacy of the procedural bars, Jones's burden is "quite modest: at most, Petitioner need only assert allegations; he does not need to prove anything." *Dennis v. Brown*, 361 F. Supp. 2d 1124, 1130 (N.D. Cal. 2005) (citing *Bennett*, 322 F.3d at 585-86). In *King v. Marquette*, 464 F.3d at 967, the Ninth Circuit explored a petitioner's burden when challenging the adequacy of a state procedural bar: "Is simply contesting the adequacy of a state rule sufficient to meet the petitioner's burden under *Bennett* if we have previously found the rule to be too ambiguous to bar federal review during the applicable time period? We hold it is." Yet, Jones has failed to meet even this burden.

Petitioner has not pointed to any factual allegations or cited any authority that would show that any of the procedural rules have not been consistently applied. (*See* Traverse 8; *see* Pet'r's Obj. to R&R at 43.) Jones did not identify any specific rule as inadequate to support the

state court's judgment.  (*See* Traverse 8; *see* Pet'r's Obj. to R&R at 43.)  Because Petitioner has failed to meet his burden to contest the California procedural bars, the Court **SHOULD FIND** that the state rules are independent and adequate grounds to preclude federal review.  *See Protsman v. Pliler*, 318 F. Supp. 2d at 1014 (making a finding of procedural default where the petitioner failed to challenge adequacy of state procedural rules).

Nevertheless, Jones argues that the California Supreme Court's decision denying his state habeas petition was ambiguous, which permits a review on the merits.  (Traverse 8 (citing *Valerio v. Crawford*, 306 F.3d at 774-75); Pet'r's Obj. to R&R at 43.)  A court may review a claim on its merits when an ambiguous order cites multiple procedural rules for denying review and only some of those (not all)  rules preclude federal review.  *Calderon*, 96 F.3d at 1131.  However, the procedural bar does apply if all the procedural rules are adequate and independent state law grounds for denying relief.  *Id.*

### 3. Cause and Prejudice

For the Court to review the merits of Jones's barred claims, he must demonstrate cause and prejudice for the default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Petitioner has not demonstrated cause for his default or prejudice resulting from it. He points to no facts that made him unable to comply with California's procedural rules. (*See* Traverse 8.)  Jones also makes no attempt to show that a fundamental miscarriage of justice will occur if the federal court does not review his defaulted claims.  Accordingly, the Court need not consider grounds five through eight of the Third Amended Petition on the merits, and **SHOULD FIND** them procedurally barred.

### D.  Claims Five Through Eight Are Barred by the Statute of Limitations

Respondent asserts that Jones's fifth, sixth, seventh and eighth claims should be dismissed because they were filed after the expiration of the statute of limitations. (Resp't's

Mem. of P. & A. 18.)  The statute of limitations for habeas corpus petitions is set forth in

AEDPA.  As amended by AEDPA, 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C.A. § 2244(d)(1) (West 2006). Petitioner has not asserted that subsections (B)-(D) of § 2244(d)(1) apply to his case, so § 2244(d)(1)(A) provides the applicable date on which the limitations period began to run.

The California Supreme Court denied Jones's petition for review on January 15, 2003.

(Lodgment No. 7, *Jones*, No. S111271, slip op. at 1.)  The state court's judgment became final

on April 15, 2003, when Petitioner's ninety-day period in which to file a

petition for certiorari to the United States Supreme Court expired.  *See Bowen v. Roe*, 188 F.3d

1157, 1158-59 (9th Cir. 1999).  Under § 2244(d)(1), the statute of limitations on Jones's federal

petition began to run the next day, April 16, 2003.  *See Patterson v. Stewart*, 251 F.3d 1243,

1245-46 (9th Cir. 2001) (explaining the application of Federal Rule of Civil Procedure 6(a) to

the calculation of the limitations period under AEDPA).  Absent statutory tolling under §

2244(d)(2) or equitable tolling, April 15, 2004, was the last day on which Petitioner could file a

timely federal habeas petition. *Id.*

Jones filed his first federal habeas petition on July 21, 2003, within the applicable statute

of limitations. The petition, however, was stayed from September 4, 2003, through August 2,

2004, to allow Jones to return to state court to assert previously unexhausted claims.  [Doc. Nos.

8, 15, 20.]  On August 20, 2004, this Court ordered the Respondent to address the merits of

Jones's Petition.  [Doc. No. 28.]  On May 2, 2005, Jones renewed his request for a stay and

abeyance [doc. no. 35], which was ultimately granted through September 27, 2006 [doc. no. 50].

Petitioner filed his Third Amended Petition asserting grounds five through eight on June 15, 2006, over two years after the limitations period expired for federal habeas review.  In the absence of tolling, these newly asserted claims are barred by the statute of limitations unless they relate back to the filing of the Petition.

### 1. Statutory Tolling

Under AEDPA, the statute of limitations is tolled during periods when a petitioner has a properly filed application for collateral review pending in state court. Specifically, 28 U.S.C. § 2244(d)(2) states:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d)(2) (West 2006).

In addition, the interval between the disposition of one state petition and the filing of another may be tolled under "interval tolling." *Carey v. Saffold*, 536 U.S. 214, 223 (2002). "[T]he AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999)); *see also Carey*, 536 U.S. at 219-22.  An application for state collateral review is pending "as long as the ordinary state collateral review process is 'in continuance'– i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey*, 536 U.S. at 219-20.

A state habeas petition must be "properly filed" to toll the statute of limitations. 28 U.S.C. § 2244(d)(2). "'Properly filed' means the petition's 'delivery and acceptance are in compliance with the applicable laws and rules governing filings' in that state." *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005), amended, 439 F.3d 993 (9th Cir.), *cert. denied*, 127 S.Ct. 132 (2006) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)).  A petition that is dismissed by the state court as untimely is not "properly filed" under AEDPA, and accordingly, it will not toll the statute of limitations.  *Id.* at 1149; *see Evans v. Chavis*, 546 U.S. 189, 198 (2006).

1    The California Supreme Court denied Jones's petition for review of his direct appeal on

2   January 15, 2003.  (Lodgment No. 7, *Jones*, No. S111271, slip op. at 1.)  On April 10, 2003,

3   before the judgment became final, Petitioner filed his first state habeas petition with the

4   California Supreme Court raising five claims: (1) ineffective assistance for failure to investigate;

5   (2) ineffective assistance for incorrect advice during plea negotiations; (3) insufficient evidence

6   for three counts of attempted robbery; (4) insufficient evidence of firearm use; and (5)

7   ineffective assistance for failure to impeach a critical witness.  (Lodgment No. 8, Pet. at 3-7,

8   *Jones*, No. S114976.)  Jones then requested that the petition be withdrawn because it contained

9   grounds "already exhausted" in state court.  (Lodgment No. 9, *Jones*, No. S114976, slip op.

10  attach.)

11    On July 31, 2003, six days after the petition was withdrawn, Jones filed a second petition

12  in the California Supreme Court raising three claims: (1) ineffective assistance for failure to

13  impeach a critical witness; (2) insufficient evidence of attempted robbery; and (3) insufficient

14  evidence of firearm use.  (Lodgment No. 10, Pet. at 3-5, *Jones*, No. S117839.)  The petition was

15  denied on April 14, 2004.  (Lodgment No. 11, *Jones*, No. S117839, slip op. at 1.)

16    Over one year later, on May 9, 2005, and after the one-year statute of limitations expired,

17  Petitioner filed a third state habeas petition, alleging entirely new claims: (1) ineffective

18  assistance for failure to move to suppress other crime evidence; (2) violation of due process for

19  the trial court's failure to give a limiting instruction; (3) due process violation by introduction of

20  irrelevant evidence; and (4) ineffective assistance of appellate counsel.[8]  (Pet'r's Response to

21  Opp'n to Mot. to Amend [doc. no.39] Ex. A 3-6.) Jones requested that this Court hold his federal

22  petition in abeyance while he pursued his third state habeas petition raising these claims.  (*See*

23  Request for Stay [doc. no. 35]; Pet'r's Response to Opp'n to Mot. to Amend.)  Before the district

24  court ruled on Petitioner's Motion to Amend and Motion for Stay, Jones withdrew the state

25  petition.  *In re Jones*, No. S133747, docket, *available at* http://appellatecases.courtinfo.ca.gov

26  (search for case number "S133747", then follow "docket" hyperlink). Nine days later, on July

27

28 ─────────────────
        [8] Respondent's Answer does not address, or even mention, Jones's habeas petition in case number
   S133747, filed in the California Supreme Court on May 9,2005.  Respondent also failed to lodge with the Court a
   copy of this petition and the state court's disposition.

28, 2005, Petitioner filed a fourth state petition raising the same four claims. (Supp. Lodgment No. 1, Pet. at 4-7, *Jones*, No. S135905.)

AEDPA anticipates that a petitioner must pursue one full round of review in state court before presenting his claims in a federal habeas petition. *Welch v. Carey*, 350 F.3d 1079, 1082 (9th Cir. 2003) (citing *Carey*, 536 U.S. at 222). When a petitioner stops pursuing state review of his original claims, he has abandoned his first full round of review and any subsequent habeas petitions asserting different claims form a separate "application" for collateral review. *Id.* Here, Petitioner's third and fourth petitions raised entirely different claims from those raised in the first two petitions. His abandonment of the original claims and pursuit of separate claims constituted a second round of review. The time between the denial of his second habeas petition on April 14, 2004, and the filing of his third petition on May 9, 2005, will not be tolled because there was no application "pending" during that period.

Furthermore, the statute of limitations was not tolled while Petitioner's final state petition was pending. Jones's fourth state habeas petition was denied with a citation to *Clark* and *Robbins*, which indicates that the state court deemed the petition to be untimely. *See Bennett*, 322 F.3d at 579. Petitioner's final state habeas petition was never "properly filed" and will not toll the statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") (citation omitted); *Thorson v. Palmer*, 479 F.3d 641, 645 (9th Cir. 2007); *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005); *Jenkins v. Johnson*, 330 F.3d 1146, 1151 n.3 (9th Cir. 2003) (citing *Carey*, 536 U.S. at 226).

The statute of limitations for filing a federal habeas petition expired on April 15, 2005, one year after Jones's state court judgment became final and after the denial of his second state habeas petition. Under rule 8.532(b)(2)(C) of the California Rules of Court, and its prior version, rule 29.4(b)(2)(C), a California Supreme Court's denial of a petition for a writ is final upon filing. *See* Cal. R. Ct. 8.532(b)(2)(C) (2007). The Ninth Circuit has held that statutory tolling runs until the denial becomes final. *See Allen v. Lewis*, 295 F.3d 1046 (9th Cir. 2002).

Jones is entitled to statutory tolling under § 2244(d) during the pendency of his first and second habeas petitions to the California Supreme Court.  However,  he "is not entitled to interval tolling if he abandons all of his claims in his first application and his [later] application sets forth new and different claims." *Gaston v. Palmer (Gaston I)*, 417 F.3d at 1043; *see also Gaston v. Palmer (Gaston II)*, 447 F.3d 1165, 1167 (9th Cir. 2006) (holding that petitioner was not entitled to "gap" tolling for delays of ten months and

greater between state habeas petitions).  Petitioner did not file his Third Amended Petition in this Court until June 15, 2006.  Grounds five through eight of the Third Amended Petition, not contained in Jones's first two state habeas petitions, are untimely unless they relate back to the filing of the original federal Petition or unless Jones is entitled to equitable tolling.

### 2. Relation Back

Federal Rule of Civil Procedure 15(c)(2) provides in part that an amended pleading may relate back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).  The Federal Rules of Civil Procedure "are applicable to proceedings for ... habeas corpus ... to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases ... " Fed. R. Civ. P. 81(a)(2); *see also Henry v. Lungren*, 164 F.3d 1240, 1241 (9th Cir. 1999).  Additionally, 28 U.S.C. § 2242 states that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C.A. § 2242.

An amended pleading that adds a new claim will relate back to the date of the original pleading if it arises out of the same conduct, transaction, or occurrence as the claims in the original pleading. Fed. R. Civ. P. 15(c).  It is not sufficient that a new claim relates to the same trial, conviction, or sentence that was challenged in the original habeas petition.  *Mayle v. Felix*, 545 U.S. 644, 662 (2005).  But "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664.

1   In *Mayle,* Justice Ginsburg gave two examples of where relation back is appropriate. *See*

2   *id.* at 664 n.7. In the first example, the original habeas petition alleged a *Brady* violation, and

3   the amended petition alleged the prosecution failed to disclose a particular report. *Id.* (citing

4   *Mandacina v. United States*, 328 F.3d 995, 1000-01 (8th Cir. 2003). In the second example, "the

5   original petition challenged the trial court's admission of recanted statements, while the amended

6   petition challenged the court's refusal to allow the defendant to show that the statements had

7   been recanted." *Id.* at 644 n.7 (citing *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir.

8   2001)). *Mayle* also notes that "relation back [is] ordinarily allowed 'when the new claim is

9   based on the same facts as the original pleading and only changes the legal theory.'" *Id.* at 664

10   n.7 (citing 3 J. Moore et al., Moore's Federal Practice § 15.19 [2], at 15-82 (3d ed. 2004).

11   Petitioner's Third Amended Petition added four entirely new claims that were not

12   presented in his original Petition or either of the previous two amendments: (1) He received

13   ineffective assistance of counsel when his trial attorney failed to move to suppress evidence of a

14   separate conviction (ground five); (2) due process was violated when the court allowed

15   admission of evidence of a separate conviction (ground six); and (3) the trial court did not give a

16   jury instruction limiting use of the prior conviction evidence (grounds seven and eight). (*See*

17   Third Am. Pet. 11-14.)

18   Although these claims arise from the same trial and conviction that Petitioner challenged

19   in his previously asserted claims, they do not arise from the same operative facts asserted in

20   Jones's Petition, First Amended Petition, and Second Amended Petition. *See Martin v. Hubbard*,

21   No. 05-15524, 2006 U.S. App. LEXIS 18848, at *3- 4 (9th Cir. July 26, 2006) (requiring the

22   original petition to contain the "essential factual predicates of the later claims[]"). Jones's new

23   claims involve different errors and different times from those previously alleged. Accordingly,

24   the Court **FINDS** the newly-asserted claims do not relate back to the filing of the earlier federal

25   petitions. *See Preston v. Harris*, No. 05-15807, 2006 U.S. App. LEXIS 463, at *3 (9th Cir. Jan.

26   5, 2007) (denying relation back where claims involve different errors, actors, and times).

27   **C. Equitable Tolling**

28

In some cases, a Petitioner may be able to toll the limitations period by demonstrating a basis for equitable tolling.  Equitable tolling is appropriate when "'extraordinary circumstances beyond a prisoner's control make it impossible'" for the petitioner to file a timely petition. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Brambles v. Duncan*, 330 F.3d 1197, 1202 (9th Cir. 2003)); *Stillman v. LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations omitted).  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."  *Miles*, 187 F.3d at 1107 (citations omitted).  Jones has the burden to establish extraordinary circumstances that warrant equitable tolling. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (citing *United States v. Marolf*, 173 F.3d 1213, 1218 n.3 (9th Cir. 1999)).

Petitioner claims that extraordinary circumstances exist to warrant equitable tolling while he was awaiting the resolution of his final state habeas petition.  (Traverse 9; Pet'r's Obj. to R&R at 44.)  Specifically, Jones asserts that the district court's Order Granting Petitioner's Motion to Amend Petition and Request for Stay and Abeyance [doc. no. 50] found extraordinary circumstances that made it impossible for Jones to assert grounds five through eight within the statute of limitations.  (*Id.*)  Petitioner misreads the district court's order. The district court found that Jones did not act in bad faith or with undue delay in seeking to amend his federal petition to assert newly-discovered claims.  (Order Granting Mot. to Amend 6.)  This does not mean that Petitioner proved the existence of extraordinary circumstances that would warrant equitable tolling.  *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005) (distinguishing between "extraordinary circumstances" and "good cause" standards).

"[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."  *Miranda*, 292 F.3d at 1066 (*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).  Petitioner does not specify any facts that constitute extraordinary circumstances, Jones only points to Judge Jones's Order, which listed Petitioner's justifications for delay in seeking to amend his petition: (1) The prison did not provide adequate legal assistance; (2) Jones was only able to attend the law library for two hours

1   per week; and (3) the prison was locked down for periods between December 26, 2003, and June

2   29, 2005, which limited his use of the library and access to his "jailhouse legal assistance."

3   (Order Granting Mot. to Amend 6; Pet'r's Obj. to R&R at 44.)

4        Courts have found that ignorance of the law is no excuse for the late filing of a habeas

5   petition. *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).  Although deficient prison

6   library resources may in certain circumstances be appropriate grounds for equitable tolling, the

7   deficiencies Jones alleges here do not rise to that level.  In *Roy v. Lampert*, 465 F.3d 964 (9th Cir.

8   2006), *cert. denied sub nom. Belleque v. Kephart*, No. 06-1015, 2007 U.S. LEXIS 3761 (U.S.

9   2007), 127 S.Ct. 1880 (2007), the Ninth Circuit remanded the case to the district court for an

10  evidentiary hearing on equitable tolling where the petitioner alleged facts indicating the prison

11  law library did not have a copy of AEDPA or other related materials, and the petitioner was

12  unaware of AEDPA's limitations period. *Id.* at 974-75; *see also Whalem/Hunt v. Early*, 233 F.3d

13  1146, 1148 (9th Cir. 2000) (finding that unavailability of AEDPA in prison library could

14  constitute grounds for equitable tolling).  Jones does not allege facts approaching that level of

15  inadequate access to library materials, especially considering that Jones was able to timely file

16  pleadings in this action in addition to his first and second state habeas petition.

17       Other examples of circumstances that may entitle a petitioner to equitable tolling include

18  language barriers that prevent timely filing, denial of access to legal materials for a significant

19  time, or mental incompetence during the limitations period.  *See, e.g.*, *Mendoza v. Carey*, 449

20  F.3d 1065, 1069 (9th Cir. 2006) (citing *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002));

21  *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003); *Lott v. Mueller*, 304 F.3d 918, 924 (9th

22  Cir. 2002).  Here, Jones has not alleged facts that would constitute extraordinary circumstances

23  for his failure to present grounds five through eight to the Court within the statute of limitations.

24  Accordingly, equitable tolling is not appropriate.  Grounds five, six, seven and eight in the Third

25  Amended Petition

26  were filed after the expiration of AEDPA's statute of limitations, and accordingly, these grounds

27  for relief are **DISMISSED**.

28      **E. Jones's Cumulative Error Claim**

Petitioner asserts that "there were several substantial errors" during his trial, and the cumulative effect of those errors resulted in a fundamentally unfair trial.  (Third Am. Pet. 48; Traverse 20; Pet'r's Obj. to R&R at 48.)  In cases where there are a number of trial errors, the Court may look at "the overall effect of all the errors in the context of the evidence introduced at trial against the defendant."  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)).

"In other words, 'errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'" *Alcala v. Woodford*, 334 F.3d 862, 883 (9th Cir. 2003) (quoting *Thomas v. Hubbard*, 273 F.3d 1164, 1180 (9th Cir. 2001)).  In conducting a cumulative error analysis, the Court must look at the combined effect of each error that occurred during Petitioner's trial. The Court **FINDS** that the trial error alleged in ground one of the Third Amended Petition did not prejudice Jones.  Nevertheless, because the Court found no other trial errors, a cumulative error analysis is not appropriate.

**F.  Motion for Evidentiary Hearing**

On September 14, 2006, Petitioner filed a Motion for an Evidentiary Hearing Pursuant to 28 U.S.C. § 2254(e)(2).  [Doc. No. 59.]  Jones requests that the Court conduct an evidentiary hearing on each of the grounds for relief claimed in his Third Amended Petition.  (*See* Pet'r's Mot. 2-10; *see also* Third Am. Pet. 6-14; Pet'r's Obj. to R&R at 50.)  Respondent's Answer does not address Jones's request.  Petitioner's Objections to the R&R restate his original arguments. (Pet'r's Obj. to R&R at 50.)

Under 28 U.S.C. § 2254(e)(2), as amended by AEDPA, a district court presented with a request for an evidentiary hearing must first determine whether the petitioner failed to develop the factual basis of his claims in state court. *Williams v. Taylor*, 529 U.S. 420, 430 (2000). "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432.

03cv1463 J (RBB)

If a petitioner failed to develop the factual basis of a claim in the state courts, this Court does not have discretion to conduct an evidentiary hearing unless Petitioner shows that the following requirements of 28 U.S.C. § 2254(e)(2) are met:

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2)(A)-(B) (West 2006).

If a petitioner developed the record in state court, the federal habeas court examines whether an evidentiary hearing is appropriate or required under *Townsend v. Sain*, 372 U.S. 293 (1963) (*overruled on other grounds*).  There are six Townsend factors to consider:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2004) (quoting *Townsend*, 372 U.S. at 313).  When a Petitioner has developed the factual basis of his claim in state court and meets one of the *Townsend* factors, "'[a]n evidentiary hearing on a habeas corpus petition is required whenever petitioner's allegations, if proved, would entitle him to relief.'" *Id.* (quoting *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir. 1995)).  To meet this standard, "[t]he petitioner's allegations need only amount to a colorable claim." *Id.* (citing *Beaty v. Stewart*, 303 F.3d 975, 993 (9th Cir. 2002); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).

1      The Supreme Court has interpreted § 2254(e)(2) to require a petitioner who failed to

2  develop the factual basis of a claim in state court to establish both that any efforts to discover the

3  facts would have been in vain and that he has a "convincing claim of innocence." *Williams*, 529

4  U.S. at 435 (citing 28 U.S.C. § 2254(e)(2)(A)(ii) and § 2254(e)(2)(B)).

5      Jones does not allege that the factual bases of his claims were not developed in state

6  court.  Instead, Petitioner repeatedly asserts that an evidentiary hearing should be held on each of

7  his claims because the state court's findings were erroneous, unreasonable, and not supported by

8  the record. (*See* Pet'r's Mot. 3-10; *see also* Pet'r's Obj. to R&R at 50.)  "Bald assertions and

9  conclusory allegations" are not sufficient grounds for an evidentiary hearing.  *Wacht v.*

10  *Cardwell*, 604 F.2d 1245, 1246 n.2 (9th Cir. 1979).

11      The factual basis of the ineffective assistance of counsel claim alleged in ground one of

12  Jones's Third Amended Petition was developed at the June 18, 2001, hearing on Petitioner's

13  motion for a new trial.  (*See* Lodgment No. 2, Rep.'s Tr. vol. 3, 599-686.)

14  Jones, his trial attorney, and other witnesses testified at the hearing, a transcript of which was a

15  part of the appellate record.  (*Id.*)  An evidentiary hearing is not necessary on this claim because

16  the record was sufficiently developed in the state court, and none of the *Townsend* factors weigh

17  in favor of an evidentiary hearing.

18      Jones did not receive a hearing in state court on any of the other grounds presented in his

19  Third Amended Petition. In his petition to the California Supreme Court, filed July 31, 2003,

20  Petitioner requested that the court hold an evidentiary hearing on his claims. (Lodgment No. 10,

21  Pet. for Habeas Corpus at 7, *Jones*, No. S117839.)  The claims presented in that petition were:

22  (1) ineffective assistance for failure to impeach Hughes (ground one of the present Third

23  Amended Petition); (2) insufficient evidence of attempted robbery (ground three); and (3)

24  insufficient evidence of firearm use (ground four). (*Id.* at 3-5.)

25      Jones failed to develop the factual record on the failure to impeach aspect of his

26  ineffective assistance claim, which could have been pursued during the hearing on his motion for

27  a new trial.  Likewise, Petitioner could have raised his claims of insufficient

28

1   evidence while seeking a new trial.  Finally, Jones did not request an evidentiary hearing in

2   connection with the state habeas petitions that contained his remaining claims.  Even

3   overlooking the lack of diligence, an evidentiary hearing is not required for those claims that can

4   be resolved by reference to the state court record.  *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir.

5   1994).  Petitioner's insufficient evidence claims fall within this rule.

6          "Under AEDPA, 'a failure to develop the factual basis of a claim is not established unless

7   there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's

8   counsel.'"  *Insyxiengmay*, 403 F.3d at 670 (quoting *Williams v. Taylor*, 529 U.S. 420, 432

9   (2000)).  With the exception of ground one, Jones failed to develop the record within the

10  meaning of 28 U.S.C. § 2254(e) because neither he nor his attorney attempted to pursue these

11  claims during the evidentiary hearing held in connection with his motion for a new trial. (*See*

12  Lodgment No. 2, Rep.'s Tr. vol. 3, 599-686.)

13         Nevertheless, Jones is not entitled to a federal evidentiary hearing.  Assuming Petitioner

14  could meet one of the *Townsend* factors for each of these claims, a hearing is only required

15  where "petitioner's allegations, if proved, would entitle him to relief."  *Id.* (quoting *Turner v.

16  Marshall*, 63 F.3d 807, 815 (9th Cir. 1995)).  As discussed above, even if the facts are as Jones

17  alleges, he is not entitled to habeas relief on grounds one-A (the

18  failure to impeach Hughes), three (insufficient evidence or attempted robbery), and four

19  (insufficient evidence of firearm use), which were raised in Jones's state habeas petition with a

20  request for an evidentiary hearing.

21         Petitioner is not entitled to an evidentiary hearing on the remainder of his claims. Jones

22  did not request an evidentiary hearing on these claims in any of his state habeas petitions;

23  accordingly, he is at fault for failing to develop the factual bases of those claims in the state

24  courts. These claims do not contain "colorable allegations that, if proved at an evidentiary

25  hearing, would entitle him to habeas relief." *Insyxiengmay*, 403 F.3d at 670.  Petitioner would

26  not be entitled to habeas relief on these claims even if all the facts are as he alleges.  Jones's

27  Motion for an Evidentiary Hearing is **DENIED**. In light

28

of this Order, Petitioner's "Request for the Honorable Magistrates [sic] Judge to Rule on Motion for Evidentiary Hearing" [doc. no. 72], which Jones filed on December 20, 2006, is also be **DENIED AS MOOT**.

### *Conclusion*

For the reasons set forth above, this Court **ADOPTS** the R&R, **DENIES** the Third Amended Petition for Writ of Habeas Corpus in its entirety, and **DENIES** Petitioner's Motion for an Evidentiary Hearing as **MOOT**.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Third Amended Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS SO ORDERED**.

DATED:  February 22, 2008

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:  Magistrate Judge Ruben B. Brooks
     All Counsel of Record

67

03cv1463 J (RBB)